IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| WORLDVENTURS HOLDINGS, LLC, WORLDVENTURES MARKETING, LLC, WORLDVENTURES MARKETING LIMITED, WORLDVENTURES CANADA INC., WORLDVENTURES MARKETING B.V., WORLDVENTURES MARKETING (HONG KONG) LIMITED, WORLDVENTURES MARKETING PTE. LTD., WORLDVENTURES TAIWAN LTD., WORLDVENTURES MARKETING PTY. LTD., WORLDVENTURES MARKETING JAMAICA LIMITED, WORLDVENTURES SERVICES, LLC, WORLDVENTURES COOPERATIEF U.A., WORLDVENTURES MARKETING SP.ZO.O, WORLDVENTURES MARKETING SOUTH AFRICA (PTY.)LTD, WORLDVENTURES ENTERPRISES LLC, WV SERVICES MALAYSIA SDN BHD,  WORLDVENTURES MARKETING SRL, WORLDVENTURES | **JURY TRIAL DEMANDED**<br><br>CIVIL ACTION NO.<br><br>4:18-cv-00393<br><br>**JURY TRIAL DEMANDED**<br><br>**EMERGENCY APPLICATION FOR EX PARTE TEMPORARY RESTRAINING ORDER** |

MARKETING (CYPRUS) )
LIMITED, )
WORLDVENTURES )
MARKETING D.O.O. )
BEOGRAD, )
WORLDVENTURES )
MARKETING SL, D.O.O., )
AND WORLDVENTURES )
MARKETING LIMITED )
WORLDVENTURES )
MARKETPLACE, LLC )
WORLDVENTURES )
HOLDINGS (NETHERLANDS) )
B.V. )
WORLDVENTURES )
MARKETING LIMITED (NEW )
ZEALAND) )
WORLDVENTURES )
MARKETING COLOMBIA )
S.A.S )
WORLDVENTURES )
HOLDINGS ASIA PTE. LTD. )
)
Plaintiffs, )
)
v. )
)
MAVIE, ARIIX, LLC )
ARIIX HOLDINGS, LLC, )
ARIIX INTERNATIONAL, )
INC. )
ADVANCED WELLNESS )
SOLUTIONS PTE LTD. )
ABBOUD BARAKAT )
individually, )
JONATHAN MCKILLIP,
individually,
KYLE LOWE, individually,
ANTHONY FITZGERALD,

individually,
MICHELLE SIDDY,
individually, KEMBLE
MORGAN, individually,
and
DANIEL AUDET, individually,

Defendants.

---

## EMERGENCY APPLICATION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND BRIEF IN SUPPORT

---

TO THE HONORABLE COURT:

WORLDVENTURES HOLDINGS, LLC, WORLDVENTURES MARKETING, LLC, WORLDVENTURES MARKETING LIMITED, WORLDVENTURES CANADA INC., WORLDVENTURES MARKETING B.V., WORLDVENTURES MARKETING (HONG KONG) LIMITED, WORLDVENTURES MARKETING PTE. LTD., WORLDVENTURES TAIWAN LTD., WORLDVENTURES MARKETING PTY LTD., WORLDVENTURES MARKETING JAMAICA LIMITED, WORLDVENTURES SERVICES, LLC, WORLDVENTURES COOPERATIEF U.A., WORLDVENTURES MARKETING SP.Z.O.O, WORLDVENTURES MARKETING SOUTH AFRICA, WORLDVENTURES ENTERPRISES LLC, WV SERVICES MALAYSIA SDN BHD,

WORLDVENTURES MARKETING SRL, WORLDVENTURES MARKETING (CYPRUS) LIMITED, WORLDVENTURES MARKETING D.O.O. BEOGRAD, WORLDVENTURES MARKETING SL, D.O.O., WORLDVENTURES MARKETING LIMITED, WORLDVENTURES MARKETPLACE, LLC, WORLDVENTURES HOLDINGS (NETHERLANDS) B.V., WORLDVENTURES MARKETING LIMITED (NEW ZEALAND), WORLDVENTURES MARKETING COLOMBIA S.A.S., and WORLDVENTURES HOLDINGS ASIA PTE. LTD (hereinafter collectively referred to as "Plaintiffs" or "WorldVentures"), move the Court to grant Plaintiffs an Emergency Ex Parte Temporary Restraining Order against Defendants MAVIE (hereinafter referred to as "MAVIE" when distinction is necessary), ARIIX, LLC, ARIIX HOLDINGS, LLC and ARIIX INTERNATIONAL, LLC (hereinafter referred to collectively as "ARIIX" when distinction is necessary), ADVANCED WELLNESS SOLUTIONS PTE LTD. (hereinafter referred to as "Advanced" when distinction is necessary), ABBOUD BARAKAT, individually (hereinafter referred to as "Barakat" when distinction is necessary), JONATHAN MCKILLIP, individually (hereinafter referred to as "McKillip" when distinction is necessary), KYLE LOWE, individually (hereinafter referred to as "Lowe" when distinction is necessary), ANTHONY FITZGERALD, individually (hereinafter referred to as "Fitzgerald" when

