## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| WorldVentures Holdings LLC,<br>WorldVentures Marketing LLC,<br>WorldVentures Marketing Limited,<br>WorldVentures Canada Inc.,<br>WorldVentures Marketing B.V.,<br>WorldVentures Marketing (Hong Kong) Limited,<br>WorldVentures Marketing Pte. Ltd.,<br>WorldVentures Taiwan Ltd.,<br>WorldVentures Marketing Pty. Ltd.,<br>WorldVentures Marketing Jamaica Limited,<br>WorldVentures Services LLC,<br>WorldVentures Cooperatief U.A.,<br>WorldVentures Marketing SP ZO.O,<br>WorldVentures Marketing South Africa (Pty) Ltd.,<br>WorldVentures Enterprises LLC,<br>WV Services Malaysia SDN BHD<br>WorldVentures Marketing SRL,<br>WorldVentures Marketing (Cyprus) Limited,<br>WorldVentures Marketing D.O.O. Berograd,<br>WorldVentures Marketing SL D.O.O.,<br>WorldVentures Marketing Limited,[1]<br>WorldVentures Marketplace LLC,<br>WorldVentures Holdings (Netherlands) B.V.,<br>WorldVentures Marketing Limited (New Zealand),<br>WorldVentures Marketing Colombia S.A.S., and<br>WorldVentures Holdings Asia Pte. Ltd.,<br><div align="right">*Plaintiffs*,</div><br>v.<br><br>MaVie,<br>ARIIX Holdings, LLC, ARIIX International, Inc.,<br>Advanced Wellness Solutions Pte. Ltd.,<br>Abboud Barakat, individually,<br>Jonathan McKillip, individually,<br>Kyle Lowe, individually,<br>Anthony Fitzgerald, individually,<br>Michelle Siddy, individually,<br>Kemble Morgan, individually, and<br>Daniel Audet, individually,<br><div align="right">*Defendants,*</div> | Case No. 4:18-cv-393-ALM<br><br>Jury Trial Demanded |

---

[1]  WorldVentures Marketing Limited is listed twice. Movants do not know whether the duplication was in error.

**DEFENDANTS "MAVIE",[2] ADVANCED WELLNESS SOLUTIONS PTE. LTD., AND ABDELWADOUD[3] BARAKAT'S MOTIONS TO DISMISS**

**MORGAN, LEWIS & BOCKIUS LLP**

 /s/ Michelle Pector

Michelle Pector, Lead Attorney
State Bar No. 24027726
michelle.pector@morganlewis.com

Veronica J. Lew
State Bar No. 24082110
veronica.lew@morganlewis.com

Yon-Sun W. Sohn
State Bar No. 24083888
yon.sohn@morganlewis.com

Maryann Zaki
State Bar No. 24088707
maryann.zaki@morganlewis.com

1000 Louisiana, Suite 4000
Houston, Texas 77002
(713) 890-5000 Telephone
(713) 890-5001 Facsimile

**SIEBMAN, FORREST, BURG & SMITH, LLP**

Clyde M. Siebman
State Bar No. 18341600
clydesiebman@siebman.com

Elizabeth Forrest
State Bar No. 24086207
elizabethforrest@siebman.com

Federal Courthouse Square
300 North Travis Street
Sherman, TX 75090

*Attorneys for Defendants "MaVie,"*
*Advanced Wellness Solutions Pte. Ltd.,*
*and Abdelwadoud Barakat*

---

[2]  MaVie is a brand name, not an existing entity and thus cannot be a proper defendant to this matter.
[3]  Abdelwadoud Barakat is incorrectly named "Abboud" Barakat in the Complaint

## TABLE OF CONTENTS

I. Statements of Issues ............................................................................................................ 2

II. Statements of Facts ........................................................................................................... 2

    A.     Advanced Wellness's business ................................................................................ 2

    B.     Advanced Wellness's lack of Texas contacts ....................................................... 3

    C.     Barakat's lack of Texas contacts .......................................................................... 3

    D.    Discussion between Advanced Wellness and WV ............................................... 4

    E.     Advanced Wellness launch of MaVie business .................................................... 5

    F.     Insufficient process and insufficient service of process on Advanced Wellness,
         Barakat, and Audet .................................................................................................. 5

III. Motion to Dismiss for Lack of Personal Jurisdiction (Fed. R. Civ. P. 12(b)(2)) ...................... 6

    A.     Exercise of personal jurisdiction over foreign defendants must comport with due
         process ....................................................................................................................... 6

         1.     General Jurisdiction .................................................................................... 7

         2.     Specific Jurisdiction .................................................................................... 7

         3.     Specific jurisdiction is determined per-nonresident plaintiff, per-claim,
              and per-defendant and basis ........................................................................ 8

         4.     A corporation's forum contacts cannot be imputed to an individual .......... 8

    B.     WV has failed to demonstrate Advanced Wellness and Barakat have purported
         minimum contacts with Texas or show that each WV entity's claims arise out of
         Advanced Wellness and Barakat's Texas contacts ................................................. 9

         1.     General jurisdiction does not exist in Texas over Advanced Wellness and
              Barakat ........................................................................................................ 9

         2.     Advanced Wellness and Barakat do not have minimum contacts in Texas
              that give rise to WV's claims .................................................................... 9

              a.     Lanham Act – False Advertisement ............................................. 10

              b.     Trade secret misappropriation ...................................................... 12

                   (1)    No allegations of Advanced Wellness and Barakat's acts or
                          omission in Texas give rise to the misappropriation claims
                          ........................................................................................... 12

                   (2)    No allegation of what "trade secrets" have been
                          misappropriated in Texas by Advanced Wellness or
                          Barakat .......................................................................... 15

              c.     Conversion .................................................................................... 18

              d.     Texas Theft Liability Act (TTLA) ............................................... 19

e.       Breach of contract ........................................................................ 19

f.       Tortious interference with existing business relationships ........... 20

g.      Unfair competition ....................................................................... 21

IV. Motion to Dismiss for Improper Venue (28 U.S.C. § 1391 and Fed. R. Civ. P. 12(b)(3)) .... 22

    A.     The majority view places the burden of establishing proper venue on plaintiffs. 22

    B.     Venue is not proper in the Eastern District of Texas. .......................................... 24

V. Motion to Dismiss for Insufficient Process (Fed. R. Civ. P. 12(b)(4)) and Insufficient Service of Process (Fed. R. Civ. P. 12(b)(5)) ................................................................................. 26

    A.     Foreign defendants must be properly served under Fed. R. Civ. P. 4(f) and (h). . 26

    B.     This Court lacks jurisdiction over Advanced Wellness and Barakat without proper service under the Federal Rules of Civil Procedure.............................................. 27

VI. MaVie's Motions to Dismiss Under Fed. R. Civ. P. 9(a) and 12(b)(6) for Lack of Capacity to Be Sued and Under Rule 12(b)(4) and (5) for Insufficient Process and Insufficient Service of Process ........................................................................................................... 28

    A.     "MaVie" is not a legal entity and thus cannot be separately sued. ...................... 28

    B.     The summons against "MaVie" insufficient, and the proposed method of service is also insufficient. ............................................................................................... 29

VII. Conclusions .................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adrain v. Genetec Inc.*,
  Civ. Action No. 2:08-CV-423-TJW, 2009 WL 3161386 (E.D. Tex. Sept. 30, 2009) .................................................................................................................20

*Alpine View Co. v. Atlas Copco AB*,
  205 F.3d 208 (5th Cir. 2000) .........................................................................6, 13

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*,
  300 F.3d 620 (5th Cir. 2002) .................................................................................20

*Asevedo v. NBCUniversal Media, LLC*,
  921 F. Supp. 2d 573 (E.D. La. 2013) ....................................................................24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................28, 29

*The Bear Stearns Cos. Inc. v. Lavalle*,
  No. 300CV1900-D, 2001 U.S. Dist. LEXIS 4913, 2001 WL 406217 (N.D. Tex. Apr. 18, 2001) ...............................................................................................23

*Beardmore v. Jacobson*,
  131 F. Supp. 3d 656, 666–67 (S.D. Tex. 2015) .................................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................28

*Bigham v. Envirocare of Utah, Inc.*,
  123 F. Supp. 2d 1046 (S.D. Tex. 2000) ................................................................23

*Blue Spike, LLC v. Caterpillar, Inc.*,
  No. 6:16-cv-1361-RWS, 2017 WL 4129321 (E.D. Tex. Sept. 19, 2017)..............25

*Bounty-Full Entm't, Inc. v. Forever Blue Entm't Grp., Inc.*,
  923 F. Supp. 950 (S.D. Tex. 1996) .......................................................................23

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017).............................................................................8, 9, 10, 16

*Calder v. Jones*,
  465 U.S. 783 (1984)..........................................................................9, 15, 17, 25

i

*Carson v. Dynegy, Inc.*,
　344 F.3d 446 (5th Cir. 2003) ................................................................18

*CF & I Steel Corp. v. Pete Sublett & Co.*,
　623 S.W.2d 709 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.) ............................20

*Cuvillier v. Sullivan*,
　503 F.3d 397 (5th Cir. 2007) ................................................................28

*Dahlstrom v. Dawkins*,
　No. 4:15-CV-384-ALM-CAN, 2015 WL 964752 (E.D. Tex. Nov. 20, 2015) ........................12

