# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| WorldVentures Holdings LLC,<br>WorldVentures Marketing LLC,<br>WorldVentures Marketing Limited,<br>WorldVentures Canada Inc.,<br>WorldVentures Marketing B.V.,<br>WorldVentures Marketing (Hong Kong) Limited,<br>WorldVentures Marketing Pte. Ltd.,<br>WorldVentures Taiwan Ltd.,<br>WorldVentures Marketing Pty. Ltd.,<br>WorldVentures Marketing Jamaica Limited,<br>WorldVentures Services LLC,<br>WorldVentures Cooperatief U.A.,<br>WorldVentures Marketing SP ZO.O,<br>WorldVentures Marketing South Africa (Pty) Ltd.,<br>WorldVentures Enterprises LLC,<br>WV Services Malaysia SDN BHD<br>WorldVentures Marketing SRL,<br>WorldVentures Marketing (Cyprus) Limited,<br>WorldVentures Marketing D.O.O. Berograd,<br>WorldVentures Marketing SL D.O.O.,<br>WorldVentures Marketing Limited,[1]<br>WorldVentures Marketplace LLC,<br>WorldVentures Holdings (Netherlands) B.V.,<br>WorldVentures Marketing Limited (New Zealand),<br>WorldVentures Marketing Colombia S.A.S., and<br>WorldVentures Holdings Asia Pte. Ltd., | | Civil Action No.<br>4:18-cv-393-ALM<br><br>Jury Trial Demanded |
| *Plaintiffs*, | | |
| v. | | |
| MaVie,<br>ARIIX Holdings, LLC, ARIIX International, Inc.,<br>Advanced Wellness Solutions Pte. Ltd.,<br>Abboud Barakat, individually,<br>Jonathan McKillip, individually,<br>Kyle Lowe, individually,<br>Anthony Fitzgerald, individually,<br>Michelle Siddy, individually,<br>Kemble Morgan, individually, and<br>Daniel Audet, individually, | | |
| *Defendants,* | | |

---

[1] WorldVentures Marketing Limited is listed twice in the Complaint (Doc. #1). Movants are without sufficient information to determine whether the duplication was in error.

**DEFENDANTS ADVANCED WELLNESS SOLUTIONS PTE. LTD., ABDELWADOUD BARAKAT,[2] AND MAVIE'S EMERGENCY MOTION TO DISSOLVE PLAINTIFFS' *EX PARTE* TEMPORARY RESTRAINING ORDER[3]**

MORGAN, LEWIS & BOCKIUS LLP

 /s/ Michelle Pector

Michelle Pector, Lead Attorney
State Bar No. 24027726
michelle.pector@morganlewis.com

Veronica J. Lew
State Bar No. 24082110
veronica.lew@morganlewis.com

Yon-Sun W. Sohn
State Bar No. 24083888
yon.sohn@morganlewis.com

Maryann Zaki
State Bar No. 24088707
maryann.zaki@morganlewis.com

1000 Louisiana, Suite 4000
Houston, Texas 77002
(713) 890-5000 Telephone
(713) 890-5001 Facsimile

SIEBMAN, FORREST, BURG & SMITH, LLP

Clyde M. Siebman
State Bar No. 18341600
clydesiebman@siebman.com

Elizabeth S. Forrest
State Bar No. 24086207
elizabethforrest@siebman.com

Federal Courthouse Square
300 North Travis Street
Sherman, TX 75090

*Attorneys for Defendants*
*Advanced Wellness Solutions Pte. Ltd.,*
*Abdelwadoud Barakat, and MaVie*

---

[2] Abdelwadoud Barakat is incorrectly named Abboud Barakat in the Plaintiff's Complaint.
[3] This Motion is filed subject to the Moving Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, Insufficient Process, Insufficient Service of Process and Lack of Capacity to Be Sued.

# TABLE OF CONTENTS

I.     INTRODUCTION AND GROUNDS FOR DISSOLUTION ........................................... 1

II.    PROCEDURAL HISTORY............................................................................................. 6

III.   THE TRO SHOULD BE DISSOLVED BECAUSE IT FAILS TO MEET THE REQUIREMENTS OF FRCP 65........................................................................................ 9

    A.     Plaintiffs have failed to meet the Fed. R. Civ. P. 65(b)(1)(A) requirements .......... 9

         1.    The Head Affidavit does not contain specific facts to support the TRO.... 9

         2.    Plaintiffs' have not and cannot show immediate and irreparable injury .. 12

    B.     The notice requirements in Fed. R. Civ. P. 65(b)(l)(B) were not met .................. 15

    C.     The $1,000 bond is insufficient to cover the damages that the Moving Defendants would sustain ........................................................................................................ 16

    D.     The TRO does not contain the necessary content and scope ............................... 17

IV.   PLAINTIFFS FAILED TO PROVE THE EQUITABLE FACTORS ............................ 22

    A.     Plaintiffs have not shown they are likely to succeed on the merits ..................... 23

    B.     Plaintiffs have failed to show a substantial threat of irreparable injury .............. 25

    C.     The harm to the Moving Defendants weighs in favor of dissolving the TRO...... 26

    D.     Plaintiffs failed to show that the TRO would not adversely affect public interest 28

V.    ALTERNATIVELY, THE TRO SHOULD BE MODIFIED........................................... 29

IV.   CONCLUSION............................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anadarko Petroleum Corp. v. Davis*,
No. H-06-2849, 2006 WL 3837518 (W.D. Tex. 2006) .........................................................22

*Black Fire Fighters Ass'n v. City of Dallas*,
905 F.2d 63 (5th Cir. 1990) ..................................................................................................5, 23

*City of N.Y. v. Mickalis Pawn Shop, LLC*,
645 F.3d 114 (2d Cir. 2011)..................................................................................................18

*Columbia Pictures Ind., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) ..............................................................................................20

*Continuum Co., Inc. v. Incepts, Inc.*,
873 F.2d 801 (5th Cir. 1989) ................................................................................................17

*Cooper-Schut v. Visteon Automotive Systems*,
361 F.3d 421 (7th Cir. 2004) ................................................................................................11

*Deerfield Med. Ctr. V. City of Deerfield Beach*,
661 F.2d 329 (5th Cir. 1981) ..........................................................................................13, 26

*Doe v. Veneman*,
380 F.3d 807 (5th Cir. 2004) ................................................................................................18

*E. W. Bliss Co. v. Struthers-Dunn, Inc.*,
408 F.2d 1108 ........................................................................................................................22

*Firmin v. Richard Constr., Inc.*,
Civ. Action 12-1391, 2012 U.S. Dist. LEXIS 81048 (E.D. La. June 11, 2012).....................21

*Flywheel Fitness, LLC v. Flywheel Sports, Inc.*,
No. 4:13-CV-48, 2013 WL 12138593 (E.D. Tex. Feb. 6, 2013)................................12, 26, 28

*Gonannies, Inc. v. Goupair.Com, Inc.*,
464 F. Supp. 2d 603 (N.D. Tex. 2006) ................................................................................12

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*,
415 U.S 423 (1974).................................................................................................................9

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999)...............................................................................................................23

*Henderson v. Davis*,
No. 6:17-cv-320-RC-JDL, 2018 WL 1309871 (E.D. Tex. Feb. 8, 2018)................................11

*Holland Am. Ins. Co. v. Succession of Roy*,
777 F.2d 992 (5th Cir. 1985) ................................................................................................22

*Humana, Inc. v. Avrm A. Jacobson, M.D., P.A.*,
804 F.2d 1390 (5th Cir. 1986) ................................................................................................9

*Kewanee Oil Co. v. Bicron Corp.*,
416 U.S. 470 (1974)..............................................................................................................22

*M-I LLC v. Argus Green LLC*,
2:10-CV-24-DF-CE, 2010 WL 11527419 (E.D. Tex. July 13, 2010) ....................................12

*Meyer v. Brown & Root Constr. Co.*,
661 F.2d 369 (5th Cir. 1981) ................................................................................................18

*Mississippi Power & Light Co. v. United Gas Pipe Line Co.*,
70 F.2d 618 (5th Cir. 1985) ..................................................................................................23

*Nichols v. Alcatel USA, Inc.*
532 F.3d 364 (5th Cir. 2008) ..................................................................................................9

*Sammartano v. First Judicial Dist. Ct., in & for Cty. Of Carson City*,
303 F.3d 959 (9th Cir.) ..........................................................................................................29