distinction is necessary), MICHELLE SIDDY, individually (hereinafter referred to as "Siddy" when distinction is necessary), KEMBLE MORGAN, individually (hereinafter referred to as "Morgan" when distinction is necessary), and DANIEL AUDET, individually (hereinafter referred to as "Audet" when distinction is necessary), (hereinafter collectively referred to as "Defendants"), and say:

## I.

## NATURE OF THE ACTION AND CLAIMS

1.     This is an action for, *inter alia*, unfair competition, violations of the Lanham Act, 15 U.S.C. § 1125(a), Defend Trade Secrets Act of 2016, Public Law 114-153 (May 11, 2016), common law and statutory misappropriation of trade secrets, misappropriation of proprietary and confidential information, breach of contract, conversion, violation of the Texas Theft Liability Act, TEX. CIV. PRAC. & REM. CODE Chapter 134, and TEX. PENAL CODE § 31.03, tortious interference with exiting contractual relationships, civil conspiracy, assisting and encouraging, concert of action by Defendants, joint enterprise by Defendants, and for declaratory relief under the Declaratory Judgment Act, 28 U.S.C § 2201.

2.     Plaintiffs and Defendants, MAVIE and ARIIX are competitors in Collin County, Texas, and throughout the State of Texas, the United States and

multiple international markets. Plaintiffs and Defendants, MAVIE and ARIIX compete in the lifestyle membership industry.

3.      In July 2017, Abboud and Advanced executed a Mutual Confidentiality Agreement with Plaintiffs in order to obtain, and did obtain, confidential and proprietary information of Plaintiffs and trade secrets of Plaintiff in order to evaluate a possible business transaction with Plaintiffs. Abboud and Advanced promise to keep Plaintiffs' trade secrets and confidential and proprietary information secret, not use the confidential and proprietary information of Plaintiffs and not to disclose Plaintiffs' confidential and proprietary information. Ultimately, Plaintiffs and Defendants, Abboud and Advanced, did not go forward with their business transaction; but, Abboud and Advanced, nevertheless, misappropriated Plaintiffs' confidential and proprietary information and trade secrets and used such information and trade secrets to conspire with MAVIE and ARIIX and the other Defendants and to unlawfully compete against Plaintiffs.

4.      MAVIE and ARIIX compete with Plaintiffs and have used and are using Plaintiffs' trade secrets and confidential and proprietary information received from Abboud and Advanced, and the other Defendants, McKillip, Lowe, Fitzgerald, Siddy, Kemble and Audet to unfairly and unlawfully compete against Plaintiffs.

5.      McKillip, Lowe, Fitzgerald, Siddy, Kemble and Audet all previously worked as employees for Plaintiffs, and all had previously executed written

agreements not to disclose Plaintiffs' confidential and proprietary information and trade secrets. McKillip, Lowe, Fitzgerald, Siddy, Kemble and Audet all agreed to comply with Plaintiffs' employee policies and handbook which prohibit the disclosure of Plaintiffs' trade secrets and proprietary and confidential information and prohibit an employee and former employees from using Plaintiffs' trade secrets and proprietary and confidential information for any purpose other than in pursuit of Plaintiffs' business.

6.      McKillip, Lowe, Fitzgerald, Siddy, Kemble and Audet are all now working for or representing MAVIE, ARIIX, Advanced and/or Barakat and have and will continue to breach their promises made to Plaintiffs that they will not use Plaintiffs' trade secrets and proprietary and confidential information for any purpose other than in pursuit of Plaintiffs' business.

7.      Sometime in the summer of 2017, and thereafter, and continuing through the present time, McKillip, Lowe, Fitzgerald, Siddy, Kemble and Audet began conspiring with MAVIE, ARIIX, Advanced and/or Barakat and began unlawfully and unfairly using Plaintiffs' confidential and proprietary information and trade secrets while working, representing or associating with MAVIE, ARIIX, Advanced and/or Barakat. As of the filing of this civil action, McKillip, Lowe, Fitzgerald, Siddy, Kemble and Audet have continued to misappropriate and have continued to unlawfully and unfairly use Plaintiffs' confidential and proprietary

information and trade secrets while working, representing or associating with MAVIE, ARIIX, Advanced and/or Barakat for the benefit of all Defendants.