*Daimler AG v. Bauman*,
　134 S. Ct. 746 (2014) ................................................................7, 9

*Educ. Mgmt. Servs., LLC v. Tracey*,
　102 F. Supp. 3d 906, 915 (W.D. Tex. 2015)................................................19

*Emerald City Mgmt., LLC v. Kahn*,
　No. 4:14-cv-358-ALM, 2016 WL 98751 (E.D. Tex. Jan. 8, 2016) ........................12

*Gartin v. Par Pharm. Cos., Inc.*,
　289 F. App'x 688 (5th Cir. 2008) ................................................................26

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
　564 U.S. 915 (2011)................................................................8

*Great Lakes Dredge & Dock, Co. LLC v. La. State*,
　624 F.3d 201 (5th Cir. 2010) ................................................................29

*Grynberg v. BP P.L.C.*,
　855 F. Supp. 2d 625 (S.D. Tex. 2012), *aff'd*, 527 F. App'x 278 (5th Cir. 2013) ......8, 9, 14, 20

*Helicopteros Nacionales de Colom., S.A. v. Hall*,
　466 U.S. 408 (1984)................................................................7

*House v. S. P. Richards Corp.*,
　Case. No. H-12-3704, 2014 WL 427897 (S.D. Tex. Feb. 4, 2014) ........................26, 27

*In re Mandel*,
　578 Fed. App'x 376 (5th Cir. 2014) (per curiam) (unpub.)................................................19

*Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*,
　818 F.3d 193 (5th Cir. 2016) ................................................................6, 7

*Khan v. U.S. ex rel. I.R.S.*,
　755 F. Supp. 2d 767 (S.D. Tex. 2010) ................................................................23

*Langton v. Cbeyond Comm'cn, L.L.C.,*
  282 F. Supp. 2d 504 (E.D. Tex. 2003) (Davis, J.) ...................................................23

*McCaskey v. Cont'l Airlines, Inc.,*
  133 F. Supp. 2d 514 (S.D. Tex. 2001) .......................................................23, 24, 25

*McFadin v. Gerber,*
  587 F.3d 753 (5th Cir. 2009) ................................................................................7

*Mink v. AAAA Devel. LLC,*
  190 F.3d 333 (5th Cir. 1999) ...............................................................................11

*Mireles v. City of Harlingen,*
  Civ. Action No. B-13-cv-81, 2013 U.S. Dist. LEXIS 186342 (S.D. Tex. 2013) ..............28, 29

*Nana Joes, LLC v. Microbiotic Health Foods, Inc.,*
  No. 4:17-cv-784-ALM, 2018 WL 905531 (E.D. Tex. Feb. 15, 2018) ...........................8, 9, 22

*Norsworthy v. Mystik Transp., Inc.,*
  430 F. Supp. 2d 631 (E.D. Tex. 2006) (Ward, J.)...................................................23

*Panda Brandywine Corp. v. Potomac Elec. Power Co.,*
  253 F.3d 865 (5th Cir. 2001) (per curiam)...........................................6, 10, 14, 15

*Payne v. Grayco Cable Servs., Inc.,*
  No. 1:11-CV-487-MAC, 2011 WL 13076902 (E.D. Tex. Dec. 8, 2011) .........................22, 23

*Rentea v. Janes,*
  No. A-11-CV-031, 2011 WL 3022568 (W.D. Tex. July 22, 2011).........................................23

*Revell v. Lidov,*
  317 F.3d 467 (5th Cir. 2002) ................................................................................15

*Rimkus Consulting Grp., Inc. v. Balentine,*
  693 F. Supp. 2d 681 (S.D. Tex. 2010) ..................................................................23

*Seariver Maritime Fin. Holdings, Inc. v. Pena,*
  952 F. Supp. 455 (S.D. Tex. 1996) ......................................................................23

*Seatrax, Inc. v. Sonbeck Intl, Inc.,*
  200 F.3d 358 (5th Cir. 2000) ................................................................................22

*Seiferth v. Helicopteros Atuneros, Inc.,*
  472 F.3d 266 (5th Cir. 2006) ..................................................................................8

*Shaffer v. Heitner,*
  433 U.S. 186 (1977).................................................................................................9

iii

*Taylor Pub. Co. v. Jostens, Inc.*,
　216 F.3d 465 (5th Cir. 2000) ................................................................22

*Tex. Marine & Brokerage, Inc. v. Euton*,
　120 F. Supp. 2d 611 (E.D. Tex. 2000) (Cobb, J.) ...................................23

*Thermotek, Inc. v. WMI Enters., LLC*,
　No. 3:10-cv-2618-D, 2011 WL 148542142131 (N.D. Tex. Apr. 19, 2011)
　(Fitzwater, C.J.)......................................................................................14

*Weisskopf v. United Jewish Appeal-Fed'n of Jewish Philanthropies of New York,
Inc.*,
　889 F. Supp. 2d 912 (S.D. Tex. 2012) ...............................................9, 13

*Wheel-Source, Inc. v. Gullekson*,
　No. 3:12-cv-1500-M, 2013 WL 944430 (N.D. Tex. Mar. 12, 2013) (Lynn, J.) ...............14, 15

*WickFire, LLC v. Trimax Media, Inc.*,
　A-14-CA-34-SS, 2016 WL 4119917 (W.D. Tex. filed Mar. 25, 2016)..................................21

*Wien Air Alaska, Inc. v. Brandt*,
　195 F.3d 208 (5th Cir. 1999) ................................................................15

*Williamson-Dickie Mfg. Co. v. M/V Heinrich J*,
　762 F. Supp. 2d 1023 (S.D. Tex. 2011) ............................................23, 24

*Wolcott v. Sebelius*,
　635 F.3d 757 (5th Cir. 2011) ................................................................29

*Zippo Mfg. Co., v. Zippo Dot Com, Inc.*,
　952 F. Supp. 1119 (W.D. Pa. 1997).......................................................11

## STATUTES

28 U.S.C. § 1391.....................................................................................22, 24

28 U.S.C. § 1391(b) (2018) ...........................................................................24

28 U.S.C. § 1404..............................................................................................26

28 U.S.C. § 1406(a) .....................................................................................2, 26

Federal Defend Trade Secrets Act of 2016..................................................1

Lanham Act.........................................................................................1, 10, 12

Tex. Civ. Prac. & Rem. Code § 134A.002(3)(A) ........................................13

Tex. Civ. Prac. & Rem. Code § 134A.002(6) (West 2017).........................16

Texas Theft Liability Act...........................................................................................................1

Texas Uniform Trade Secrets Act............................................................................12, 15, 17, 19

**OTHER AUTHORITIES**

15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice
   and Procedure § 3826 (1986)...............................................................................................23

Fed. R. Civ. P. 4(f)(2)..............................................................................................................27

Fed. R. Civ. P. 4(f) and (h)......................................................................................................26

Fed. R. Civ. P. 9(a)..................................................................................................................28

Fed. R. Civ. P. 9(a), 12(b)(4), (5), and (6)................................................................................2

Fed. R. Civ. P. 9(a) and 12(b)(6)............................................................................................28

Fed. R. Civ. P. 12(b)(2)........................................................................................................6, 22

Fed. R. Civ. P. 12 (b)(2), (3), (4), and (5)................................................................................2

Fed. R. Civ. P. 12(b)(3)..............................................................................................22, 23, 26

Fed. R. Civ. P. 12(b)(4)............................................................................................................26

Fed. R. Civ. P. 12(b)(4) and (5).........................................................................................28, 30

Fed. R. Civ. P. 12(b)(5)............................................................................................................26

Plaintiffs—26 WorldVentures entities (collectively "WV"), the majority of which are foreign companies—seek to exceed this Court's jurisdiction by asserting claims and obtaining an Ex-Parte Temporary Restraining Order ("TRO") to enjoin worldwide activities of various foreign Defendants over which this Court lacks personal jurisdiction. Further, WV has not only sued "MaVie" in an improper capacity, but WV has also failed to properly effectuate service on "MaVie," Advanced Wellness Solutions Pte Ltd. ("Advanced Wellness") and Abdelwadoud Barakat ("Barakat") (collectively "Movants"). Accordingly, Movants respectfully request to be dismissed from this lawsuit.

While WV has asserted a variety of claims against Advanced Wellness, MaVie, and Barakat, by their own admission only one of the counts has been identified as a claim for which WV contends they are likely to succeed on the merits—tortious interference.[4] WV did not assert a likelihood of success on the merits as to the other claims in the Complaint, including violation of the Lanham Act (Count 1); misappropriation of trade secrets and confidential and proprietary information under Texas law and under Federal Defend Trade Secrets Act of 2016 (Counts 2 and 3); conversion (Count 4); violation of Texas Theft Liability Act (Count 5); breach of contract (Count 6); tortious interference with existing business relationships (Count 8); and unfair competition (Count 9). Advanced Wellness and Barakat deny the validity of such claims and maintain that they are not proper Defendants before this Court because they are not subject to personal jurisdiction in the State of Texas for the causes of action that WV asserts. Venue is also not proper in this District because a substantial part of the events or omissions giving rise to WV's claims against Advanced Wellness and Barakat did not occur in this District. Further, Advanced Wellness and Barakat have neither been afforded sufficient process nor been properly served with

---

[4]  *See* WV's Emergency Application for TRO, which argues likelihood of success on the merits solely as to count 8, tortious interference claim. (Dkt. #2 at ¶¶52–56.)

process. Therefore, the Court should dismiss WV's claims against Advanced Wellness and Barakat as a matter of law. *See* 28 U.S.C. § 1406(a); Fed. R. Civ. P. 12 (b)(2), (3), (4), and (5). WV's claims against "MaVie" should also be dismissed because MaVie is not an entity capable of being sued or subject to the Court's personal jurisdiction, and the summons issued against it and the method of service is insufficient. *See* Fed. R. Civ. P. 9(a), 12(b)(4), (5), and (6).