*Schmidt v. Lessard*,
414 U.S. 473 (1974)..............................................................................................................20

*Scott v. Schedler*,
826 F.3d 207 (5th Cir. 2016) ..........................................................................................18, 20

*Smith v. U.S.*,
No. 0-07-CV-0313-D, 2007 WL 5909917 (N.D. Tex. July 20, 2007) ....................................13

*U.S. Steel Corp. v. United Mine Workers of Am.*,
519 F.2d 1236 (5th Cir. 1975) ..............................................................................................20

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008)..................................................................................................................26

*Zepada v. U.S. I.N.S.*,
753 F.2d 719 (9th Cir. 1983) ................................................................................................22

**Other Authorities**

Fed. R. Civ. P. 65(b) .........................................................................................................9, 10

Fed. R. Civ. P. 65(b)(1) ..........................................................................................................9

Fed. R. Civ. P. 65(b)(1)(1) ......................................................................................................4

Fed. R. Civ. P. 65(b)(1)(A) ..............................................................................................9, 12

Fed. R. Civ. P. 65(b)(l)(B) ........................................................................................4, 15, 16

Fed. R. Civ. P. 65(c) .........................................................................................................16, 17

Fed. R. Civ. P. 65(d) ................................................................................................. *passim*

Fed. R. Civ. P. 65(d)(1) ....................................................................................................18, 21

Fed. R. Civ. P. 65(d)(l)(B) and (C) ...................................................................................18

Fed. R. Evid. 602 ...............................................................................................................11

Defendants Advanced Wellness Solutions Pte. Ltd. ("Advanced Wellness"), Abdelwadoud Barakat ("Barakat") and "MaVie",[4] (collectively, "Moving Defendants")[5] respectfully submit this Emergency Motion to Dissolve Plaintiffs' *Ex Parte* Temporary Restraining Order (TRO Dkt. # 5, the "TRO") issued by the Court (the "Motion") because Plaintiffs have failed to meet the procedural and substantive requirements under Rule 65 of the Federal Rules of Civil Procedure for this extraordinary relief. This Motion is filed on an emergency basis because the injunctive relief obtained by Plaintiffs *ex parte*, is overly broad, ambiguous, unreasonable and was sought by Plaintiffs to gain an unfair competitive advantage. The Moving Defendants have grave concerns about the irreparable harm the TRO has and will continue to impose on the Moving Defendants if not dissolved and the disparaging manner in which Plaintiffs are publicizing and offensively using the TRO to preclude competition and damage Defendants' reputations. Given the gravity of the harm to the Moving Defendants, including that the TRO would necessarily require the Moving Defendants to violate certain laws in other countries by not paying compensation and delivering products that have been paid for, the Moving Defendants respectfully seek emergency relief from this Court.

## I.      INTRODUCTION AND GROUNDS FOR DISSOLUTION

1.      Plaintiffs[6]--twenty-six WorldVentures entities (collectively, "Plaintiffs" or "WV") the vast majority of which are foreign companies, operate as a worldwide pyramid scheme, which

---

[4] MaVie is a brand; it is not an entity. However, to the extent it is required to participate in this litigation as a party, it joins this Motion.

[5] Hereinafter references "Defendants" will refer to all named defendants.

[6] Plaintiffs include WorldVentures Holdings LLC, WorldVentures Marketing LLC, WorldVentures Marketing Limited, WorldVentures Canada Inc., WorldVentures Marketing B.V., WorldVentures Marketing (Hong Kong) Limited, WorldVentures Marketing Pte. Ltd., WorldVentures Taiwan Ltd., WorldVentures Marketing Pty. Ltd., WorldVentures Marketing Jamaica Limited, WorldVentures Services LLC, WorldVentures Cooperatief U.A., WorldVentures Marketing SP ZO.O, WorldVentures Marketing South Africa (Pty) Ltd., WorldVentures Enterprises LLC, WV Services Malaysia SDN BHD WorldVentures Marketing SRL, WorldVentures Marketing (Cyprus) Limited, WorldVentures Marketing D.O.O. Berograd, WorldVentures Marketing SL D.O.O., WorldVentures

has been or is currently under investigation by authorities in other countries for tax evasion and other unlawful business practices. Liability findings and criminal implications that have already been imposed on certain of the Plaintiffs in Asia and Europe along with widespread failure to timely pay compensation to various representatives has led to the dramatic decline in Plaintiffs' business, reputation and revenues. Through this lawsuit, Plaintiffs seek to make the Moving Defendants scapegoats for Plaintiffs' business failures, which preexisted Plaintiffs even meeting the Moving Defendants. In doing so, Plaintiffs have knowingly used an *ex parte* TRO and the vehicle of a Texas based lawsuit to unlawfully prevent the Moving Defendants from conducting their business in foreign countries and to effectively impose a worldwide non-solicitation agreement that operates as a non-compete on Plaintiffs' prior representatives for which Plaintiffs have failed to establish a legitimate protectable business interest. Not only does Plaintiffs' plan raise significant anti-competition concerns, but Plaintiffs have come to the Court with unclean hands. The Moving Defendants, which are all based in Asia, deny Plaintiffs' inflammatory allegations and maintain that they should be dismissed from this matter for a variety of reasons, including that they are not subject to this Court's personal jurisdiction. Notwithstanding, given the worldwide and severe impact of the TRO as drafted by Plaintiffs, the premeditated intent, which motivated the pursuit of an ex parte TRO by Plaintiffs, and the legal exposure certain restrictions in the TRO would subject the Moving Defendants to in other countries, the Moving Defendants seek to dissolve the TRO on an emergency basis.

    2.    On June 4, 2018, Plaintiffs filed an Emergency Application for Ex Parte Temporary Restraining Order (TRO Dkt. # 2, "Application"), to prohibit the Moving Defendants from conducting business in multilevel marketing direct sales, including the sale of products that

---

Marketing Limited, WorldVentures Marketplace LLC, WorldVentures Holdings (Netherlands) B.V., WorldVentures Marketing Limited (New Zealand), WorldVentures Marketing Colombia S.A.S.

Plaintiffs do not compete with,[7] and from doing business with any person who works for Plaintiffs or who had worked for Plaintiffs in the last twelve (12) months, regardless of their contractual obligations to Plaintiff.

3.      Prior to filing the Application, Plaintiffs made **no** effort to contact the Moving Defendants to discuss any alleged violations of any agreements nor did Plaintiffs contact the Moving Defendants regarding any alleged misappropriation of trade secrets or confidential and proprietary information. In fact, not one cease and desist or notice letter was ever sent to the Moving Defendants before Plaintiffs exercised the extreme measure of suing them in Texas. Instead, Plaintiffs chose to bushwhack the Moving Defendants by filing an *ex parte* motion for a temporary restraining order for the purpose of disrupting the Moving Defendants' business outside of the United States.

4.      In the Application, Plaintiffs make several broad conclusory allegations and statements regarding the alleged harm that may arise if Plaintiffs' Application is not granted. However, despite voluminous nature of their pleadings, Plaintiffs have failed to provide evidence to support the TRO. Although purportedly describing them in the Complaint, Plaintiffs have failed to provide any contracts or agreements in support of the Application. Instead, the Application merely attaches a sole affidavit, which constitutes a compilation of conclusory statements about the alleged misappropriation, conspiracy, damages, or purported harm, but is exceedingly sparse in terms of containing competent and admissible evidence. Based on Plaintiffs' *ex parte* Application, the Court relied on the voluminous conclusory assertions of Plaintiffs and granted their far-sweeping worldwide injunctive relief.

---

[7] The Moving Defendants strenuously disagree with Plaintiffs' contention that MaVie competes with Plaintiffs.

5.      The Application and TRO fails to meet the requirements of Federal Rule of Civil

Procedure 65 in numerous respects and should be dissolved for the following reasons:

- Federal Rule of Civil Procedure 65(b)(1)(A) requires specific facts in an affidavit or verified complaint that clearly show immediate and irreparable harm. Here, Plaintiffs have failed to meet either prong. First, the conclusory and defective affidavit of Mr. Kenneth Edward Head is based not on his personal knowledge, but rather on the "information and belief" and alleged "corporate knowledge" of WV. (Head Aff., Dkt. # 2-1). Second, Plaintiffs waited for almost one year from the date that the alleged conspiracy began to file suit. This evidences a lack of immediate and irreparable harm.