8.     MAVIE, ARIIX, Advanced and Barakat knew and are aware of the contractual agreements and obligations made by McKillip, Lowe, Fitzgerald, Siddy, Kemble and Audet and their contractual agreements and obligations and covenants with Plaintiffs not to misappropriate or to use Plaintiffs' confidential and proprietary information and trade secrets except while working for Plaintiffs. Despite such knowledge, MAVIE, ARIIX, Advanced and Barakat interfered with these contractual obligations, and continue to interfere with the contractual obligations, covenants and restrictions in the agreements executed by McKillip, Lowe, Fitzgerald, Siddy, Kemble and Audet in favor of Plaintiffs.

9.     Defendants' misappropriation of Plaintiffs' confidential and proprietary information and trade secrets has caused and will continue to knew to cause Plaintiffs irreparable harm for which there is no adequate remedy at law.

10.     McKillip, Lowe, Fitzgerald, Siddy, Kemble and Audet acknowledged in their written agreements with Plaintiffs that their use or misappropriation of Plaintiffs' confidential and proprietary information and trade secrets will cause irreparable injury to Plaintiffs, and these Defendants consented, in the event of a breach or threatened breach of their agreements with Plaintiffs, to all equitable remedies available at law a temporary restraining order and injunction without the

necessity of any actual damages without the necessity of posting bond or other security.

11.     McKillip, Lowe, Fitzgerald, Siddy, Kemble, Audet Advanced and Barakat have misappropriated in the past and continue to misappropriate currently confidential and proprietary information and trade secrets of Plaintiffs for the benefit of MAVIE and ARIIX.

## II.

## STATEMENT OF FACTS

12.     Plaintiffs offer the Affidavit of Kenneth Edward Head, President of WorldVentures Holdings, LLC, as evidence in support of Plaintiffs' Emergency Application for Ex Parte Temporary Restraining Order. (A copy of the Affidavit is attached as Exhibit 1 to this Emergency Application.)

13.     WorldVentures is a multilevel marketing company with its principal place of business in Plano, Texas and operating in the United States and multiple international markets. WorldVentures is in the lifestyle membership industry and markets and sells lifestyle membership products and services through WorldVentures' network of Representatives. (*See,* Affidavit ("Aff.") of Kenneth Edward Head ("Head Aff.") at ¶ 7 (hereinafter referred to as "Head Aff.at ___").

14.     To become a WorldVentures Representative, a person is required to sign a contract or registration and agree to the WorldVentures Statement of Policies.

The Statement of Policies sets forth the terms and conditions of the contract between WorldVentures and WorldVentures' Representatives. (*See*, Head Aff. at ¶ 8.).

15.    As a WorldVentures Representative, the Representative can (1) purchase WorldVentures products and services, (2) sell WorldVentures products and services, and (3) solicit or recruit others to become a WorldVentures Representative. As a Representative solicits others to join WorldVentures as a Representative, the Representative will create a down line network of other Representatives and will receive compensation for the sales production of the downline Representatives in accordance with the WorldVentures compensation plan for Representatives. The multilevel marketing network structure is often referred to as the genealogy, tree, or line of sponsorship in the multilevel marketing industry. (*See*, Head Aff. at ¶ 8.).

16.    WorldVentures' genealogy is one of WorldVentures' most viable assets. The genealogy is proprietary and confidential and is a trade secret belonging exclusively to WorldVentures. WorldVentures has spent considerable time, effort and expense in acquiring its genealogy and trade secrets, as well as WorldVentures' confidential and proprietary information.  (*See*, Head Aff. at ¶ 10.).

17.    WorldVentures goes to great lengths to protect the secrecy of WorldVentures' trade secrets and proprietary and confidential information and has policies in place to limit who may have access to the trade secrets, genealogy and proprietary and confidential information. (*See*, Head Aff. at ¶ 11.).

18.    WorldVentures    by    contract    has    allowed    WorldVentures'
Representatives  to  use  WorldVentures'  trade  secrets  and  proprietary  and
confidential  information  but  only  for  the  purpose  of  WorldVentures'  business.
WorldVentures'  Representatives  agreed  in  their  contract  with  WorldVentures  to
protect  WorldVentures'  trade  secrets  and  proprietary  and  confidential  information.
WorldVentures'  Representatives  agreed  in  their  contract  with  WorldVentures  not  to
recruit  other  WorldVentures  Representatives  for  any  other  network  marketing  or
multilevel marketing business. (*See*, Head Aff. at ₱ 13.).