## I. Statements of Issues

1. Does the Court lack jurisdiction over a Singapore company and a Jordanian national (who is domiciled in United Arab Emirates), who have not been properly served and has insignificant contacts with Texas that are unrelated to eight separate claims asserted by 26 Plaintiff entities, most of which are foreign entities?

2. Is the venue improper in this District given that the business activities of a Singapore company and a Jordanian national (who is domiciled in United Arab Emirates) have occurred almost entirely in the Eastern Hemisphere, and the 26 Plaintiff entities' claims arise out of their contracts with sales representatives around the world whose contracts are governed by foreign law and subject to mandatory venue overseas?

3. Must the Court dismiss a defendant that is merely a brand name of a business line and not a separate legal entity capable of being sued and was improperly served?

## II. Statements of Facts

### A.     Advanced Wellness's business

Advanced Wellness is a private limited company incorporated under the laws of Singapore, with its principal place of business located in Singapore. Ex. A, Decl. of Abdelwadoud Barakat ("Barakat Decl."), ¶ 1.[5] Advanced Wellness is a marketing company for life style products and services with a focus on personalized skincare products and supplements. *Id.*, ¶ 2. In early 2017, Advanced Wellness began developing an online direct sales and marketing platform to offer unique nutritional, health, and experience products tailored to customers by the results of their

---

[5]  Because Advanced Wellness and Barakat are moving to dismiss under Rule 12(b) (b)(2),(3),(4), and (5), the Court may consider evidence outside the four corners of the Complain. *See Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (under Rule 12(b)(3) a court may look at evidence beyond the facts alleged in the complaint and its attachments); *Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-CV-443-JRG, 2017 WL 3704762, at *2 (E.D. Tex. Aug. 28, 2017) (same).

personal DNA tests. *Id.* Creating personalized wellness solutions and products for its customers based on DNA testing sets Advanced Wellness's business apart from other companies. *Id.* Advanced Wellness's portfolio also includes online shopping, rewards programs and travel benefits for its customers, which are accessible through their subscriptions with Advanced Wellness. *Id.* These programs and the DNA testing technology were developed and existed before Advanced Wellness met with WV in the summer of 2017. *Id.* Advanced Wellness offers these personalized and tailored products under the brand name "MaVie." MaVie is not an independent legal entity. It is a brand name. *Id.*, ¶ 3.

**B.     Advanced Wellness's lack of Texas contacts**

Advanced Wellness does not have any offices in Texas, own or lease any properties in Texas, have any telephone listings in Texas, or have any bank accounts in Texas. *Id.*, ¶¶ 4–8. Advanced Wellness does not maintain an agent for service in Texas. *Id.*, ¶ 8. WV alleges that Jonathan McKillip and Kyle Lowe (allegedly Texas residents) are "working for, consulting with, associated with or representing" Advanced Wellness. (Doc. #1, ¶ 1.) Despite this broad allegation, McKillip and Lowe are not employees of Advanced Wellness but independent contractors for Advanced Wellness's MaVie business line. McKillip and Lowe have never signed any employment agreements with Advanced Wellness. *Id.*, ¶¶ 20, 23.

**C.     Barakat's lack of Texas contacts**

WV named "Abboud Barakat" as a defendant. His correct full legal name is Abdelwadoud Barakat, and "Aboud" is his nickname. *Id.*, ¶ 9. Barakat is the Founder and Chief Executive Officer of the MaVie business line. *Id.*, ¶ 10. He is a Jordanian citizen residing in Dubai, United Arab Emirates. *Id.*, ¶ 9. He never lived or had an office in Texas, does not have a Texas bank account, or own or lease any properties in Texas. *Id.*, ¶¶ 12–15. He rarely travels to Texas. *Id.*, ¶ 17.

Barakat became acquainted with Jonathan McKillip in November 2013 through a friend in Asia. *Id.*, ¶ 19 . Barakat did not travel to Texas to solicit or recruit McKillip. *Id.*, ¶ 21. Barakat has not asked McKillip to "raid" or "unlawfully solicit" "top-ranking" multilevel marketing sales representatives who are under contract with WV. *Id.*, ¶ 21; *contra, e.g.,* Doc. #1 at ¶¶ 49, 53.

Barakat became acquainted with Kyle Lowe in November 2013 through a friend in Asia. *Id.*, ¶ 22. Barakat did not travel to Texas to solicit or recruit Lowe. *Id.*, ¶ 24. Barakat has not asked Lowe to "raid" or "unlawfully solicit" "top-ranking" multilevel marketing sales representatives who are under contract with WV. *Id.*, ¶ 24; *contra, e.g.,* Doc. #1 at ¶¶ 49, 53.

**D.     Discussion between Advanced Wellness and WV**

In early 2017, Advanced Wellness was in process of developing its online marketing platform for products and services, and was evaluating its marketing and distribution channel options through direct sales or multi-level marketing. *Id.*, ¶ 25. Around that time, Advanced Wellness became aware that WV was looking for increased cash flow and financing and was exploring the possibility of looking for support in Asia for World Ventures Holdings (Asia) Pte. Ltd., which is based in Singapore ("WV Asia"). *Id.*, ¶ 26.

In the summer of 2017, Advanced Wellness and WV began exploring what turned out to be short-lived and ultimately unsuccessful discussions regarding the possibility of a potential business relationship in Asia. *Id.*, ¶ 27. In connection with those non-binding discussions, in July of 2017, Advanced Wellness and WV executed a Mutual Confidentiality Agreement ("NDA"). *Id.*, ¶ 28 and Exhibit 1 therein. electronically signed the NDA as a representative of Advanced Wellness, not in his individual capacity. *Id.*, ¶ 29.

In July 2017, Advanced Wellness and WV participated in meetings regarding potential business opportunities in Asia.  During those meeting, Advanced Wellness presented to WV on Advanced Wellness's business plans related to its products and services. *Id.*, ¶ 29. Around July 28,

2017, Advanced Wellness and WV signed a non-binding Letter of Intent ("LOI") regarding a potential transfer of WV Asia. *Id.*, ¶ 30. The LOI did not involve a transfer of WV's business in Texas or the United States. *Id*. Thereafter, Advanced Wellness provided detailed information to WV about Advanced Wellness's personalized wellness solutions and products based on DNA testing.  Advanced Wellness subsequently met with WV in Hong Kong. *Id.*, ¶ 31.

Ultimately, the business discussions between Advanced Wellness and WV fell through due to WV's lack of follow-up. *Id.*, ¶ 32. Additionally, numerous financial and legal risks were identified regarding WV's global operations through public sources that gave Advanced Wellness concerns—e.g., WV's financial and legal issues around the globe including in Singapore, Taiwan, South Africa, China, Norway, Cyprus and Hong Kong; the diminished reputation of WV due to dissatisfied representatives who had not been timely compensated; and the significant number of departures of sales representatives from the WV organization who left before and while the negotiations were ongoing, having nothing to do with Advanced Wellness. *Id*.

**E.      Advanced Wellness launch of MaVie business**

MaVie's operation is currently centered in the Asia Pacific region and expanding into the Eastern Hemisphere market (e.g., Europe, Africa, and Australia). *Id.*, ¶ 33. A person can become a MaVie independent life associate by approaching or contacting a MaVie representative they know or by voluntarily signing up on MaVie's website. *Id.*, ¶ 34. In May of 2018, Advanced Wellness "soft launched" its new business under the MaVie business line brand name. *Id.*, ¶ 35.

**F.      Insufficient process and insufficient service of process on Advanced Wellness, Barakat, and Audet**

On June 8, 2018, Advanced Wellness was served by hand at its headquarters in Singapore with a sealed envelope containing the (1) summons, (2) Complaint, (3) expedited discovery order (Dkt. #6), and (4) TRO in this case. *Id.*, ¶ 40. It is believed that this envelope was not hand

delivered to an officer of Advanced Wellness. *Id*. Barakat has not been formally served. *Id.*, ¶ 42. Further, Barakat does not regularly maintain an office in Advanced Wellness' Singapore headquarters, and the Complaint and the summons issued as to Barakat contains an incorrect name. *Id.*, ¶¶ 9, 41; *cf.* Doc. #7.

### III. Motion to Dismiss for Lack of Personal Jurisdiction (Fed. R. Civ. P. 12(b)(2))[6]

**A.** **Exercise of personal jurisdiction over foreign defendants must comport with due process.**

A court must dismiss a claim if the court does not have personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). To invoke the court's jurisdiction, a plaintiff must present sufficient facts to make out "a prima facie case supporting jurisdiction." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). The court need not "credit conclusory allegations" or "farfetched inferences" even if they are uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam). *Id.* (internal citation omitted). Because Texas's long-arm statute extends to the constitutional due process limits, the court may exercise personal jurisdiction only if it is consistent with the due process clause of the Fourteenth Amendment. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016). The exercise personal jurisdiction over a nonresident defendant comports with due process only if the defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id*. (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

---

[6] In the unlikely event that the Court finds that "MaVie" has capacity to be sued, "MavVie" joins this motion to dismiss for lack of personal jurisdiction for the reasons stated by Advanced Wellness.