- Plaintiffs did not meet the notice requirements of Federal Rule of Civil Procedure 65(b)(1)(B). Plaintiff's counsel did not certify the efforts made (none were made) to give notice nor did he give any reason why notice should not be required (because no valid reason for the lack of notice exists).

- The $1,000 bond is wholly insufficient under the rules given the wide sweeping restrictions in the TRO and the irreparable harm it has and will continue to cause the Moving Defendants. The bond is insufficient to assure the Moving Defendants that their damages would be covered if it is shown that they were improperly enjoined. The worldwide implications of the injunction, reputational harm and the potential lost profits and other negative business impacts to the Moving Defendants far exceeds $1,000. If the TRO were to be extended as written, the injury could easily exceed hundreds of thousands of dollars to the Moving Defendants. Advanced Wellness's average monthly revenue was between $500,000 to $700,000 *per month*. Declaration of Abdelwadoud Barakat, ("Barakat Decl.") ¶ 38 (attached hereto as Ex. B).

- The TRO is overly broad and vague as written and therefore violates Rules 65(d) of the Federal Rule of Civil Procedure. In particular, the TRO fails to identify the persons subject to the order or the confidential, proprietary, and/or trade secret information that is to be protected. When the Head Affidavit, the only evidence submitted by Plaintiffs, is carefully analyzed, it is substantially devoid of any specific information regarding the alleged wrongdoing, damages, and description of the elements necessary to establish the existence of any legitimate trade secrets.[8] The confidential information is defined in such broad and conclusory terms that it is impossible to know what is and what is not protected among the documents and

---

[8] *See* Attached hereto as Exhibit "A" are the Moving Defendants' objections to the Affidavit of Mr. Kenneth Edward Head. Defendants object to the affidavit on the grounds that, in many material respects, it is not based on personal knowledge, is based substantially on conclusory allegations and unsourced hearsay, and contains the affiant's interpretations of the contracts and agreements between the Parties rather than attaching the actual agreements and contracts themselves, which would be the best evidence. Because Head's defective affidavit is the only evidence filed by Plaintiffs in support of their TRO application and Plaintiffs have failed to comply with the strict obligations required by law to justify entry of an ex parte TRO, the TRO should be promptly dissolved as a matter of law.

information possessed by Plaintiffs. Exhibit "A", attached hereto, sets forth the paragraphs of the Head Affidavit and highlights the factual deficiencies.

6.      Additionally, Plaintiffs have failed to show: (1) a substantial likelihood of recovery on the merits, (2) substantial threat of irreparable injury if the injunction is not granted, (3) that the threatened injury outweighs the threatened harm to the Moving Defendants, and (4) the preliminary injunction will not disserve the public interest. Failure to meet **any one of these factors** requires the dissolution of a temporary restraining order by law. Here, Plaintiffs have failed to carry their burden on any and all of these elements. *Black Fire Fighters Ass 'n v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990). In particular,

- Plaintiffs have not shown that they are likely to succeed on the merits of their claims and *only* identify their tortious interference claim as the sole claim for which they assert there is substantial likelihood of recovery on the merits. Significantly, however, Plaintiffs have not provided specific evidence as to any of the four elements of tortious interference nor has Plaintiffs submitted competent evidence to support their other claims. The Head Affidavit does not set forth facts that would entitle Plaintiffs to relief on their claims.

- Plaintiffs have failed to show a substantial threat of irreparable harm. Although the Head Affidavit asserts in a conclusory manner a substantial threat of irreparable harm, no factual evidentiary showing is made to support this conclusion.

- The balance of harms weighs in favor of the dissolution of the TRO. Plaintiffs' delay in filing the lawsuit and seeking to obtain an injunction evidences that they will not be harmed without the injunction and/or that any alleged harm could be calculated at a later date in a monetary amount. The Moving Defendants, however, have and will continue to suffer significant business harms including, but not limited to: lost profits, loss of goodwill, loss of reputation and exposure to legal liability if the Moving Defendants are forced to abide by restrictions that are in conflict with the laws of other jurisdictions, including foreign countries, that the Moving Defendants are required to comply with.

- Last, the TRO does a disservice to the public interest. The TRO restricts the Moving Defendants from paying commissions, bonuses or other compensation to any current or former representative of Plaintiffs (within the last twelve (12) months), even if such persons have earned this compensation and are depending on them to provide for their families. Further, the TRO precludes the Moving Defendants from shipping any goods or products even if they have already been paid for and are required by law to be shipped.

7.      The TRO as written also gives Plaintiffs an unfair competitive advantage and enables Plaintiffs to squelch lawful competition for their own personal monetary gain. Because the Moving Defendants are not subject to this Court's jurisdiction and the TRO seeks to restrain the Moving Defendants worldwide ability to conduct business occurring outside the United States, the TRO impermissibly seeks to regulate commerce.

## II.      PROCEDURAL HISTORY

8.      On June 4, 2018, Plaintiffs filed an Original Complaint ("Complaint") (Dkt. #1), together with the Application (Dkt. #2) and Emergency Exparte [sic] Motion for Expedited Discovery (Dkt. #4). Plaintiffs allege Defendants, individually and collectively, misappropriated Plaintiffs' confidential and proprietary information and trade secrets and have breached various contracts and obligations. Specifically, Plaintiffs have asserted, without competent supporting evidence, the following claims against Defendants: (1) violation of the Lanham Act; (2) misappropriation of trade secrets and confidential and proprietary information; (3) misappropriation of trade secrets and confidential and proprietary information in violation of the United States Defend Trade Secrets Act of 2016; (4) conversion; (5) Texas Theft of Liability Act (under Tex. Civ. Prac & Rem. Code Ch. 134 and Texas Penal Code § 31.03); (6) breach of contract; (7) breach of fiduciary duty; (8) tortious interference with existing business relationships; and (9) unfair competition. Plaintiffs allege that Defendants have been conspiring against Plaintiffs since the summer of 2017. Plaintiffs base their unsubstantiated allegations on the Head Affidavit, which significantly relies on the broad, conclusory statements "based upon information and belief" and what WV "has learned" without offering any other evidence (for example the non-disclosure

agreement that was entered into by Advanced Wellness or the various employment agreements).[9]
As a result of Defendants alleged wrongful conduct, Plaintiffs' asserted they were entitled to the
entry of a temporary restraining order.

9.     On June 5, 2018, the Court signed Plaintiffs' ex parte temporary restraining order
(the TRO) enjoining Defendants from:

a)   using any confidential information or trade secret of Plaintiffs for any
purpose;

b)   using any information in the line of sponsorship, downline activity report or
genealogy of Plaintiffs' for any purpose;

c)   Interfering with the contracts or agreements by and between Plaintiffs and
any of Plaintiffs' employees, Representatives, vendors, business associates,
business consultants and all other persons or entities in privity with
Plaintiffs;

d)   Soliciting or recruiting Plaintiffs' Representatives, or any person who has
been a Representative of Plaintiffs during the last twelve (12) months, for
any multilevel marketing or network marketing business opportunity;

e)   interfering with Plaintiffs' existing and prospective business relationships
with Plaintiffs' Representatives and employees;

f)   accepting any registration or enrolling as a distributor or representative
Plaintiffs' Representatives during the last twelve (12) months, for any
multilevel marketing or network marketing business opportunity;

g)   paying any commission, bonus or other compensation to any Representative
of Plaintiff's or any person who has been a Representative of Plaintiffs
during the last twelve (12) months;

h)   shipping any goods or products or training materials to any Representative
of Plaintiffs or any person who has been a Representative of Plaintiffs
during the last twelve (12) months;

i)   allowing any Representative of Plaintiffs or any person who has been a
Representative of Plaintiffs during the last twelve (12) months to use any

---

[9] The Head Affidavit uses the phrase "upon information and belief" nineteen (19) times and "WorldVentures has
learned" fifty-one (51) times. Not one time does it set forth the basis for the "information and belief" or the
circumstances surrounding what "WorldVentures has learned."

website owned or operated by Defendants or any of their affiliates to promote any multilevel marketing business;

j)   disparaging Plaintiffs or any of Plaintiffs' employees, officers, managers, and Representatives; and,

k)   falsely representing to Plaintiffs' Representatives, the advantages, characteristics and nature of any goods products or services [sic] sold or distributed by Defendants through any multilevel marketing company.