19.    WorldVentures'    has    a    no    solicitation    policy/contract    with
WorldVentures'  Representatives.  WorldVentures'  Representatives  agreed  in  their
contract  with  WorldVentures  that  they  would  not  recruit  or  solicit  other
WorldVentures'  Representatives  for  any  other  network  marketing  or  multilevel
marketing  business  during  the  term  of  their  agreement  and  for  a  period  of  one  (1)
year  following  termination  of  the  Representative's  contract.   (*See*, Head Aff. at ₱
14.).

20.    WorldVentures'  has  learned  that  the  Defendants  in  the  above
referenced  lawsuit,  while  being  aware  of  the  no  solicitation  contract  terms,
nevertheless,  have  encouraged  and  recruited  WorldVentures'  Representatives  to
solicit  or  recruit  other  WorldVentures'  Representatives  to  join  Defendants'  network
marketing  or  multilevel  marketing  business. (*See*, Head Aff. at ₱ 16.).

21.     WorldVentures' has learned that WorldVentures' Representatives who have been recruited by Defendants are recruiting and soliciting other WorldVentures' Representatives to join Defendants' network marketing or multilevel marketing business. This is a violation of the Representatives' contract. (*See*, Head Aff. at ⁋ 17.).

22.     WorldVentures' Representatives agreed in their contract with WorldVentures that WorldVentures' down line activity reports and genealogy reports and the information contained therein are confidential and proprietary information and trade secrets belonging to WorldVentures. WorldVentures' Representatives agreed in their contract with WorldVentures that they would not directly or indirectly disclose any information contained in the WorldVentures down line activity report or genealogy. (*See*, Head Aff. at ⁋ 19.).

23.     WorldVentures' has learned that WorldVentures' Representatives are being encouraged by Defendants to violate these provisions of the WorldVentures' Representatives' contract and many Representatives are breaching their contract with WorldVentures' in response to Defendants' solicitation and encouragement to do so. (*See*, Head Aff. at ⁋ 22.).

24.     Jonathan McKillip ("McKillip"), Kyle Lowe ('Lowe"), Anthony Fitzgerald ("Fitzgerald"), Michelle Siddy ("Siddy"), Kemble Morgan ("Morgan") and Daniel Audet ("Audet") are former employees of WorldVentures or its affiliated

companies. They each enter into agreements with WorldVentures or its affiliated companies. (*See*, Head Aff. at ‖ 23).

25.    McKillip was employed by WorldVentures on May 1, 2008 and resigned on December 31, 2017. McKillip was employed by WorldVentures as President of WorldVentures Marketing, LLC. McKillip had responsibility for all global sales and global expansion of WorldVentures' business. Lowe reported to McKillip, and Fitzgerald, Siddy, Kemble, and Audet reported to McKillip through Lowe. (*See*, Head Aff. at ‖ 24.).

26.    Lowe was employed by WorldVentures on June 1, 2009 and was employed until February 13, 2018. Lowe was employed by WorldVentures as SVP of Global Sales & International Expansion. On June 11, 2009, Lowe entered into a written contract with WorldVentures to serve as a Director of International Sales. Lowe reported to McKillip. Fitzgerald, Siddy, Kemble, and Audet reported directly to Lowe. (*See*, Head Aff. at ‖ 33.).

27.    On December 19, 2013, Audet entered into a written contract with WorldVentures to serve as International Operations Consultant. Audet was employed by WorldVentures between March 17, 2014 and November 30, 2016. Audet served as Senior Director of Global Operations for WorldVentures. Audet reported to Lowe who in turn reported to reported to McKillip. (*See*, Head Aff. at ‖ 62.).

28.     McKillip, Lowe and Audet entered into Confidentiality and Proprietary Rights Agreements with WorldVentures (hereinafter referred to as the "Proprietary Rights Agreement."). Pursuant to the Proprietary Rights Agreement, McKillip, Lowe and Audet promised to keep secret and not to disclose WorldVentures' confidential information. McKillip, Lowe and Audet acknowledged that the confidential information was of great competitive importance and of commercial value to WorldVentures. McKillip, Lowe and Audet agreed that the confidential information including, but was not limited to business processes, practices, methods, policies, plans, publications, documents, research, operations, strategies, techniques, agreements, contracts, transactions, negotiations, trade secrets, know-how, computer programs, work in progress, supplier information, vendor information, marketing information, advertising information, personnel information, employee lists, supplier lists, sales information, revenues, customer information, customer lists, client information, sales representative information, sales representative lists and genealogies, distributor lists and buyer lists. (*See*, Head Aff. at ¶¶ 25., 34., and 63.)

29.     McKillip, Lowe. Audet, Siddy, Morgan and Fitzgerald all also acknowledged and agreed to the provisions of the employee handbook of WorldVentures which prohibited the use and disclosure of WorldVentures' confidential and proprietary information and trade secrets. (*See*, Head Aff. at ¶¶ 26., 35., 40., 41. 46., 47., 54., 55., 63. and 64.)