1.      *General Jurisdiction*

A court's exercise of "personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum" is appropriate only when general jurisdiction exists. *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 n.9, 416 (1984). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). The controlling inquiry is whether defendant's in-forum contacts and affiliations with the state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id*. at 761. General jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Id*. at 762 n.20.

2.      *Specific Jurisdiction*

Specific jurisdiction exists when the plaintiff alleges a cause of action that grows out of a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8. The specific personal jurisdiction is determined in a three-step analysis: (1) whether the defendant has minimum contacts with the forum state, i.e., "purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;" (2) whether the plaintiff's "cause of action arises out of or results from the defendant's forum-related contacts;" and (3) whether the exercise of personal jurisdiction is "fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (internal citation omitted). Only "[i]f the plaintiff successfully satisfies the first two prongs" does the burden shift to the defendant to show that the exercise of jurisdiction "would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). Indeed, this Court has recently held that it will not shift the burden onto

a defendant "to defeat jurisdiction by showing that its exercise would be unfair or unreasonable" where "Plaintiff has not successfully established that Defendant had minimum contacts with Texas giving rise" to Plaintiff's claim. *Nana Joes, LLC v. Microbiotic Health Foods, Inc.*, No. 4:17-cv-784-ALM, 2018 WL 905531, at *6 (E.D. Tex. Feb. 15, 2018).

     3.    *Specific jurisdiction is determined per-nonresident plaintiff, per-claim, and per-defendant and basis.*

The existence of specific jurisdiction is analyzed plaintiff by plaintiff, claim by claim, and defendant by defendant. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017). There must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Id.* (quoting *Goodyear*, 564 U.S., at 919, alteration orig.). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*; *see also Goodyear*, 564 U.S. at 931, n.6. ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales"). Further, the court must identify "adequate link" between the forum state and the nonresident plaintiffs' claims. *Id.* The "mere fact" that resident plaintiffs suffered the same injuries as the nonresident plaintiffs "does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.*

     4.    *A corporation's forum contacts cannot be imputed to an individual.*

A defendant's employer's contacts with the jurisdiction cannot be imputed to the defendant. *Grynberg v. BP P.L.C.,* 855 F. Supp. 2d 625, 645–46 (S.D. Tex. 2012), *aff'd*, 527 F. App'x 278 (5th Cir. 2013) (citing *Calder v. Jones,* 465 U.S. 783, 789 (1984); *Stuart v. Spademan,* 772 F.2d 1185, 1197 n.11 (5th Cir. 1985)). Jurisdiction depends on the relationship of each defendant to the forum, not the relationship between defendants. *See Shaffer v. Heitner*, 433 U.S. 186, 204 & n. 19 (1977). Thus, "[e]ach defendant's contacts with the forum State must be

assessed individually." *Calder,* 465 U.S. at 784. In other words, "[m]inimum contacts with Texas cannot be imputed from one defendant to another." *See Weisskopf v. United Jewish Appeal-Fed'n of Jewish Philanthropies of New York, Inc.,* 889 F. Supp. 2d 912, 926–27 (S.D. Tex. 2012); *Grynberg*, 855 F. Supp. 2d at 645–46 (ruling that even though individual defendant served on the board of directors of several U.S. companies, the activities of those companies could not be attributed directly to defendant for purposes of personal jurisdiction).

**B.    WV has failed to demonstrate Advanced Wellness and Barakat have purported minimum contacts with Texas or show that each WV entity's claims arise out of Advanced Wellness and Barakat's Texas contacts.**

1.    *General jurisdiction does not exist in Texas over Advanced Wellness and Barakat.*

Texas is not the "paradigm forum for the exercise of general jurisdiction" over Advanced Wellness and Barakat because it is not the state of domicile, incorporation, or principal place of business for Advanced Wellness and Barakat. *See Daimler AG*, 134 S. Ct. at 760. Barakat is domiciled in Dubai, United Arab Emirates. Advanced Wellness is incorporated and headquartered in Singapore, and cannot be "fairly regarded as at home" in Texas. *See id.*; *see also Nana Joes*, 2018 WL 905531, at *3 (finding no "prima facie case of general jurisdiction" over a "a California corporation with its principle place of business in California," which cannot be regarded "at home" in Texas). Thus, each WV entity must establish specific jurisdiction over each claim they assert against Advanced Wellness and Barakat. *See Bristol-Myers*, 137 S. Ct. at 1781.

2.    *Advanced Wellness and Barakat do not have minimum contacts in Texas that give rise to WV's claims.*

WV incorrectly asserts that "Advanced does business in, inter alia, Collin County, Texas and solicits and transacts business in Collin County Texas." (Dkt. #1 at ¶ 18.) WV also inaccurately asserts that Barakat "conducts business in Collin County, Texas" and that "[t]his lawsuit arises out of business transacted by Abboud [*sic*] Barakat in Collin County, Texas." (Dkt. #1 at ¶ 19.) These

generic allegations are not only inaccurate, but at best they are conclusory and fail to specify the alleged business contacts in Texas or include any such evidence to support their assertions. Consequently, WV cannot establish a prima facie case of jurisdiction over Advanced Wellness and Barakat. *See Panda Brandywine*, 253 F.3d at 869 (allegations in the plaintiff's pleading "on information and belief" that defendant knew plaintiffs "are Texas residents and knew its actions would intentionally cause harm to Appellants in Texas" is "merely conclusory").

Furthermore, WV has failed to allege how each Plaintiff entity—many of them organized under the laws of foreign nations—have suffered harm or injury arising out of Advanced Wellness or Barakat's Texas contacts. WV has made no effort to even allege a connection or nexus between Advanced Wellness and Barakat's alleged Texas contacts with each of the specific claims that *each WV Plaintiff* is asserting against Advanced Wellness and Barakat. "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue" asserted by each WV entity. *See Bristol-Myers*, 137 S. Ct. at 1781. The lack of required connection between Texas and each of WV's claims are discussed in turn below.

        a.     *Lanham Act – False Advertisement*

WV merely recites the elements of a Lanham Act false advertising claim without alleging where and how Advanced Wellness and Barakat purportedly made false or misleading statements regarding Advanced Wellness's or WV's goods or services. (*See* Dkt. #1 at ¶¶ 49, 116–126.) WV's only "factual" allegation is a generic statement with no specific connection to Texas:

> Advanced and Barakat, in conspiracy with the other Defendants, and as part of their joint enterprise, are **soliciting Plaintiffs' top-ranking sales representatives in all international markets** and enticing and soliciting them to breach their contract with Plaintiffs and to solicit sales representatives in their downline organizations to breach their contract with Plaintiffs and to join the multilevel marketing enterprise of MAVIE and ARIIX. **Defendants are using false, misleading and deceptive representations regarding their new business enterprise to induce Plaintiffs' top-ranking sales representatives** to cease their business relationship with Plaintiffs and to join Defendants.

(Dkt. #1 at ¶ 49, emphasis added.) There is no allegation that Advanced Wellness and Barakat made false, misleading, or deceptive representations while *they were in Texas*. And there is no allegation that Advanced Wellness and Barakat made false, misleading, or deceptive representations *to a person in Texas*. In fact, based on the only "factual" allegation quoted above, WV is accusing Advanced Wellness and Barakat of soliciting WV sales representatives in "international market" and *not* Texas market. (*See* Dkt. #1 at ¶ 49.) Even taking their conclusory allegations as true, all that WV has alleged is that a Singaporean company or a Jordanian national domiciled in Dubai is soliciting nonresident WV's international sales representatives abroad. There is no Texas connection alleged at all. Consequently, there is no nexus between WV's Lanham Act claim and any purported Texas contacts with Advanced Wellness and Barakat.

WV makes an unsupported allegation that "MAVIE solicits business in Collin County, Texas by and through its website and domain name." (Dkt. #1 at ¶ 14.) This is false. The audience for www.MaVie.net includes individuals who reside in the Netherlands, Singapore, the United Arab Emirates, South Africa, Australia, and Hong Kong. The United States is nowhere found on this list. Ex. B, Decl. of Michelle D. Pector ("Pector Decl.") at ¶ 11. Thus, www.MaVie.net is not directed to individuals in the United States, let alone Texas.