(TRO Dkt. #5).

10.     Despite the fact that the foregoing TRO constitutes a world-wide injunction impacting a significant portion of the Moving Defendants' businesses, the TRO required that Plaintiffs post a bond of only $1,000.00, and included no stated basis supporting the sufficiency of the bond as to Defendants. *Id*. The TRO set June 19, 2018, as the hearing date for Plaintiffs' request for preliminary injunction.

11.     Plaintiffs *ex parte* Motion for Expedited Discovery, in which Plaintiffs sought and obtained draconian world-wide discovery from Defendants, was granted without notice and hearing. The dramatically reduced timetables for such discovery requires depositions within three days of notice, production within five days of being served with a request for production, and the forensic imaging of Defendants' electronic devices apparently without regard to the fact that most are not within the United States, again likely not apparent to the Court given Plaintiffs' conclusory allegations. (Expedited Discovery Order Dkt. #6). Given that the majority of the business activity impacted by Plaintiffs' lawsuit is centered in Asia, Australia, and Africa, which might not have been readily apparent to the Court given the conclusory and vague allegations of the Head Affidavit and other pleadings, depositions on three days of notice is unworkable. Such notice would require witnesses to retain counsel, prepare for the deposition, and most likely require international travel for witnesses and/or counsel. This speaks loudly to the over-reach undertaken by Plaintiffs without any notice to Defendants.

### III. THE TRO SHOULD BE DISSOLVED BECAUSE IT FAILS TO MEET THE REQUIREMENTS OF FED. R. CIV. P. 65

12. The strict requirements imposed by Rule 65(d) of the Federal Rule of Civil Procedure, which set forth the requirements for obtaining an *ex parte* temporary restraining order, "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S 423, 438-39 (1974). Therefore, a court may only issue an *ex parte* temporary restraining order if all of the requirements in Fed. R. Civ. P. 65(b) are met. Here, Plaintiffs have clearly failed to meet their burden and the temporary restraining order must be dissolved.

**A. Plaintiffs have failed to meet the Fed. R. Civ. P. 65(b)(1)(A) requirements.**

*1. The Head Affidavit does not contain specific facts to support the TRO.*

13. A court may issue an *ex parte* temporary restraining order *only if* the two requirements in Rule 65(b)(1) are met. The first requirement of Rule 65(b)(1)(A) demands "specific facts in an affidavit or verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." *See also Nichols v. Alcatel USA, Inc.* 532 F.3d 364, 371 (5th Cir. 2008); *Humana, Inc. v. Avrm A. Jacobson, M.D., P.A.*, 804 F.2d 1390, 1394 (5th Cir. 1986) (to meet this factor, a plaintiff must show "a significant threat of injury from the impeding action, that the injury is imminent, and that money damages would not fully repair the harm.").

14. The Head Affidavit is conspicuously missing specific facts that clearly show that (i) any immediate and irreparable injury, loss, or damage will result to the movant before Defendants can be heard in opposition, and (ii) an imminent and irreparable injury will occur if a TRO is not entered *ex parte*. Instead, the Head Affidavit merely gives conclusory statements

regarding WV' alleged "knowledge" of harm without pointing to any specific facts that show any immediate and irreparable injury. *See e.g.* Dkt. #2-1 at ¶¶ 92-100. For example, Paragraph 97 of the Head Affidavit merely states, "Upon information and belief, WV has learned that Defendants have misappropriated WV' proprietary and confidential information and trade secrets." However, this statement raises more questions than it offers answers. What is the basis for WV' information and belief? How did WV learn this? What is Mr. Head's *personal* knowledge of this? What are the proprietary and confidential information and trade secrets that have been misappropriated? What is WV' harm? What is alleged as to each specific defendant? Nowhere in the Head Affidavit are any of these questions answered. The specific facts regarding the alleged misappropriation are missing and only the conclusion is provided. Similar questions can be asked of the other conclusory statements in the Head Affidavit regarding WV' supposed immediate and irreparable injury. *See e.g.* Dkt. #2-1 at ¶¶ 92-100. The Head Affidavit provides no further clarity or facts than what is stated in Plaintiffs' Complaint, groups the Defendants together as a whole, and at most merely cites conclusions that track some, but not all of the elements of the various causes of action and applicable standards.

15.     Furthermore, the Head Affidavit does not state specific facts that show, absent immediate injunctive relief, Plaintiffs will suffer an injury that cannot be remedied by money damages. Nothing in the Head Affidavit states that immediate injunctive relief is necessary to prevent irreparable harm that cannot be rectified by monetary damages. Even giving the Head Affidavit the benefit of the doubt, at best, it offers conclusory statements in an effort to check the Rule 65(b) requirements. The specific facts as to why damages are irreparable or why they cannot be remedied by money damages is wholly absent. In fact, there is a lack of facts showing that Plaintiffs are suffering *any* damages at all—only conclusory allegations.

16.     An affidavit or declaration used to support or oppose a motion for TRO must be made on personal knowledge, set out *facts* that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the facts stated. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *see also Cooper-Schut v. Visteon Automotive Systems*, 361 F.3d 421, 429 (7th Cir. 2004) ("[s]upporting and opposing affidavits shall be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence."). "[C]onclusory and vague allegations are not sufficient to show entitlement to injunctive relief. *Henderson v. Davis*, No. 6:17-cv-320-RC-JDL, 2018 WL 1309871, at *2 (E.D. Tex. Feb. 8, 2018), *report and recommendation adopted*, 2018 WL 1306747 (E.D. Tex. Mar. 12, 2018).

17.     Plaintiffs' affidavit cannot support injunctive relief because Kenneth Head acknowledges in the affidavit itself that it is based in large part on unsourced corporate knowledge rather than personal knowledge. Mr. Head acknowledges this by stating that he is making the affidavit "based, in part, on information known to WV," yet provides no specificity for the same. Dkt. #2-1 at ¶ 4. This defect is further evidenced by the countless assertions based solely on what "WV has learned." *See e.g.* Dkt. #2-1 at ¶¶ 27-32, 36-39, 4-45, 48-53, 56-61, and 65-70. It also states many assertions as being based on nothing more than "information or belief." *See e.g.* Dkt. #2-1 at ¶¶ 78-79, 82-87, 89, and 92-100. Such qualifications constitute an internal contradiction of the required recitation that the declaration be based on "personal knowledge" and undermines the evidentiary value of the affidavit. Nowhere does the affidavit identify which knowledge is corporate and which knowledge is personal to the declarant. Because the Court is required to consider only competent and admissible evidence, this failure to lay a proper predicate is fatal to the TRO.

18.     Similar to other conclusory statements contained within the affidavit, Mr. Head merely asserts he is competent to testify to the facts alleged, but does not come close to showing that he is competent to testify to each of the matters stated in his affidavit.

19.     The failure to provide specific facts to support the TRO violates Rule 65(b)(1)(A) and constitutes grounds to dissolve the TRO.

### 2.  *Plaintiffs' have not and cannot show immediate and irreparable injury.*

20.     Fed. R. Civ. P. 65(b)(1)(A) requires a showing of "immediate and irreparable injury, loss, or damage" that will result if the temporary restraining order is not granted before the adverse party can be heard. Delay in seeking an injunction rebuts any presumption of irreparable injury. *Flywheel Fitness, LLC v. Flywheel Sports, Inc.*, No. 4:13-CV-48, 2013 WL 12138593, *4 (E.D. Tex. Feb. 6, 2013) (holding that a two-month delay "defeats any claim of irreparable harm"); *see also Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006); *M-I LLC v. Argus Green LLC*, 2:10-CV-24-DF-CE, 2010 WL 11527419, *4 (E.D. Tex. July 13, 2010) (finding a six-month delay in filing suit and seeking injunctive relief "weights against a finding of a substantial threat of irreparable harm.").

21.     Here, Head states that on June 3, 2018, McKillip and James Lee (a former WV representative who is not a party to this litigation), allegedly wrote Facebook posts and posted a MaVie solicitation video to their social media accounts, which reached many Representatives and employees of WV. Dkt. #2-1 at ¶ 90. Not only did Plaintiffs fail to attach supporting evidence of this, but Plaintiffs' knowledge of Defendants' alleged wrongdoing began in the **summer of 2017— one year ago**. *See e.g.*, Dkt. #2-1 at ¶ 28 (stating that WV learned "that in the summer of 2017" Defendants McKillip, MaVie, ARIIX, Advanced Wellness, and Barakat began their alleged plan to misappropriate Plaintiffs' trade secret and confidential and proprietary information); ¶ 43 ("The

conspiracy began in 2017 and is continuing to this day."). Plaintiffs have waited nearly a full year to file suit and seek a temporary injunction. The Head Affidavit offers no reason for this lengthy delay.