---

**EMERGENCY APPLICATION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND BRIEF IN SUPPORT**                                                                 **PAGE 14**

30.    WorldVentures has learned that McKillip, Lowe, Audet, Siddy, Morgan have Fitzgerald has breached their promises to WorldVentures and is involved in a concert of action with the other Defendants to solicit and recruit WorldVentures' Representatives to breach their contracts with WorldVentures and solicit other WorldVentures' Representatives for Defendants' network marketing multilevel business which competes with WorldVentures. (*See*, Head Aff. at ¶¶ 27.-32., 36.-39., 42.-45., 48.-53., 56.-61., and 65.-69.)

31.    As employees of WorldVentures, Jonathan McKillip, Kyle Lowe, Anthony Fitzgerald, Michelle Siddy, Kemble Morgan and Daniel Audet had access to proprietary and confidential information of WorldVentures and now they are working for, consulting for and participating with the other Defendants in the development of a network marketing or multilevel marketing business which competes with WorldVentures. (*See*, Head Aff. at ¶¶ 71. and 72.)

32.    WorldVentures' trade secrets and proprietary and confidential information would give Defendants a competitive advantage. (*See*, Head Aff. at ¶ 73)

33.    Effective July 21, 2017 Advanced Wellness Solutions Pte Ltd ("Advanced") by and through Abboud Barakat entered into a Mutual Confidentiality Agreement with WorldVentures (hereinafter referred to as the "Confidentiality Agreement"). The Confidentiality Agreement broadly defined "confidential

information" including, but not limited to, WorldVentures' customers, suppliers, third parties, products, services, supplier information, and business, marketing, development and sales and other commercial strategies. It also included unpatented inventions, ideas, methods and discoveries, trade secrets, know-how, confidential and proprietary intellectual property, third-party confidential information and other confidential and proprietary information and trade secrets of WorldVentures. Advanced and Barakat promised not to disclose the confidential information as defined in the Confidentiality Agreement. And, WorldVentures in accordance with the confidentiality agreement and based upon the promises made in the confidentiality agreement, disclosed "confidential information" to Advanced and Barakat. Advanced and Barakat promised to safeguard WorldVentures s confidential information but failed to do so. (*See*, Head Aff. at ¶¶ 76. and 77.)

34.    WorldVentures has learned that instead, Advanced and Barakat are using WorldVentures' confidential information to compete with WorldVentures and have disclosed the confidential information to the other Defendants. (*See*, Head Aff. at ¶ 78.).

35.    Upon information and belief, WorldVentures has learned that Advanced and Barakat formed and created MAVIE as a new multilevel marketing business enterprise involved in the lifestyle membership industry to compete against WorldVentures and Advanced and Barakat, in conspiracy with the other Defendants,

are using WorldVentures' confidential information in the development of their MAVIE business. (*See*, Head Aff. at ℙ 83.)

36.    MAVIE and ARIIX are multilevel marketing competitors of WorldVentures.  MAVIE and ARIIX market lifestyle membership services and a lifestyle membership using a multilevel marketing downline organization and network of independent sales representatives. The basic structure of the sales organizations of MAVIE and ARIIX mirrors the multilevel marketing structure of the sales organization of WorldVentures. (*See*, Head Aff. at ℙ 88.)

37.    On June 3, 2018, Defendant, Jonathan McKillip, and James Lee, a former Representative of WorldVentures both made written Facebook posts and posted a MAVIE solicitation video soliciting others in their social media network and Facebook community, including many Representatives and employees of WorldVentures, to join them in the MAVIE multilevel marketing business which competes with WorldVentures. (*See*, Head Aff. at ℙ 90.)

38.    Upon information and belief, WorldVentures has learned that MAVIE and ARIIX, in conspiracy and in joint enterprise with Advanced and Barakat, and the other Defendants have induced, and continued to induce employees and former employees of WorldVentures to terminate their employment with WorldVentures and to use their knowledge of WorldVentures' confidential and proprietary information and trade secrets to promote and build the MAVIE and ARIIX

multilevel marketing businesses in competition with WorldVentures. (*See*, Head

Aff. at ¶ 94.)

39.     WorldVentures has learned that Defendants have entered into an

agreement and conspiracy, and are soliciting WorldVentures Representatives who

are under contract with WorldVentures (a) to terminate their contract with

WorldVentures, (b) to enter into a network marketing or multilevel marketing

contract with Defendants, (c) to misappropriate trade secrets of WorldVentures, (d)

to disclose WorldVentures' proprietary and confidential information, and (e) to

recruit or solicit other WorldVentures Representatives to do likewise. (*See*, Head

Aff. at ¶ 99.)