The Fifth Circuit has adopted the "sliding scale" test first set forth in *Zippo Mfg. Co., v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119 (W.D. Pa. 1997), to evaluate whether a defendant has sufficient minimum contacts with the forum state to establish personal jurisdiction via the internet. *Mink v. AAAA Devel. LLC*, 190 F.3d 333, 336 (5th Cir. 1999). As this Court recently stated, the "mere possibility of a Texas audience does not establish purposeful availment by Defendants of the benefits and protections of Texas, which is necessary to satisfy due process." *Dahlstrom v. Dawkins*, No. 4:15-CV-384-ALM-CAN, 2015 WL 964752, at *5 (E.D. Tex. Nov. 20, 2015), report

and recommendation adopted, 2016 WL 69905 (E.D. Tex. Jan. 6, 2016). Instead, WV "must establish Defendants' intent to target or focus on Texas readers/internet users as distinguished from readers/users in other states." *See id.* Indeed, "asserting specific jurisdiction based on internet activity requires proof that the out-of-state defendant's internet activity is *expressly directed at or directed to the forum state*[.]" *Id.* (emphasis added, quoting *Young v. New Haven Advocate*, 315 F.3d 256, 258 (4th Cir. 2002)). "Merely publishing a statement on a website accessible to users in the forum state does not suffice to establish personal jurisdiction; "a more direct aim is required" to create a nexus between a plaintiff's alleged injury and a defendant's contacts with Texas." *Id.* (quoting *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002)). Here, WV has did not allege any nexus between www.MaVie.net website, Texas, and the 26 WV entities' Lanham Act claim.

      b.    *Trade secret misappropriation*

          *(1)*    *No allegations of Advanced Wellness and Barakat's acts or omission in Texas give rise to the misappropriation claims*

WV failed to specify what Advanced Wellness or Barakat did *in Texas* that allegedly gave rise to the misappropriation claims. Texas Uniform Trade Secrets Act ("TUTSA")[7] provides two types of misappropriation: (1) "*acquisition* of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or (2) "*disclosure or use* of a trade secret of another without express or implied consent [by one of three classes of individuals]." *See Emerald City Mgmt., LLC v. Kahn*, No. 4:14-cv-358-ALM, 2016 WL 98751, *29 (E.D. Tex. Jan. 8, 2016) (emphasis added); Tex. Civ. Prac. & Rem. Code § 134A.002(3)(B).

Even assuming that Advanced Wellness or Barakat acquired WV's trade secret information from WV during the meeting in Plano—which Advanced Wellness and Barakat deny—the mere

---

[7] WV has failed to specify what law applies to their trade secret misappropriation claim in Count 2. WV does not allege misappropriations occurring before TUTSA's effective date, i.e., September 1, 2013, thus, TUTSA applies.

acquisition of trade secrets is not misappropriation. Rather, the acquisition must be *with* the knowledge that it was acquired *through* improper means to constitute misappropriation. *See* Tex. Civ. Prac. & Rem. Code § 134A.002(3)(A).[8] WV has failed to allege that Advanced Wellness or Barakat alleged acquisition of WV's purported trade secrets occurred *in Texas* and was through improper means with the requisite knowledge. To the contrary, WV's reference to an alleged business proposal and confidentiality agreement suggest no improper means were involved, but instead that WV voluntarily disclosed such information, if any, to Advanced Wellness or Barakat.

As to the second possible type of misappropriation, WV has made no allegation that Advanced Wellness or Barakat *used or disclosed* WV's trade secrets in Texas. Thus, all that WV can point to in their Complaint are the generic and unsubstantiated allegations, e.g., that in the summer of 2017 "McKillip, Lowe, Fitzgerald, Siddy, Kemble and Audet began conspiring with MAVIE, ARIIX, Advanced and/or Barakat and began unlawfully and unfairly using Plaintiffs' confidential and proprietary information and trade secrets while working, representing or associating with MAVIE, ARIIX, Advanced and/or Barakat." (*See, e.g.,* Dkt. #1 at ¶ 7) WV fails to allege (1) *which* defendant (2) used *what* trade secrets (3) *where* and (4) *how* it was unlawful. Even assuming that one of the defendants unlawfully used WV's trade secret in Texas, that has no bearing on whether Advanced Wellness or Barakat is subject to the jurisdiction of this Court because other minimum contacts with Texas "cannot be imputed from one defendant to another." *See Weisskopf*, 889 F. Supp. 2d at 926–27. WV must present sufficient facts to make out a prima facie case, *see Alpine View*, 205 F.3d at 215, that Advanced Wellness's Texas gave rise to *each* WV entity's trade secret misappropriation claim. Separately, each WV entity must make a prima facie case that Barakat's individual Texas contacts gave rise to each of their trade secret

---

[8] "Misappropriation" means: (A) **acquisition of a trade secret** of another by a person who knows or has reason to **know that the trade secret was acquired by improper means**[.]" Tex. Civ. Prac. & Rem. Code § 134A.002(3)(A).

misappropriation claim because Advanced Wellness's contacts in Texas cannot be imputed to Barakat. *See Grynberg,* 855 F. Supp. 2d at 645–46 (an employer's contacts with the jurisdiction cannot be imputed to the individual defendant).

Further, the Court cannot exercise jurisdiction over a foreign national or a foreign corporation if all that WV can allege is that one of the WV entities is a Texas company allegedly feeling the harms in Texas from purported misuse of trade secrets outside of Texas, particularly where no showing has been made that any trade secrets were misappropriated in Texas. It is also not enough that the alleged trade secrets originated from Texas. *See Wheel-Source, Inc. v. Gullekson,* No. 3:12-cv-1500-M, 2013 WL 944430, at *5 (N.D. Tex. Mar. 12, 2013) (Lynn, J.) (dismissing a nonresident defendant where even where the plaintiff alleged "that Defendant *allegedly received confidential and trade secret information sent from Texas*" by plaintiff, "a Texas-based company") (emphasis added); *Thermotek, Inc. v. WMI Enters., LLC,* No. 3:10-cv-2618-D, 2011 WL 148542142131, *3 (N.D. Tex. Apr. 19, 2011) (Fitzwater, C.J.) (dismissing for lack of personal jurisdiction where "only contact that [plaintiff] alleges between [defendant] and Texas is the injury [plaintiff] has suffered in Texas").

The Fifth Circuit's *Panda Brandywine* is also instructive for this case. *Panda Brandywine,* 253 F.3d at 869. In that case, the defendant was a utility company incorporated in Virginia and the District of Columbia with its principal place of business in Washington, D.C. *Id.* at 867. The plaintiffs' "sole evidence was their state court petition, which alleged on information and belief that defendant "knew [plaintiffs] are Texas residents and knew its actions would intentionally cause harm to [plaintiffs] in Texas." *Id.* at 869. The Fifth Circuit held that such "allegations are merely conclusory." *Id.* But "[m]ore importantly, even if [plaintiffs]' allegations are not conclusory, they are nonetheless insufficient to establish a prima facie case for jurisdiction" over

foreign corporation under the "effects" test of *Calder v. Jones*, 465 U.S. 783 (1984). "Foreseeable injury [in the forum] alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999). The "plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*." *Revell*, 317 F.3d at 473.

Thus, under clear Fifth Circuit precedents, WV cannot establish specific jurisdiction by merely alleging that they suffered harm in Texas from alleged acts Advanced Wellness or Barakat took elsewhere. Nor is it sufficient that Advanced Wellness or Barakat may have received WV's allegedly trade secrets from Texas. *See Wheel-Source*, 2013 WL 944430, at *5 (allegation "that Defendant *allegedly received confidential and trade secret information sent from Texas*" in insufficient minimum contact). WV's location in Texas, and alleged suffering of harm here, "will not alone support jurisdiction under *Calder*." *See Revell*, 317 F.3d at 473. No allegation exists that Advanced Wellness or Barakat committed an act of misappropriation in Texas. Thus, WV has failed to allege sufficient connection between their trade secret misappropriation claims and Texas contacts Advanced Wellness or Barakat purportedly have.

> *(2)    No allegation of what "trade secrets" have been misappropriated in Texas by Advanced Wellness or Barakat*

Nowhere in the Complaint does WV specify what alleged trade secrets they have that Advanced Wellness or Barakat allegedly misappropriated. Under TUTSA, "trade secret" means:

> all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:
> (A) the owner of the trade secret has **taken reasonable measures** under the circumstances to **keep the information secret**; ***and***

> (B) the **information derives independent economic value**, actual or potential, **from not being generally known to, and not being readily ascertainable through proper means** by, another person who can obtain economic value from the disclosure or use of the information.

Tex. Civ. Prac. & Rem. Code § 134A.002(6) (West 2017) (emphasis added).

WV has wholly failed to allege what information they have maintained as a secret, what reasonable measures WV took to protect its secrecy, and establish the economic value of such information not being generally known or ascertainable through proper means. The only vague allegations as to what trade secrets could be allegedly misused are genealogy reports, downline activity reports, and identities of "top-ranking independent sales representatives." (*See* Doc. #1 at ¶¶ 49, 51, 53, 107, 112, 113, 197, 263(b), 264(b), 265(b).) But WV has not specifically alleged Advanced Wellness or Barakat improperly received, used, or disclosed them in Texas.

WV alleges "Advanced and Barakat consented to jurisdiction and venue in the United States District Court for the Eastern District of Texas for any dispute arising out of the Confidentiality Agreement" (Dkt. #1 at ¶ 44). But WV's broad, generalized, and unsupported allegation is not sufficient to confer personal jurisdiction over Advanced Wellness or Barakat as to each WV entity's trade secret claim. First, the NDA is only between WorldVentures Holdings, LLC and Advanced Wellness Solutions Pte Ltd. NDA at ¶ 1. Even assuming that the affiliates and employees are covered by the NDA, WV's pleading is insufficient because the NDA is not triggered unless there is a "Disclosing Party" disclosing "Confidential Information" to a "Receiving Party." *Id.* The 26 WV entities have failed to plead that they were *each* a Disclosing Party that disclosed *their* Confidential Information to *both* Advanced Wellness *and* Barakat as separate Receiving Parties. *See Bristol-Myer*, 137 S. Ct. at 1781 (each nonresident plaintiff must identify "adequate link" between their claim and nonresident defendant). The 26 WV entities have further failed to plead that Advanced Wellness and Barakat *individually* misappropriated 26

different WV entities' Confidential Information in Texas. *Calder,* 465 U.S. at 784 ("[e]ach defendant's contacts with the forum State must be assessed individually").