22.    Additionally, Plaintiffs have acknowledged that several of the named defendants left their employment with WV months ago—Audet on November 30, *2016* (Dkt. #2-1 at ¶ 62); Siddy left on August 31, 2017 (Dkt. #2-1 at ¶ 46); McKillip resigned on December 31, 2017 (Dkt. #2-1 at ¶ 24); Lowe left on February 13, 2018 (Head Aff., Dkt. # 2-1 at ¶ 33); Fitzgerald left on March 9, 2018 (Dkt. #2-1 at ¶ 40); and Morgan left on April 9, 2018 (Dkt. #2-1 at ¶ 54). In the interim from when any of these individuals left WV until June 4, 2018, when the lawsuit was filed, neither WV nor its counsel ever communicated with any of the Defendants regarding any alleged wrongdoing, including the misappropriation of WV' confidential and proprietary information or trade secrets. Here, again, the Head Affidavit offers no reason for this delay. Failure to address their allegations or purported concerns promptly with the Moving Defendants undermines the allegation that any of the alleged information at issue could be trade secret at all, or otherwise confidential, because it was not reasonably protected by Plaintiffs for months to years.

23.    Plaintiffs have also failed to show irreparable injury. An irreparable injury is one that cannot be undone by award of monetary damages. *Deerfield Med. Ctr. V. City of Deerfield Beach*, 661 F.2d 329, 338 (5th Cir. 1981). Plaintiffs have not, and cannot, establish a substantial threat of irreparable injury. They merely offer meaningless, conclusory statements that they will suffer irreparable harm. (Application Dkt. #2, ¶¶ 9-10). These "conclusory assertions, unsupported by any evidence, do not establish irreparable harm." *Smith v. U.S.*, No. 0-07-CV-0313-D, 2007 WL 5909917, *1 (N.D. Tex. July 20, 2007).

24.     Plaintiffs' claim that they will suffer irreparable harm if their confidential and proprietary information and trade secrets are not protected is insufficient to warrant injunctive relief. (Application Dkt. #2). Plaintiffs broadly allege, without attaching competent supporting evidence, that Defendants purportedly have customer and distributor lists, which contain the identities of Plaintiffs' representatives that they believe qualify as trade secret.[10] However, Plaintiffs have not identified which Defendants allegedly have such information, how it is confidential, when it was obtained, when Plaintiff became aware nor identify notice provided by Plaintiffs to any Defendants of their purported concerns before seeking an *ex parte* TRO. They merely offer conclusory statements in the Head Affidavit that "upon information and belief" Defendants have misappropriated such information. Dkt. #2-1 at ¶ 97. Furthermore, other than their statement that this information is purportedly confidential or proprietary or a trade secret, they do not offer any evidence as to why such information rises to the level of a trade secret or what efforts they have put in place to definitively safeguard and maintain the confidential and proprietary or trade secret nature of such information. These conclusory statements are insufficient to show irreparable harm.

25.     Furthermore, a quick search of social media (LinkedIn and Facebook) or Google reveals that anyone can learn the identities of countless representatives of WV as such information is publicly available. In fact, the identities of some of WV biggest representatives and distributors can even be found on WV own websites.[11] Contrary to WV assertions, the identities of their Representatives are public—not confidential and proprietary or trade secret. Accordingly, there is

---

[10] (Application Dkt. #2 at ¶ 45)
[11] The identities and successes of some of the representatives and distributors can be found under on the WorldVentures website under their success stories. These success stories are catalogued through 2015. WorldVentures, https://www.worldventures.com/en-us/start-a-business/success-stories (last visited June 10, 2018).

no threat of irreparable injury to Plaintiffs. The evidentiary basis fails to set forth facts supporting the conclusory allegations of irreparable injury.

26.     Plaintiffs also contend that they "disclosed 'confidential information' to Advanced and Barakat." (Dkt. #2-1 at ¶ 77). However, Plaintiffs do not state what "confidential information" they provided to Advanced and Barakat, and instead merely state that "confidential information" was provided to them. Plaintiffs' failure to identify any specific confidential or proprietary or trade secret information that was allegedly provided to Advanced or Barakat is fatal to the TRO relief Plaintiffs seek against them.  In short, there is no threat of irreparable injury. Plaintiffs have also not shown through any factual recitation that any specific confidential information allegedly provided to Advanced and Barakat was used by them inappropriately.

27.     The Head Affidavit makes it clear that Plaintiffs will not suffer immediate and irreparable injury. The TRO should be dissolved for this reason.

**B.     The notice requirements in Fed. R. Civ. P. 65(b)(l)(B) were not met.**

28.     Federal Rule of Civil Procedure 65(b)(1)(B), which must also be met before an *ex parte* order may issue, requires that Plaintiffs' attorney "certify in writing any efforts made to give notice and the reasons why it should not be required." Here, Plaintiffs' attorney did not submit an affidavit setting forth the required showing.

29.     There was no certification regarding efforts made to give notice nor was any legitimate reason given to the Court why notice should not be required. The explanation for this is simple—reasons for lack of notice do not exist. According to Plaintiffs' Original Complaint and reiterated in the Head Affidavit, the alleged conspiracies began in the summer of 2017. Yet, at no time in the preceding year did any of the Plaintiffs or Plaintiffs' counsel contact the Moving Defendants with a cease and desist letter, demand letter, or in any way communicate their concerns

regarding the Moving Defendants' alleged wrongdoing. Plaintiffs were very familiar with the Moving Defendants and without question had various available avenues to contact them. Indeed, Plaintiffs were familiar with Advanced Wellness and Barakat, and contemplated a potential business transaction with them in July of 2017. (Complaint Dkt. #1 at ¶ 46). There is no legitimate reason to believe that Plaintiffs could not have provided adequate notice at such a time that they perceived any alleged wrongdoing. Plaintiffs' failure to give notice was calculated and purposeful to accomplish an unwarranted attack on those Defendants considered to be competitors without affording them an opportunity to apprise the Court of the lack of basis for the injunction, lack of personal jurisdiction, the substantial harm that the TRO would cause to the Defendants, and Plaintiffs' unclean hands.

30.     Plaintiffs have failed to demonstrate why their claims required an immediate judicial injunction, especially one as broad as that requested by Plaintiffs with worldwide implications, without any notice to Defendants, when Plaintiffs waited several months, if not a full year, to make any allegations against Defendants. Failure to comply with Rule 65(b)(1)(B) is an independent ground to dissolve the TRO.

**C.     The $1,000 bond is insufficient to cover the damages that the Moving Defendants would sustain.**

31.     With respect to a bond, Federal Rule of Civil Procedure 65(c) provides that a TRO can be granted only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The purposes of the bond requirement are to assure "the enjoined party that it may readily collect damages from the funds posted or the surety provided in the event that it was wrongfully enjoined, without further litigation and without regard to the possible insolvency of the

assured" and provide the plaintiff "with notice of the maximum extent of its potential liability." *Continuum Co., Inc. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989).

32.     Given the breadth and worldwide scope of the injunction, along with the fact that it would require the Moving Defendants to violate laws in other jurisdictions, including foreign countries, by withholding compensation that would be due and owing and the shipment of products that have been paid for, Defendants are exposed to significant damage to the MaVie brand, potential criminal and civil liability, loss in the millions of dollars, and a significant risk to the viability of MaVie and Advanced Wellness if the TRO remains in place through trial. Barakat Decl. ¶¶ 36-39. The scope of the prohibitions in the context of the nominal $1,000 bond does not even come close to comporting with the requirement of Rule 65(c). The subject TRO does not provide sufficient security to pay the damages that the Moving Defendants would sustain as a result of a wrongful injunction. Not including the $10 million investment that Advanced Wellness has already made in MaVie, Advanced Wellness stands to lose an estimated $500,000 to $700,000 *per month*. Barakat Decl. ¶¶ 35, 38. Furthermore, the TRO has the likelihood of causing Advanced Wellness to go out of business. Barakat Decl. ¶ 37. The $1,000 bond is wholly insufficient to ensure that Defendants would recover if they were wrongfully enjoined. If the worldwide TRO remains in effect, the bond should be increased to at least $250,000 and increased to $1,000,000 if the TRO is converted into a Preliminary Injunction.