## III.

## ARGUMENT AND AUTHORITIES

### *a.     Plaintiffs need the Ex Parte Temporary Restraining Order to maintain the status quo.*

40.     The purpose of a temporary restraining order is to preserve the status

quo of the subject matter of the litigation and prevent irreparable until a hearing can

be held on a preliminary injunction. *Granny Goose Foods, Inc. v. Brotherhood of*

*Teamsters & Auto Truck Drivers,* 415 U.S. 423, 439 (1974); FRCP 65(b). To receive

an *ex parte* restraining order, Plaintiffs must prove that "immediate and irreparable

injury, loss, or damage will result to" [Plaintiffs'] before notice can be served and a

hearing had on the preliminary injunction. FRCP 65(b).   Here, there is immediate and irreparable imminent harm if the court does not grant a temporary restraining order because Defendants will continue to unfairly and improperly use and benefit from Plaintiffs' trade secrets and confidential and proprietary information.   The status quo preceding the pending controversy is the compliance with the contract between Plaintiffs and Defendants, and the proper performance of the contracts, and enforcement and compliance with the promises made in the contracts not to disclose or use Plaintiffs' confidential and proprietary information and trade secrets.

41.    The status quo is the return to Plaintiffs of their trade secrets, and proprietary and confidential information, and enforcement of the agreement of Defendants not to use Plaintiffs' in trade secrets, and proprietary and confidential information for any purpose other than Plaintiffs' business, and certainly not to use the trade secrets, and proprietary and confidential information to compete with Plaintiffs.

42.    Plaintiffs' Application for Temporary Restraining Order is authorized by general principles of equity, federal statutes and federal rules and Texas state law. *eBay Inc. v. Merc-Exchange, L.L.C.,* 547 U.S. 388, 391 (2006) (injunctive relief is based on well-established principles of equity.

43.    An *ex parte* Temporary Restraining Order, without notice to Defendants, is necessary because there was not enough time to give notice to

Defendants, hold a hearing, and issue a restraining order before further irreparable injury and harm to Plaintiffs occurs.  Defendants announced and solicited on June 3, 2018 on Facebook the launch of their new multilevel marketing business in direct competition with Plaintiffs using proprietary and confidential information and trade secrets Defendants obtained from Plaintiffs. The full extent of Defendants' tortious conduct and the harm it is causing Plaintiffs has not yet been determined.  However, in the absence of a restraining order, it is highly likely that upon being served with the Petition and Plaintiffs' Application for Temporary Restraining Order, Defendants will further escalate their unlawful activity, thereby causing further irreparable harm to Plaintiffs.

### b. Plaintiffs need a Temporary Restraining Order to protect Plaintiffs' confidential and proprietary information and trade secrets.

44.    A trade secret is any formula, pattern, device, or compilation of information ("proprietary information") used in the plaintiff's trade or business that gives the holder of the information a competitive advantage over those who do not know or use it.  *In re Bass,* 113 S.W.3d 735, 739 (Tex. 2003); *Computer Assocs. v. Altai, Inc.,* 918 S.W.2d 453, 455 (Tex. 1996); *Luccous v. J.C. Kinley Co.,* 376 S.W.2d 336, 338 (Tex. 1964); *Hyde Corp. v. Huffines,* 314 S.W.2d 763, 776 (Tex. 1958); Restatement (3d) of Unfair Competition § 39; Restatement of Torts § 757 cmt, b.   The proprietary information can be any formula, pattern, device, or

compilation of information, *In re Bass,* 113 S.W.3d at 739; *Computer Assocs. v. Altai, Inc*., 918 S.W.2d at 455; *Luccous v. J.C. Kinley Co.,* 376 S.W.2d at 338; and, *Hyde Corp. v. Huffines,* 314 S.W.2d at 776, however, proprietary information does not need to be novel in the sense required by the patent laws in order to be protected. *K & G Oil Tool & Serv. v. G&G Fishing Tool Serv.*, 314 S.W. 782, 789 (Tex. 1958).

45.    Customer and distributor lists and information is the type of proprietary information that qualifies for trade secret protection.  *T-N-T Motorsports, Inc. v Hennessey Motorsports, Inc*. 965 S.W. 18, 22-23 (Tex. App. – Houston [1st Dist.] 1998, no writ); *Miller Paper Co. v. Roberts Paper Co.,* 901 S.W.2d 593, 601 (Tex. App. – Amarillo 1995, no writ); *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 467-69 (5th Cir. 2003) (customer list, contract terms, including renewal dates, premium information, loss information, credit reports, and reinsurance rates are proprietary information).