Furthermore, even if WV were to have alleged that genealogy reports, downline activity reports, and identities of "top-ranking independent sales representatives," (*see, e.g.*, Doc. #1 at ¶ 49), such information are neither "Confidential Information" under the NDA nor trade secrets under TUTSA. The NDA clearly states that any information that "at the time of disclosure is, or thereafter becomes, generally available to and known by the public" is expressly excluded from Confidential Information. NDA at § 2(a). The identities of "top-ranking" sales representatives for WV entities is generally available to and known by the public—information that is easily accessible with a simple internet search. Pector Decl. at ¶¶ 6–7. The information contained within the genealogy or downline activity reports is merely names, which is public information available on WV's sales representatives' social media accounts and which is outside the scope of the Confidential Agreement. *Id.* For example, the example LinkedIn profile of Mélodie Rismann, clearly and publicly shows that she is an International Marketing Director at WV and her connections at WV. With a simple search on LinkedIn, anyone can find at least 31 "International Marketing Directors," who are the top-ranked representatives based on WV's own compensation plan document—also publicly available. Pector Decl. at ¶ 7. Thus, information regarding WV's "top-ranking" sales representatives is excluded as Confidential Information. NDA at § 2(a). Thus, any claims related to identities of top-ranking sales representatives and people in their network are not disputes arising out of the NDA. The jurisdiction and venue selection clause is inapplicable to WV's trade secret misappropriation claims.

WV further alleges that "[e]ffective July 28, 2017, Advanced entered into a written business proposal" with WV concerning WV's Asian business (the "Proposal"). (Dkt. #1 at ¶ 46.)

WV alleges that "[p]ursuant to the Proposal, Advanced agreed to jurisdiction and venue for any dispute arising out of the Proposal in the United States District Court for the Eastern District of Texas" for any dispute arising out of the Proposal. (*Id.*) WV's allegation is unavailing because they expressly admit that the proposal was never finalized. (Dkt. #1 at ¶ 46.) The inapplicability of the jurisdiction and venue provision in the Proposal is bolstered by the lack of one in the LOI regarding the proposed transfer of WV Asia. *See* Barakat Decl., Ex. 2.

In sum, the jurisdiction and venue provisions in the NDA and the Proposal do not apply to the trade secret claims against Advanced Wellness or Barakat. Further, WV failed to make the required showing under *Bristol-Myer* that identifies adequate link between Advanced Wellness and Barakat's Texas purported contacts and each of the 26 WV entities' trade secret claim.

        c.     *Conversion*

WV's conversion claim also lacks the nexus to Advanced Wellness or Barakat's purported Texas contacts. Under Texas law, conversion is "unauthorized and wrongful assumption and exercise of dominion and control over the **personal property** of another, to the exclusion of or inconsistent with the owner's rights." *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (emphasis added, quoting *Waisath v. Lack's Stores*, 474 S.W.2d 444, 447 (Tex. 1971)). When an "allegation involves only intellectual property rights … rather than rights regarding physical property, it is "outside the scope of Texas conversion law, which concerns **only physical property**." *Carson*, 344 F.3d at 456 (emphasis added); *see also Beardmore v. Jacobson*, 131 F. Supp. 3d 656, 666–67 (S.D. Tex. 2015) (same).

WV alleges that Advanced Wellness and Barakat converted "Plaintiffs' property, including the confidential and proprietary information and trade secrets of Plaintiffs[.]" (Dkt. #1 at ¶ 155.) Beside the generic reference to "Plaintiffs' property," the Complaint fails to allege conversion of any tangible, physical property. Furthermore, even assuming that there could be some physical

property among the generic "Plaintiff's property," WV failed to allege that Advanced Wellness or

Barakat converted, *in Texas*, tangible property that belongs to each of the 26 WV. Therefore, WV's

claim of conversion likewise lacks the necessary nexus to Texas contacts Advanced Wellness or

Barakat purportedly had.

        d.     *Texas Theft Liability Act (TTLA)*

TUTSA became effective on September 1, 2013, and displaced both common-law

misappropriation-of-trade-secret and TTLA theft-of-trade-secret claims. *In re Mandel*, 578 Fed.

App'x 376, 384 n.8 (5th Cir. 2014) (per curiam) (unpub.); *Educ. Mgmt. Servs., LLC v. Tracey*, 102

F. Supp. 3d 906, 915 (W.D. Tex. 2015).

WV alleges that "Defendants have committed and continue to commit theft of WV's trade

secrets and confidential and proprietary information." (Dkt. #1 at ¶ 163.) Because WV failed to

allege any act or omission on the part of Advanced Wellness or Barakat occurring before

September 1, 2013,[9] Plaintiff cannot assert a TTLA claim against Advanced Wellness or Barakat

or connect any of their purported Texas contacts to a TTLA claim.

        e.     *Breach of contract*

WV's claim for breach of contract (Count 6) is merely a recitation of elements without

specifying who allegedly breached what obligation in which contract in relation to which WV

entity. (*See* Dkt. #1 at ¶¶ 174–181.) Indeed, WV failed to attach a single relevant contract to their

Complaint. Without any support or specificity, WV cannot possibly connect their contract claim

to any purported Texas contacts of Advanced Wellness or Barakat. Even assuming that WV is

referring to Advanced Wellness's alleged "promise[] not to disclose the confidential information

as defined in the Confidentiality Agreement" (Dkt.. #1 at ¶ 41)—which the Complaint fails to

---

[9]  The earliest date referenced in relation to Advanced Wellness and Barakat is the date on which Audet began working
for WorldVentures Holding, LLC, i.e., December 19, 2013. (Dkt. #1 at ¶ 100.)

specifically state—WV has nevertheless failed to show a Texas connection for the reasons extensively discussed, *supra* Section II.B.2.b. Furthermore, such promise was made by Advanced Wellness and not by Barakat in his individual capacity, and Advanced Wellness's corporate promise cannot be imputed to Barakat in determining personal jurisdiction. *See Grynberg,* 855 F. Supp. 2d at 645–46 (an employer's contacts with the jurisdiction cannot be imputed to the individual defendant). Additionally, WV has failed to even allege that Advanced Wellness or Barakat owes a non-soliciation obligation to WV.

f.    *Tortious interference with existing business relationships*

To prevail on a claim for tortious interference with an existing business relationship, WV must prove that there were "(1) unlawful actions undertaken without justification or excuse; (2) with intent to harm; (3) actual damages; and (4) the actions were motivated by malice" by Advanced Wellness and Barakat individually. *See Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 633–34 (5th Cir. 2002); *Adrain v. Genetec Inc.*, Civ. Action No. 2:08-CV-423-TJW, 2009 WL 3161386, at *3 (E.D. Tex. Sept. 30, 2009); *see also CF & I Steel Corp. v. Pete Sublett & Co.*, 623 S.W.2d 709, 715 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

The Complaint alleges that "the actions of Defendants described herein wrongfully interfere with WV's contracts with McKillip, Lowe, Fitzgerald, Siddy, Morgan and Audet." (Dkt. #1 at ¶ 193.) The Complaint contains no allegations that Advanced Wellness or Barakat undertook any unlawful actions in Texas to interfere with 26 WV entities' contracts or that each of the 26 WV entities had a contract with McKillip, Lowe, Fitzgerald, Siddy, Morgan, and Audet.

Additionally, WV is currently embroiled in numerous financial and legal difficulties around the world, including being the subject of government investigations, and are failing to pay compensation owed to various sales representatives, which is the reason they are voluntarily leaving WV in droves. *See* Pector Decl., ¶¶ 8- 10. While WV may be concerned that the departing

20

representatives will use genealogy or downline activity reports to recruit other representatives to leave the WV organization, such unsubstantiated claims would arise out of WV's agreements with the sales representatives—not out of the NDA with Advanced Wellness.

WV has hundreds of thousands of sales representatives in 28 international markets. *See* Pector Decl., ¶ 1, Ex. 14–16. WV's agreements with representatives provides for jurisdiction and mandatory, exclusive venue outside of this district and in many cases outside this country with foreign law governing. *See* Pector Decl., ¶ 1, Ex. 1–6. For example, U.K. WV representatives submit to the jurisdiction of England and Wales; Singapore WV representatives submit to the jurisdiction of the courts of Singapore; and Australia WV representatives submit to the jurisdiction in the State of New South Wales. *See id*. Interestingly, not even all U.S. WV representatives' agreements are subject to jurisdiction and venue in this District. Indeed, the venue that WV chose is the City of Dallas, Dallas County (except for Louisiana residents, who are subject to the jurisdiction as provided by Louisiana law). *See* Pector Decl., ¶ 1, Ex. 1. It is unclear why WV is now eschewing these choice of law and venue provisions that it knowingly agreed to in writing. What is clear, however, is that any dispute regarding the sales representatives' contracts with WV is subject to jurisdiction and venue outside this district. Thus, WV has failed to connect Advanced Wellness or Barakat's Texas contacts with each of the 26 WV entities' tortious interference claim.

g.    *Unfair competition*

"Under Texas law, unfair competition is not an independent cause of action; rather, it is an 'umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters.'" *WickFire, LLC v. Trimax Media, Inc.*, A-14-CA-34-SS, 2016 WL 4119917, at *7 (W.D. Tex. filed Mar. 25, 2016) (quoting *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App.—Waco 1993, writ denied); *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th

Cir. 1974)). To plead unfair competition, a claimant must at least identify an independent "illegal

act by the defendant which interfered with the plaintiffs' ability to conduct its business" and which

"must at least be an independent tort." *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir.