**D.     The TRO does not contain the necessary content and scope.**

33.     Federal Rule of Civil Procedure 65(d) provides the required contents of a TRO— (a) state the reasons why it was issued; (b) state its terms specifically; and (c) describe in reasonable detail the acts restrained or required. The requirements are "satisfied only if the enjoined party can

ascertain from the four corners of the order precisely what acts are forbidden or required." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 155 (2d Cir. 2011).

34.     Challenges to a restraining order or an injunction under Fed. R. Civ. P. 65(d) typically involve both the broadness and vagueness of the order. *See Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016). "Analytically, the broadness of an injunction refers to the range of proscribed activity, while vagueness refers [to] the particularity with which the proscribed activity is described." *Scott*, 826 F.3d at 211 (quoting *U.S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 n.19 (5th Cir. 1975)). A restraining order must not be vague. "'Vagueness' is a question of notice, *i.e.*, procedural due process, and 'broadness' is a matter of substantive law." *Id.* Thus, an injunction is overly vague if it fails to satisfy the specificity requirements set out in Rule 65(d)(1). *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981) (general injunction "to obey the law is not permitted," and the "injunction must simply be framed so that those enjoined will know what conduct the court has prohibited") (citing *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)). The TRO must also not be overly broad. It must be narrowly tailored to fit to the necessities of a particular case and may not enjoin all potential causes of action. A restraining order or an injunction is overbroad if it is not "narrowly tailor[ed] … to remedy the specific action which gives rise to the order" as determined by the substantive law at issue. *Doe v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004).

35.     The TRO Plaintiffs presented to the Court does not meet these requirements. In violation of Rules 65(d)(l)(B) and (C), the TRO vaguely and broadly prohibits Defendants and their respective officers, managers, trustees, agents, servants, employees, distributors, attorneys, confederates, and all other persons in active concert or participation with them from:

    a.     using any confidential information or trade secret of Plaintiffs for any purpose;

b.     using any information in the line of sponsorship, downline activity report or genealogy of Plaintiffs' for any purpose;

c.     Interfering with the contracts or agreements by and between Plaintiffs and any of Plaintiffs' employees, Representatives, vendors, business associates, business consultants and all other persons or entities in privity with Plaintiffs;

d.     Soliciting or recruiting Plaintiffs' Representatives, or any person who has been a Representative of Plaintiffs during the last twelve (12) months, for any multilevel marketing or network marketing business opportunity;

e.     interfering with Plaintiffs' existing and prospective business relationships with Plaintiffs' Representatives and employees;

f.     accepting any registration or enrolling as a distributor or representative Plaintiffs' Representatives during the last twelve (12) months, for any multilevel marketing or network marketing business opportunity;

g.     paying any commission, bonus or other compensation to any Representative of Plaintiff's or any person who has been a Representative of Plaintiffs during the last twelve (12) months;

h.     shipping any goods or products or training materials to any Representative of Plaintiffs or any person who has been a Representative of Plaintiffs during the last twelve (12) months;

i.     allowing any Representative of Plaintiffs or any person who has been a Representative of Plaintiffs during the last twelve (12) months to use any website owned or operated by Defendants or any of their affiliates to promote any multilevel marketing business;

j.     disparaging Plaintiffs or any of Plaintiffs' employees, officers, managers, and Representatives; and,

k.     falsely representing to Plaintiffs' Representatives, the advantages, characteristics and nature of any goods products or services [sic] sold or distributed by Defendants through any multilevel marketing company.

(TRO Dkt. #5).

36.     The Court's Order also restraints Defendants and their respective officers, managers, trustees, agents, servants, employees, distributors, attorneys, confederates, and all other persons in active concert or participation with them, from directly or indirectly destroying, altering, disposing of, consuming, tampering with, or in any manner secreting, any and all business or

personal records, memos, correspondents, emails, letters, electronic communications, electronically stored information, or other paper and electronic documentation or records relating to or referring in any manner to the matters and facts alleged in Plaintiffs Original Complaint. These prohibitions are without specific terms and do not describe in reasonable detail (with or without referring to the Complaint) the acts restrained in violation of Rule 65(d).

37.     One basic principle of Rule 65(d) "is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits" to prevent confusion and a possible contempt finding. *Columbia Pictures Ind., Inc. v. Fung*, 710 F.3d 1020, 1047 (9th Cir. 2013). The drafting standard under Rule 65(d) for a restraining order or injunction has been described as "that an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." *Scott*, 826 F.3d at 211 (quoting *U.S. Steel*, 519 F.2d at 1246 n.20 (quoting Wright & Miller, Federal Practice & Procedure § 2955 at 536–37 (1973))). Parties should not be required to speculate or look outside the four corners of the TRO itself to determine what they cannot do. "The rule embodies the elementary due process requirement of notice." *U.S. Steel,* 519 F.2d at 1246. The Supreme Court has repeatedly emphasized that "the specificity provisions of Rule 65(d) are no mere technical requirements." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). "The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Id.*

38.     However, as written by Plaintiffs and entered by the Court, the TRO fails to meet this requirement. First, the TRO fails to identify with any level of specificity who is included in the extremely broad categories of persons subject to the order. This is most glaringly true with respect to the prohibitions which contain the phrase "any person who has been a representative of

Plaintiffs during the last twelve (12) months" for the reason that it would be impossible for Defendants to know the identity of *all* such persons. Given the nature of the multilevel marketing industry, each company has hundreds, if not thousands, of independent sales representatives. Without further information, Defendants cannot definitively know who, if any, of their representatives may have worked for Plaintiffs in the past twelve (12) months, especially those further down a multilevel marketing line who may have only been affiliated with Plaintiffs for a few days. The TRO also applies to Defendants' "confederates" whoever that might be. Significantly, it does not expressly apply to their "Representatives" (a term widely used elsewhere in the TRO to describe a category of persons). This omission begs the question of whether Representatives are considered "confederates" and the likelihood that Plaintiffs knew when drafting the TRO that extending it to all representatives would essentially operate as an unenforceable worldwide non-solicitation to thousands of people. The TRO fails to offer any specificity as to which individuals are enjoined.

39.     When an injunction fails the specificity requirement under Rule 65(d)(1), the TRO must be dissolved. *See Firmin v. Richard Constr., Inc.*, Civ. Action 12-1391 Sec. R(4), 2012 U.S. Dist. LEXIS 81048, at *2–4 (E.D. La. June 11, 2012) (dissolving a TRO for failure "to state specific facts showing that immediate and irreparable injury").

40.     Second, the TRO fails to identify with any particularity the confidential and proprietary information or trade secrets. In the Application, Plaintiffs generically assert a string cite of categories that might constitute confidential information or trade secrets without proving why or how they qualify for such protection. (Application Dkt. #2 at ¶¶ 23, 44, and 45). The lack of specific facts, and the use of generalized and conclusory allegations, are especially fatal to a TRO in such circumstances. Even considering the repeated assertion of Plaintiffs that the identities

of WV' Representatives are confidential, a quick internet search sheds a truer light. A quick search for "WV" alone on LinkedIn brings up over 6,000 public profiles. Declaration of Michelle Pector (Pector Decl.) Decl. ¶ 6 and Ex. C-17 (attached hereto as Exhibit C). Information is public knowledge or general knowledge in the trade or business, then it is not a trade secret. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475 (1974).

41.     When an injunction is too broad, it must be dissolved. *See Zepada v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) (vacating and remanding an injunction that is too broad); *see also E. W. Bliss Co. v. Struthers-Dunn, Inc.*, 408 F.2d 1108, 1115 (setting aside overly broad preliminary injunction in trade secret dispute and noting disapproval of "broad language [which] would prohibit the use of much ordinary and uncomplicated stock equipment" that is not protectable as trade secret) (citing *In Hampton v. Blair Mfg. Co.*, 374 F.2d 969, 973 (8th Cir.), cert. denied, 389 U.S. 829, 88 S. Ct. 87, 19 L. Ed. 2d 85 (1967)); *Anadarko Petroleum Corp. v. Davis*, No. H-06-2849, 2006 WL 3837518, *23 (W.D. Tex. 2006) (finding "that injunctions involving trade secrets must be narrowly tailored to prevent the improper use of confidential or proprietary information, but not prohibit the enjoyment of lawful rights') (citations omitted). The TRO here exceeds the scope requirements of Rule 65(d) and must be dissolved.