46.    It is not necessary that Defendants actually use the proprietary information to gain a competitive advantage; it is only necessary that Defendants may be in possession of proprietary information and be in a position to use it. *Fox v. Tropical Whs., Inc.*, 121 S.W.3d 853, 860 (Tex. App. – Fort Worth 2003, no pet.).

47.    Competitive advantage can be established by testimony showing how the proprietary information gives the Plaintiffs an actual or potential economic advantage over others in the industry.  *H.E. Butt Grocery Co. v. Moody's Quality*

*Meats, Inc.*, 951 S.W.2d 33, 35 (Tex. App. – Corpus Christi 1997, pet. denied).  The information need only be substantially secret -- meaning that it is information that is not generally known or readily available to the public.  *Rugen v. Interactive Bus.*, 864 S.W.2d 548, 552 (Tex. App. – Dallas 1993, no writ).

48.     Misappropriation of a trade secret occurs when Defendants possess, use or disclose the proprietary trade secret information after the Defendants acquired the trade secret by improper means, or after the Defendants acquired the trade secret from a third party with notice that the third party's disclosure was improper.  *IBP, Inc. v. Klumpe*, 101 S.W.3d 461, 476 (Tex. App. – Amarillo 2001, pet. denied); *Metallurgical Indus. v. Fourtek, Inc*. 790 F.2d 1195, 1204 (5th Cir. 1986).     The use or disclosure of a trade secret in breach of a contractual relationship can be the basis for any misappropriation claim.  *K & G Oil Tool & Serv. v. G&G Fishing Tool Serv.*, 314 S.W. 782, 787 (Tex. 1958); *Williams v. Compressor Eng'g*, 704 S.W.2d 469, 471 (Tex. App. – Houston [14[th] Dist.] 1986, writ ref'd n.r.e.) (nondisclosure provisions in employment contract); *Elcor Chem. Corp. v. Agri-Sul, Inc*., 494 S.W.2d 204, 212 (Tex. App. – Dallas 1973, writ ref'd n.r.e.) (nondisclosure provisions in employment contract); *Sikes v. McGraw-Edison Co.,* 665 F.2d 731, 735-36 (5th Cir. 1982) (breach of nondisclosure agreement).

49.     The use or disclosure of a trade secret is actionable if Defendants acquired a trade secret by improper means.  *Hyde Corp.,* 314 S.W.2d at 769.  The

use or disclosure of a trade secret is actionable if the use or disclosure occurred after the defendant learned of the secret from a third person and the defendant was on notice – that is, knew or reasonably should have known – that the third party breached a duty to the trade secret owner not to disclose the secret, or improperly acquired or discovered the secret. *Metallurigical Indus. v. Fourtek, Inc.*, 790 F.2d at 1204 (5th Cir. 1996); Restatement (3d) of Unfair Competiton §40(b) (3, (4); Restatement of Torts §757(d) & cmt. 1.

50.    The mere threat of use or disclosure is sufficient to support a request for injunctive relief. *Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1191-92 (5th Cir. 1984); *FMC Corp. v. Varco Int'l*, 677 F.2d 500, 503 (5th Cir. 1982); *T-N-T Motorsports, Inc. v Hennessey Motorsports, Inc.* 965 S.W. at 24 (because defendants possessed plaintiff's proprietary information and were in a position to use it, the threat of use or disclosure is sufficient to support injunctive relief.). A plaintiff is entitled to injunctive relief to prevent the defendant from improperly using or disclosing the trade secret. *K & G Oil Tool & Serv. v. G&G Fishing Tool Serv.*, 314 S.W. at 790; *Hyde Corp. v. Huffines,* 314 S.W.2d at 777-778; and, *American Derringer Corp. v. Bond*, 924 S.W.2d 773, 778 (Tex. App. – Waco 1996, no writ).

51.    Because of the inevitable-disclosure doctrine, injunctive relief is proper when a former employee or distributor was in a position to use confidential information and such use was likely. *Rugen v. Interactive Bus.,* 864 S.W.2d 548,

552 (Tex. App. – Dallas 1993, no writ); *Williams v. Compressor Eng'g,* 704 S.W.2d 469, 471-71 (Tex. App. – Houston [14th Dist.] 1986, writ ref'd n.r.e.) (injunctive relief proper because former employee working in a similar capacity for new employer could not avoid using former employer's confidential knowledge, even when acting in good faith); *FMC Corp. v. Varco Int'l*, 677 F.2d 500, 504-05 (5th Cir. 1982) (injunctive relief proper because former employee was working with new employer to develop product that would compete with former employer's product).