2000) (citing *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904-05 (Tex. App.—Dallas 1989, writ

denied)). Courts have "identified several causes of action[] that fall under the penumbra of unfair

competition under Texas law," including "trade-secret law, palming off or passing off, and

misappropriation." *Seatrax, Inc. v. Sonbeck Intl, Inc.*, 200 F.3d 358, 368 (5th Cir. 2000) (internal

quotation omitted).

Advanced Wellness and Barakat have established that their purported Texas contacts (or

the lack thereof) are not connected to any of WV's other causes of action. Therefore, WV has

failed to show a nexus between Advanced Wellness or Barakat's alleged Texas contacts and the

claim for unfair competition. Thus, the burden should not shift to Advanced Wellness or Barakat

"to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *See Nana

Joes*, 2018 WL 905531, at *1. This Court lacks specific jurisdiction over Advanced Wellness and

Barakat as to each of the asserted claims in WV's Original Complaint by each of the 26 WV

entities. Therefore, the Court should grant Advanced Wellness and Barakat Motion to Dismiss

under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

**IV. Motion to Dismiss for Improper Venue (28 U.S.C. § 1391 and Fed. R. Civ. P. 12(b)(3))[10]**

**A.       The majority view places the burden of establishing proper venue on plaintiffs.**

Admittedly, the burden for establishing the propriety of venue has not been uniform among

the Circuits, and even varies within the Fifth Circuit. *Payne v. Grayco Cable Servs., Inc.,* No. 1:11-

CV-487-MAC, 2011 WL 13076902, at *2 (E.D. Tex. Dec. 8, 2011) (recognizing inconsistency

---

[10] In the unlikely event that the Court finds that "MaVie" has capacity to be sued, "MavVie" joins this motion to
dismiss for improper venue for the reasons stated by Advanced Wellness.

within Fifth Circuit). But the "majority of courts hold that when an objection to venue is raised, the plaintiff bears the burden of demonstrating that venue is proper in the selected forum." *Id.*[11] "There are cases holding that the burden is on the objecting defendant to establish that venue is improper. But 'the better view,' and the clear weight of authority, is that, when objection has been raised, the burden is on the plaintiff to establish that the district he chose is a proper venue." 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3826, at 259 (1986); *accord Rentea v. Janes*, No. A-11-CV-031, 2011 WL 3022568, at *2 (W.D. Tex. July 22, 2011) (characterizing the majority position as the "better view").

Some courts, however (including some decisions in the Eastern District of Texas) have placed the burden of disproving propriety of venue on Advanced Wellness or Barakat. *See Payne*, 2011 WL 13076902, at *2 (collecting cases).[12] But the "majority approach is better reasoned and comports with the purpose of statutory venue" because to "hold otherwise would circumvent the purpose of the venue statutes—it would give plaintiffs an improper incentive to attempt to initiate actions in a forum favorable to them but improper as to venue." *Id.* at * 3 (citing *Seariver Maritime*, 952 F. Supp. at 458).

Thus, "[o]nce a defendant raises a 12(b)(3) motion to dismiss for improper venue, the burden of sustaining venue lies with the plaintiff." *Langton v. Cbeyond Comm'cn, L.L.C.*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003) (Davis, J.) (citing *Laserdynamics Inc. v. Acer Am. Corp.*, 209

---

[11] Citing, among others, *Williamson-Dickie Mfg. Co. v. M/V Heinrich J*, 762 F. Supp. 2d 1023, 1026 (S.D. Tex. 2011); *Uviado, LLC ex rel. Khan v. U.S. ex rel. I.R.S.*, 755 F. Supp. 2d 767, 779 (S.D. Tex. 2010); *Norsworthy v. Mystik Transp., Inc.*, 430 F. Supp. 2d 631, 633 (E.D. Tex. 2006) (Ward, J.); *McCaskey v. Cont'l Airlines, Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001); *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000); *Seariver Maritime Fin. Holdings, Inc. v. Pena*, 952 F. Supp. 455, 458 (S.D. Tex. 1996)).

[12] *Rimkus Consulting Grp., Inc. v. Balentine*, 693 F. Supp. 2d 681, 689 (S.D. Tex. 2010); *The Bear Stearns Cos. Inc. v. Lavalle*, No. 300CV1900-D, 2001 U.S. Dist. LEXIS 4913, 2001 WL 406217, at *5 (N.D. Tex. Apr. 18, 2001); *Tex. Marine & Brokerage, Inc. v. Euton*, 120 F. Supp. 2d 611, 612 (E.D. Tex. 2000) (Cobb, J.); *Bounty-Full Entm't, Inc. v. Forever Blue Entm't Grp., Inc.*, 923 F. Supp. 950, 959 (S.D. Tex. 1996) (citing *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982), *cert. denied*, 462 U.S. 1106 (1983) (citing 1 J. Moore, Moore's Federal Practice ¶ 0.140[1], at 1319-20 (2d ed. 1982))).

F.R.D. 388, 390 (S.D. Tex. 2002); *Bigham*, 123 F. Supp. 2d at 1048); Fed. R. Civ. P. 12(b)(3); *see*

*also Williamson-Dickie Mfg.*, 762 F. Supp. 2d at 1026 (nothing that "[t]he majority of courts

conform to the standard that once a defendant has raised the improper venue issue by motion, the

burden of sustaining venue rests with the plaintiff).

> Under the general venue statute, a civil action may be brought in:
>
> (1) a judicial district in which any defendant resides, if all defendants are residents
>     of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving
>     rise to the claim occurred, or a substantial part of property that is the subject of
>     the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided
>     in this section, any judicial district in which any defendant is subject to the
>     court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b) (2018).

**B.      Venue is not proper in the Eastern District of Texas.**

Venue is improper in this district because the three categories of permissible venue do not

apply here. 28 U.S.C. § 1391.

First, section (a)(1) "residential venue" does not apply because not all defendants are Texas

residents. *See McCaskey*, 133 F. Supp. 2d at 523 (noting "an important limitation" to residential

venue under § 1391(a)(1): "all defendants must reside in the same state").

Second, section (a)(2) "transactional venue" also does not apply because the Complaint

does not allege sufficient facts to support a finding that a substantial part of the events or omissions

giving rise to WV's claims occurred in this district. *See supra*, Section II.B.2.

The general rule is that venue must be established for each separate cause of action and for

each defendant. *Asevedo v. NBCUniversal Media, LLC*, 921 F. Supp. 2d 573, 589 (E.D. La. 2013)

("[I]t is well established that in a case involving multiple defendants and multiple claims, the

plaintiff bears the burden of showing that venue is appropriate as to each claim and as to each

defendant.") (quoting *Hickey v. St. Martin's Press, Inc.*, 978 F. Supp. 230, 240 (D. Md. 1997)). Indeed, "venue under section (a)(2) must be established against *each* 'claim' and against *each* defendant." *McCaskey*, 133 F. Supp. 2d at 523 (emphasis orig., internal citation omitted). Here, WV has not established that a substantial part of Advanced Wellness or Barakat's alleged acts or omissions in this District gave rise to any of the asserted claims by the of the 26 WV entities.

While WV relies on the venue selection provision in the NDA and the Proposal, WV's reliance is misplaced because it only applies to Advanced Wellness, not Barakat, and the Proposal, by WV's own admission, was never signed. *See Calder,* 465 U.S. at 784 ("[e]ach defendant's contacts with the forum State must be assessed individually"). Further, the provision does not govern any of WV's claims against Advanced Wellness or Barakat because (as extensively discussed above) WV's claims are not based on alleged confidential information disclosed under the Agreement but instead based on public information of who WV's representatives are. *See supra*, Section II.B.2.b(2); Pector Decl., ¶¶ 6-7.

Moreover, any disputes regarding alleged tortious interference with WV's contracts with their sales representatives is subject to WV's mandatory venue provision choosing Dallas County (or Louisiana) or another venue outside the United States. Pector Decl., ¶ 1, Ex. 1–6. Thus, the "transactional venue" does not lie in this District for any of WV's claims against Advanced Wellness or Barakat.

Third, section (a)(3), the "fall back venue," does not apply because the Court lacks personal jurisdiction over Advanced Wellness or Barakat. It is "firmly established" that "in an action involving multiple defendants[,] venue and jurisdiction requirements must be met as to each defendant." *Blue Spike, LLC v. Caterpillar, Inc.*, No. 6:16-cv-1361-RWS, 2017 WL 4129321, at *2 (E.D. Tex. Sept. 19, 2017). Thus, it is immaterial that other Defendants may be subject to

personal jurisdiction in Texas. *See id.* Venue is improper in this District as to both Advanced Wellness and Barakat, and therefore the Court should grant a motion to dismiss under section 1406 and Rule 12(b)(3). *See* 28 U.S.C. § 1406(a);[13] Fed. R. Civ. P. 12(b)(3).