## IV.     PLAINTIFFS FAILED TO PROVE THE EQUITABLE FACTORS[12]

42.     It is well-settled that preliminary injunctive relief "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries a burden of persuasion." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). "The decision to grant a preliminary injunction is to be treated as the exception rather than the rule."

---

[12] While the Moving Defendants reserve their rights to brief in full their opposition to any attempt by Plaintiff to move for preliminary or permanent injunctive relief in this Court, the Moving Defendants take this opportunity to highlight here the obvious deficiencies that preclude Plaintiffs from obtaining such relief.

*Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 70 F.2d 618, 621 (5th Cir. 1985). To that end, the Fifth Circuit has consistently held that a party seeking injunctive relief must show: (1) a substantial likelihood of on the merits, (2) substantial threat of irreparable injury if the injunction is not granted, (3) the threatened injury outweighs the threatened harm to defendant, and (4) the preliminary injunction will not disserve the public interest. *Id*. A court should deny a request for preliminary injunctive relief "where the movant has failed sufficiently to establish *any one* of the four criteria." *Black Fire Fighters Ass'n v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990). Here, Plaintiffs have failed to establish each of the four factors. The TRO must be dissolved.

**A.      Plaintiffs have not shown they are likely to succeed on the merits.**

43.      Plaintiffs must show a likelihood to succeed on the merits; "questionable claims [will] not meet the likelihood of success criterion." *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 340 (1999). Here, Plaintiffs notably only assert they are likely to prevail on one of their claims -- tortious interference with a contract, and even then Plaintiffs fail to provide evidence of how each of the Moving Defendants specifically and uniquely tortiously interfered with Plaintiffs' alleged contracts. (Application Dkt. #2). Because Plaintiffs have not alleged or demonstrated that there is a likelihood that they will succeed on the merits as to their other claims against the Moving Defendants, those claims should be disregarded for purposes of assessing the basis for injunctive relief.

44.      Further, given that the Court lacks personal jurisdiction over the Moving Defendants,[13] the Court must dismiss the Moving Defendants and thus, Plaintiffs cannot succeed on the merits of their claims against the Moving Defendants.

---

[13] The Moving Defendants incorporate by reference the personal jurisdiction arguments in Defendants MaVie, Advanced Wellness Solutions Pte. Ltd. and Abdelwadoud Barakat's Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, Insufficient Process, Insufficient Service of Process, and Lack of Capacity to Be Sued. (Dkt. # 21)

45.     Next, Plaintiffs have offered no evidence that they are likely to succeed on the merits on their tortious interference claim. For one, the tortious interference claim relies on alleged contracts between Plaintiffs and Plaintiffs' worldwide representatives, specifically the unenforceable non-solicitation provision in such agreements, which are governed by the laws where the representative is located, most of whom are outside the United States. *See* Pector Decl. ¶¶ 1, 5, Exs. C-1-6; C-14-16. The fact that Plaintiffs have elected not to attached any agreements to even prove that such contracts exist and contain non-solicitation provision that would apply in this matter speaks volumes about the conflicts of law issues they would raise as well as the unenforceability and reformation challenges.

46.     Additionally, Plaintiffs have not shown how the Moving Defendants have allegedly interfered with Plaintiffs' alleged contracts, let alone that such interference was willful and intentional. Plaintiffs have merely made conclusory statements that Plaintiffs and Defendants are competitors because both "operate a network marketing or multilevel marketing business enterprise" and that their basic structure of sales organization mirrors the sales organization of WV. Dkt. #2-1 at ¶¶ 75, 88. However, neither of these statements actually shows that Plaintiffs and Defendants are competitors nor that there are any facts which warrant triggering the non-solicitation provision of the contract with the Representatives. All it suggests is that Plaintiffs and Defendants have similar sales and marketing structures, which Plaintiffs admitted in their Original Complaint is common to all multilevel marketing companies. (Complaint, Dkt. #1 at ¶ 51).

47.     Moreover, Plaintiffs have not shown that any purported interference by the Moving Defendants proximately caused damage to Plaintiffs or that Plaintiffs have suffered an actual damage or loss. Plaintiffs' conclusory damage assertions are simply based on the speculative belief that the Representatives would have chosen to continue working with WV but for the conduct of

Defendants. This speculative belief is further undercut by the investigations and liability findings

Plaintiffs have experienced outside the United States due to unlawful business practices and their

ongoing refusal to pay certain representatives the compensation they are due and owing. Further,

Plaintiffs have offered no evidence that the Representatives were exclusively required to sell

Plaintiffs' products for any specified period of time. Nor have Plaintiffs shown that any

Representative with a WV contract was wrongfully induced to breach the contract by the Moving

Defendants. This is particularly relevant in light of WV' more pressing global issues.[14] Plaintiffs'

damages are based on the untenable positions that (1) all Representatives who worked with

Plaintiffs even a day in the last twelve (12) months are required to work for Plaintiffs for a specified

period of time; and (2) that all former Representatives must leave multilevel marketing for one

year or abandon the down-lines they have spent a lifetime building, including the contacts they

had before working for WV. While Plaintiffs attempt to assert that permitting Representatives to

work with the Moving Defendants could result in the Representatives not continuing to consume

Plaintiff's products, there is no evidence that there was ever a requirement that the Representatives

are required to purchase any of Plaintiffs' services and Plaintiffs have not identified any products

that they actually sell. No facts have been alleged in the evidentiary materials to support these

strained positions.

48.     Because Plaintiffs have failed to show that they are likely to succeed on the merits

of their tortious interference claim and have not alleged that they are likely to succeed on the merits

of any of the other claims asserted against Defendants the TRO should be dissolved.

**B.     Plaintiffs have failed to show a substantial threat of irreparable injury.**

---

[14] *See e.g.* Pector Decl. ¶¶ 9-10, Exs. C-20-26 (publically available information evidencing WorldVentures is being investigated by the Chinese, Malaysian, Taiwan, and Cyprus governments for various illegal activity; articles showing that Norway determined WorldVentures was operating a pyramid scheme, and litigation involving WorldVentures' failure to pay its employees).

49.     As described in detail above, Plaintiffs have failed to show that there is a substantial threat of irreparable injury. A plaintiff's injury is irreparable only if it cannot be undone by monetary damages. *Deerfield Med. Ctr.*, 661 F.2d at 338. Here, any damage to Plaintiffs' is quantifiable because Plaintiffs would be able to show, using financial data, what monetary damages they allegedly incurred, if any, as a result of the loss of specific individuals who they claim were wrongfully solicited.

## C.     The harm to the Moving Defendants weighs in favor of dissolving the TRO.

50.     Plaintiffs must also show that their injury outweighs the harm to Defendants as a result of the injunctive relief. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Where harm to the plaintiff is quantifiable and the harm to a defendant's business could cost millions of dollars or lead to the collapse of the business, the temporary restraining order should be denied. *Flywheel Fitness, LLC v. Flywheel Sports, Inc.*, No. 4:13-CV-48, 2013 WL 12138593 (E.D. Tex. Feb. 6, 2013). Here, the harm to Plaintiffs is quantifiable and the injunction will cost the Moving Defendants millions of dollars, irreparably harm their reputation and could ultimately lead to the collapse of Advanced Wellness and MaVie. Barakat Decl. ¶¶ 35-38. Accordingly, the harm to the Moving Defendants weighs in favor of dissolving the TRO.

51.     First, Plaintiffs have not shown a need to receive a TRO, particularly since the individual defendants in this matter left their employment with Plaintiffs anywhere from two months ago to almost two years ago. In the interim, Plaintiffs have never notified the Defendants of their concerns that they may be tortiously interfering with WorldVenture Representatives' contracts. Further, prior to the filing of this lawsuit, Plaintiffs did not reach out to any of the Moving Defendants and ask them to cease contacting Plaintiffs' representatives as it may tortiously interfere with the Representatives' agreements, though they could have easily done so. Moreover,

by Plaintiffs' own admission, the conspiracy began in the summer of 2017. *See e.g.*, Dkt. #2-1 at ¶ 28. Yet, still they waited until June 2018— nearly a year later—before taking any action.