### c. Plaintiffs are likely to prevail on Plaintiffs' tortious interference with contract claim.

52.    The essential elements of a claim for tortious interference are: (1) a contract existing that is subject to interference; (2) interference that was willful and intentional; (3) the interference proximately caused damage to the plaintiff; and (4) actual damage or loss. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002). All of these elements are met here.

53.    A contract exists between Plaintiffs and all of Plaintiffs' Representatives in the network genealogy. Defendants know this. Defendants have willfully and intentionally interfered with these contracts by soliciting Plaintiffs' Representatives to breach their contract with Plaintiffs and encouraging and assisting Plaintiffs' Representatives to improperly compete with Plaintiffs.  Defendants' actions have proximately caused damage to Plaintiffs, and Plaintiffs have suffered

actual damage or loss. A Plaintiffs' Representatives who leaves Plaintiffs' business no longer sells Plaintiffs' products and may even stop consuming them.  Moreover, when they leave Plaintiffs' Representatives no longer sponsor new Plaintiffs' Representatives to sell Plaintiffs products.

54.    Equity will protect the exercise of contractual rights from unlawful interference. by.  *Ex Parte Tucker*, 220 S.W. 75, 76 (Tex. 1920).  *See also Karamchandani v. Ground Technology, Inc.*, 678 S.W.2d 580, 582 (Ct. App. Tex.-Houston 1984) (upholding injunction granted to prevent harm from private communications to specific individuals with the intention of coercing them to discontinue business with the plaintiff).

55.    Accordingly, Plaintiffs are entitled to a Temporary Restraining Order protecting their contractual rights as well as those of Plaintiffs' Representatives. Moreover, the irreparable harm created by Defendants actions cannot be fully remedied by monetary damages.  Defendants' continued interference is causing and will continue to cause a disruption of Plaintiffs' business.

56.    Plaintiffs are willing to post bond.  As the Court makes its determination of the amount of the bond, Plaintiffs asks that the Court consider the importance to their business of the equitable relief sought.

**PRAYER**

57.   Plaintiffs respectfully request that the Court grant Plaintiffs' Application for an *Ex Parte* Temporary Restraining Order, without notice.  A copy of the proposed Ex Part Temporary Restraining Order is attached as Exhibit 2 to this Emergency Application.

58.   For these reasons, Plaintiffs pray that the court grant Plaintiffs' Emergency Application for a Ex Parte Temporary Restraining Order and restrain the Defendants as prayed for herein.

Dated:        June 4, 2018.

Respectfully submitted,

By: /s/ Charles Bundren

**WM. CHARLES BUNDREN & ASSOCIATES LAW GROUP, PLLC**
Wm. Charles Bundren, Esq.
Lead Attorney and Attorney-in Charge
State Bar No. 03343200
2591 Dallas Parkway, Suite 300
Frisco, Texas 75034
(214) 808-3555     Telephone
(972) 624-5340     Facsimile
e-mail:       charles@bundrenlaw.net
**ATTORNEY FOR PLAINTIFFS:**
**WORLDVENTURES HOLDINGS, LLC**
**WORLDVENTURES  MARKETING,  LLC,**
**WORLDVENTURES          MARKETING**
**LIMITED,**
**WORLDVENTURES CANADA INC.,**
**WORLDVENTURES MARKETING B.V.,**
**WORLDVENTURES  MARKETING  (HONG KONG) LIMITED,**

**WORLDVENTURES MARKETING PTE. LTD.,**
**WORLDVENTURES TAIWAN LTD.,**
**WORLDVENTURES MARKETING PTY LTD.,**
**WORLDVENTURES MARKETING JAMAICA LIMITED**
**WORLDVENTURES SERVICES, LLC,**
**WORLDVENTURES COOPERATIEF U.A.,**
**WORLDVENTURES MARKETING SP.ZO. O,**
**WORLDVENTURES MARKETING SOUTH AFRICA,**
**WORLDVENTURES ENTERPRISES LLC,**
**WV SERVICES MALAYSIA SDN BHD,**
**WORLDVENTURES MARKETING SRL,**
**WORLDVENTURES MARKETING (CYPRUS) LIMITED,**
**WORLDVENTURES MARKETING D.O.O. BEOGRAD,**
**WORLDVENTURES MARKETING SL, D.O.O., AND**
**WORLDVENTURES MARKETING LIMITED**
**WORLDVENTURES MARKETPLACE, LLC,**
**WORLDVENTURES HOLDINGS (NETHERLANDS) B.V.**
**WORLDVENTURES MARKETING LIMITED (NEW ZEALAND)**
**WORLDVENTURES MARKETING COLOMBIA S.A.S.**
**WORLDVENTURES HOLDINGS ASIA PTE. LTD**