### V. Motion to Dismiss for Insufficient Process (Fed. R. Civ. P. 12(b)(4)) and Insufficient Service of Process (Fed. R. Civ. P. 12(b)(5))

**A.      Foreign defendants must be properly served under Fed. R. Civ. P. 4(f) and (h).**

"Generally speaking, 'an objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service,' while a 'Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint.'" *Gartin v. Par Pharm. Cos., Inc.*, 289 F. App'x 688, 691 n.3 (5th Cir. 2008) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1353).

Foreign "Defendants must be properly served for the Court to maintain jurisdiction over them." *House v. S. P. Richards Corp.*, Case. No. H-12-3704, 2014 WL 427897, at *2 (S.D. Tex. Feb. 4, 2014). Even if a foreign defendant receives an informal notice via postal service, the court "has no jurisdiction over the [foreign] Defendants until they are properly served under the Federal Rules of Civil Procedure[.]" *Id.* (dismissing defendants who were not properly served).

WV must use "a method that is reasonably calculated to give notice" to Barakat and Audet:

(A) as prescribed by the foreign country's law for service in that country in an
    action in its courts of general jurisdiction;
(B) as the foreign authority directs in response to a letter rogatory or letter of
    request; or
(C) unless prohibited by the foreign country's law, by:
     (i) delivering a copy of the summons and of the complaint to the individual
         personally; or
     (ii) using any form of mail that the clerk addresses and sends to the individual
          and that requires a signed receipt; or
(3) by other means not prohibited by international agreement, as the court orders.

---

[13] Pending the Court's decision on the present motion, Advanced Wellness, Barakat, and Audet reserves its right to move to transfer this case under 28 U.S.C. § 1404.

Fed. R. Civ. P. 4(f)(2). Thus, WV must serve Advanced Wellness Singapore according to the laws of Singapore and serve Barakat under the law of United Arab Emirates.

**B.     This Court lacks jurisdiction over Advanced Wellness and Barakat without proper service under the Federal Rules of Civil Procedure.**

Advanced Wellness and Barakat are mindful that the Court ordered that "[a]ctual notice of this [Temporary Restraining] Order shall be effective by delivery of a copy of this Order by hand, by United States mail by certified delivery return receipt requested, by courier or private delivery service, by facsimile, by e-mail or by any other reasonable means of delivery to Defendants or any of their agents, assigns, affiliates register agents or representatives." (TRO, Dkt. #5 at p. 13, ¶ 3.) But nowhere in the TRO or the order granting expedited discovery (Dkt. #6) did the Court authorize substitute service of the summons and the Complaint.

Subject to the objections to personal jurisdiction, venue, insufficient process, and insufficient service of process, Advanced Wellness and Barakat have been committed to being compliant with the TRO since Advanced Wellness received the TRO via hand-delivery on June 8. But Advanced Wellness and Barakat reserve their rights to receive sufficient service of the summons and Complaint properly because, without proper service, this Court further lacks jurisdiction over Advanced Wellness or Barakat. *See House*, 2014 WL 427897, at *2.

For service on Advanced Wellness, under Order 62, Rule 3 read with Order 65, Rule 2A of the Rules of Court of Singapore, personal service requires the originating process documents to be personally served on an officer of a company. As noted above, the package containing the summons and complaint was hand delivered an appropriate officer of Advanced Wellness. Thus, service on Advanced Wellness is improper.

Barakat also has not been properly served under Rule 4(f)(2). Further, as noted above, the summons issued as to Barakat has both a wrong name and a wrong address. (*Compare* Dkt. #7 *to*

Barakat Decl., ¶ 10.) Barakat is a resident of the United Arab Emirates, and cannot be served at Advanced Wellness's headquarters in Singapore. (Barakat Decl., ¶ 42.)

WV's failure to conduct the requisite pre-suit due diligence as to the correct names[14] of the parties and the proper methods and place of service, is yet another defect in WV's Complaint. Because WV failed to properly serve sufficient process on Advanced Wellness or Barakat, the Court should dismiss Advanced Wellness and Barakat under Rule 12(b)(4) and (5).

### VI. MaVie's Motions to Dismiss Under Fed. R. Civ. P. 9(a) and 12(b)(6) for Lack of Capacity to Be Sued and Under Rule 12(b)(4) and (5) for Insufficient Process and Insufficient Service of Process

**A.     "MaVie" is not a legal entity and thus cannot be separately sued.**

To raise issue as to "the legal existence of an organized association of persons that is made a party," a "party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge." Fed. R. Civ. P. 9(a). The Fifth Circuit has implicitly approved 12(b) motions arguing the lack of capacity to be sued. *See Mireles v. City of Harlingen*, Civ. Action No. B-13-cv-81, 2013 U.S. Dist. LEXIS 186342, *21 (S.D. Tex. 2013) (citing *Darby v. Pasadena Police Dep't*, 939 F.2d 311 (5th Cir. 1991)).

To survive a motion to dismiss, a complaint must state "the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007). A complaint must contain sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is

---

[14] *See infra*, Sec. V, regarding "MaVie."

not enough that the facts permit the "mere possibility of misconduct"; it requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* While all well-pleaded facts are taken as true for the purposes of deciding the 12(b)(6) motion. *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), the Court need not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Great Lakes Dredge & Dock, Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010).

WV sued MaVie without conducting adequate due diligence. WV alleges without any support that "MAVIE is believed to be incorporated into either Singapore or Cyprus" even though they admit "MAVIE's corporate structure, organization and ownership is unknown at this time." (Dkt. #1 at ¶ 14.) MaVie does not exist as a separate legal entity. Barakat Decl., ¶ 3. WV has failed to show that MaVie is a separate legal entity capable of being sued. *See Mireles*, 2013 U.S. Dist. LEXIS 186345, at *22 (dismissing defendants for whom plaintiff did not meet his burden of pleading). Further, this Court lacks personal jurisdiction over MaVie. Therefore, MaVie moves to dismiss all claims asserted against it for WV's failure to state a claim.

**B.     The summons against "MaVie" insufficient, and the proposed method of service is also insufficient.**

The summons issued as to "MaVie" lists the service address as:

> MAVIE
> By and through its Registered Agent for Service
> Abboud Barakat
> 6 Temasek Boulevard, #09-05 Suntec Tower 4
> Singapore 038986

(Dkt. #17.) "MaVie" cannot be served summons at this address because it is not a legal entity capable of being sued (Barakat Decl., ¶ 3). Further, Barakat is not a "Registered Agent for Service" for MaVie (*see* Barakat Decl., ¶ 41). Finally, Barakat cannot be served at Advanced Wellness's headquarters in Singapore (Barakat Decl., ¶¶ 41–42; *see supra*, Section IV.B). Accordingly, the

Court should dismiss MaVie for insufficient process and insufficient service of process under Rule 12(b)(4) and (5).

## VII. Conclusions

WV has not articulated sufficient facts in its Complaint to support this Court's personal jurisdiction over Advanced Wellness or Barakat, and WV has not identified the nexus between Advanced Wellness or Barakat's purported Texas contacts with each of the 26 WV entities' asserted claims. Therefore, personal jurisdiction has not been established as to Advanced Wellness or Barakat. Further, venue is improper in this District as to each of the asserted claim and as to Advanced Wellness and Barakat individually. The jurisdiction and venue clause in the NDA does not apply because none of WV's claims arise out of confidential information disclosed to Advanced Wellness under the Agreement, and WV has not established that any of the 26 WV entities' asserted claims arose out of Advanced Wellness or Barakat's act or omissions in this District. Finally, this Court cannot exercise jurisdiction over Advanced Wellness and Barakat until each of them have been properly served under Rule 4 of the Federal Rules of Civil Procedure.

Further, Defendant "MaVie" is not a legal entity and thus cannot be separately sued. The summons issued against "MaVie" is insufficient, and the proposed method of service is improper.

Accordingly, Advanced Wellness, Barakat, and MaVie respectfully request that the Court dismiss all claims of WV's claims against them.

Dated: June 15, 2018

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Michelle Pector*

Michelle Pector, Lead Attorney
State Bar No. 24027726
michelle.pector@morganlewis.com

Veronica J. Lew
State Bar No. 24082110
veronica.lew@morganlewis.com

Yon-Sun W. Sohn
State Bar No. 24083888
yon.sohn@morganlewis.com

Maryann Zaki
State Bar No. 24088707
maryann.zaki@morganlewis.com

1000 Louisiana, Suite 4000
Houston, Texas 77002
(713) 890-5000 Telephone
(713) 890-5001 Facsimile

**SIEBMAN, FORREST, BURG & SMITH, LLP**

Clyde M. Siebman
State Bar No. 18341600
clydesiebman@siebman.com

Elizabeth Forrest
State Bar No. 24086207
elizabethforrest@siebman.com

Federal Courthouse Square
300 North Travis Street
Sherman, TX 75090

*Attorneys for Defendants "MaVie,"*
*Advanced Wellness Solutions Pte. Ltd.,*
*and Abdelwadoud Barakat*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has this day been served electronically by transmission to an electronic filing service provider for service through the Court's Case Management/Electronic Case Files (CM/ECF) system to the attorneys of record for Plaintiffs.

*/s/ Michelle Pector*
Michelle Pector

**CERTIFICATE OF COMPLIANCE**

Pursuant to L. R. CV-5(7) a motion to seal this document and its attachments has been filed and Defendants will serve an electronic copy of this document on opposing counsel.

*/s/ Michelle Pector*
Michelle Pector