52.      Second, Plaintiffs claim they started discussing a potential business transaction with Advanced and Barakat in the summer of 2017.  Dkt. #2-1 at ¶ 76. It was during this time that Plaintiffs allege that they "disclosed 'confidential information to Advanced and Barakat," but offer no description of the types of confidential information that was disclosed. Dkt. #2-1 at ¶ 77. Again, prior to the filing of the lawsuit on June 4, 2018, Plaintiffs did not contact Advanced Wellness or Barakat to cease and desist using or disclosing its confidential information. Furthermore, after the business deal fell through, Plaintiffs made no effort to seek the return of their alleged "confidential information" from the Moving Defendants.

53.      Despite all of Plaintiff's prior "knowledge," including the fact that MaVie plans to launch its new network in July 2018 and the allegation that Defendants have been engaged in a conspiracy since the summer of 2017, Plaintiffs waited until June 4, 2018, to request a TRO. *See* Dkt. #2-1 at ¶ 89 ("Upon information and belief, WV has learned that MAVIE [sic] plans to 'launch' its new competitive multilevel marketing network in July 2018 in the lifestyle membership industry."). It is evident that Plaintiffs have chosen to file suit and request an *ex parte* TRO solely to gain an unfair competitive advantage and cause damage to the Moving Defendants' business ventures, not because it truly believes it will suffer immediate and irreparable harm due to any wrongful conduct of the Moving Defendants. Plaintiffs offer no non-conclusory facts to establish any particular damage, injury, or harm arising out of the acts and/or omissions of the Moving Defendants. Furthermore, as detailed above, any alleged harm to Plaintiffs' would be quantifiable, not irreparable.

54.     This Court has held that harms weighing in favor of the defendant include high costs to the Moving Defendants and the potential collapse of the defendant's business. *Flywheel Fitness*, 2013 WL 12138593, at *5. In *Flywheel Fitness*, the defendant testified that the injunction could cost the business millions of dollars and lead to its collapse. *Id*. This Court held that because the Plaintiff's harm was quantifiable and serious harm could be done to the defendant business, the balance of equities weighed in favor of denying the temporary restraining order. *Id*.

55.     Here, the Moving Defendants will be severely harmed by the TRO. The TRO will cause the Moving Defendants, and MaVie and Advanced Wellness significant harm.  First, Advanced Wellness has already invested over $10 million dollars to create the MaVie business line.  Barakat Decl. ¶ 35.  Second, Advanced Wellness's reputation will suffer; it will appear to clients and potential clients that MaVie is not ready to do business.  Barakat Decl. ¶ 36.  Third, the restrictions preventing Advanced Wellness from paying compensation to former WV' representatives and employees will likely lead to civil and/or criminal liabilities, which would further harm Advanced Wellness's reputation and business. Barakat Decl. ¶ 37. Fourth, Advanced Wellness's revenue will be significantly impacted, with the potential loss of $500,000 to $700,000 per month.  Barakat Decl. ¶ 38.  Last, Advanced Wellness's head start against competitors. Barakat Decl. ¶ 39.  Ultimately, individually and collectively, these harms carry the significant risk that Advanced Wellness and/or the MaVie line will go out of business.  Barakat Decl. ¶¶ 35-39.

56.     The temporary restraining order imposes significant costs on the Moving Defendants and may cause the businesses to collapse, while Plaintiffs have not demonstrated that they will suffer immediate and irreparable harm without the injunction. The balance of harms weighs in significant favor of the Moving Defendants and the dissolution of the TRO.

**D.      Plaintiffs failed to show that the TRO would not adversely affect public interest.**

57.     Plaintiffs failed to show that the TRO would not adversely affect the public interest. The public interest inquiry addresses the impact of the injunction on non-parties. *Sammartano v. First Judicial Dist. Ct., in & for Cty. Of Carson City*, 303 F.3d 959, 974 (9th Cir.). Here, the TRO's impact on non-parties is tremendous. As it is currently written, the TRO enjoins Defendants from "paying any commission, bonus or other compensation to any Representative of Plaintiffs or any person who has been a Representative of Plaintiffs during the last twelve (12) months," and from shipping goods and products that have already been paid for. (TRO Dkt. #5). This requirement could have large public interest impacts in that it prohibits Defendants from paying compensation that is owed to non-parties and delivering goods and products that non-parties have paid for. This restriction also impacts the constitutional right to choose who a representative wants to affiliate with. This could impose significant harm on the impacted individuals' livelihoods—individuals who are non-parties to this litigation. Additionally, this requirement would cause the Moving Defendants to violate labor laws requiring employers to pay compensation that is due and owing and promote unfair competition. In the event, after considering the arguments set forth herein, the Court determines that payments and shipment of goods to third parties should still be restrained, the Court should give notice to the affected individuals so they can appear and be heard if they so desire. Alternatively, the Court should instruct the parties to give notice to all affected third parties.

58.     For the foregoing reasons, Plaintiffs have failed to show establish that the equitable burdens are in favor of the TRO. Consequently, the TRO should be dissolved.

## V.     ALTERNATIVELY, THE TRO SHOULD BE MODIFIED

59.     While the Moving Defendants have demonstrated the TRO should be dissolved due to Plaintiffs' failure to meet their Rule 65 requirements, in the event this Court determines that a narrow injunction is warranted and does not dismiss the Moving Defendants from this case due to

lack of jurisdiction, the Moving Defendants respectfully request that in the alternative, the TRO be limited and narrowed in scope to the United States, to employees of WV in the United States, with Plaintiffs providing a list of who such employees are; identify what the confidential information and trade secrets are to which the TRO specifically applies, allow the Moving Defendants to freely do business with anyone who initiates business or such contacts with the Moving Defendants, allow the Moving Defendants to ship goods, products and training materials that have been paid for, allow the Moving Defendants to pay compensation that is due and owing, and allow the Moving Defendants to comply with all applicable laws of the countries in which they do business. Furthermore, given the anti-competitive nature in which Plaintiffs are using the TRO to disparage the Moving Defendants and drive them out of business, the Moving Defendants respectfully request that any injunction obligations the Court issues regarding interference with contracts or existing or prospective business relations, disparagement, use of confidential information or trade secrets, preservation of evidence and false representations be mutual to Plaintiffs.

## VI.    CONCLUSION

60.    For the foregoing reasons, the Moving Defendants respectfully request that the TRO be dissolved and that the Court grant them all further relief to which they may be justly entitled including an increase in the security required if injunctive relief is continued.

Dated: June 15, 2018

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Michelle Pector*

Michelle Pector, Lead Attorney
State Bar No. 24027726
michelle.pector@morganlewis.com

Veronica J. Lew
State Bar No. 24082110
veronica.lew@morganlewis.com

Yon-Sun W. Sohn
State Bar No. 24083888
yon.sohn@morganlewis.com

Maryann Zaki
State Bar No. 24088707
maryann.zaki@morganlewis.com

1000 Louisiana, Suite 4000
Houston, Texas 77002
(713) 890-5000 Telephone
(713) 890-5001 Facsimile

**SIEBMAN, FORREST, BURG & SMITH, LLP**

Clyde M. Siebman
State Bar No. 18341600
clydesiebman@siebman.com

Elizabeth S. Forrest
State Bar No. 24086207
elizabethforrest@siebman.com

Federal Courthouse Square
300 North Travis Street
Sherman, TX 75090

*Attorneys for Defendants*
*Advanced Wellness Solutions Pte. Ltd.,*
*Abdelwadoud Barakat, and MaVie*

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Defendants Advanced Wellness Solutions Pte. Ltd., Abdelwadoud Barakat, and MaVie, have conferred telephonically in good faith with Plaintiffs' counsel regarding the foregoing motion on June 15, 2018. Plaintiffs' counsel advised that Plaintiffs are opposed to the motion. Thus, the discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Clyde Siebman*
Clyde Siebman

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has this day been served electronically by transmission to an electronic filing service provider for service through the Court's Case Management/Electronic Case Files (CM/ECF) system to the attorneys of record for Plaintiffs.

*/s/ Michelle Pector*
Michelle Pector

## CERTIFICATE OF COMPLIANCE

Pursuant to L. R. CV-5(7) a motion to seal this document and its attachments has been filed and Jackson will serve an electronic copy of this document on opposing counsel.

*/s/ Michelle Pector*
Michelle Pector