UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| WorldVentures Holdings LLC, *et al.*, <br> *Plaintiffs*, <br><br> v. <br><br> MaVie, <br> ARIIX Holdings, LLC, ARIIX International, Inc., <br> Advanced Wellness Solutions Pte. Ltd., <br> Abboud Barakat, individually, <br> Jonathan McKillip, individually, <br> Kyle Lowe, individually, <br> Anthony Fitzgerald, individually, <br> Michelle Siddy, individually, <br> Kemble Morgan, individually, and <br> Daniel Audet, individually, <br> *Defendants.* | Civil Action No. <br> 4:18-cv-393-ALM <br><br> Jury Trial Demanded |

## DEFENDANT DANIEL AUDET'S MOTIONS TO DISMISS

**Law Offices of Elvin E. Smith, III PLLC**

Elvin E. Smith III, Lead Attorney
State Bar No. 00784995
esmith@EESLAW.COM

307 Dartbrook
Rockwall, TX 75087
972-722-2475
972-722-3332

*Attorney for Daniel Audet*

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF MOTION..................................................................................1

II.   STATEMENTS OF ISSUES ............................................................................1

III.  STATEMENTS OF FACTS .............................................................................2

    A.    Audet's Employment Contract ..........................................................2

    B.    Improper service on Audet ................................................................2

IV.   MOTIONS TO DISMISS FOR INSUFFICIENT PROCESS AND
      INSUFFICIENT SERVICE (FED. R. CIV. P. 12(B)(4) AND (5)).................3

    A.    Foreign defendants must be properly served under Fed. Civ. P. 4(f) and
        (h).........................................................................................................3

    B.    Both the process and the service on Audet was insufficient and improper............4

        1.    WV's attempted service through the Texas Secretary of State is
            improper because Singapore's laws require personal service of
            summons ................................................................................4

    C.    This Court lacks jurisdiction over Audet without proper service under the
        Federal Rules of Civil Procedure ......................................................6

V.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (FED. R. CIV.
      P. 12(B)(6))E.................................................................................................6

    A.    A plaintiff cannot rely solely on conclusory allegations to state a plausible
        claim...................................................................................................6

    B.    WV failed to plead anything beyond naked, conclusory allegations against
        Audet ..................................................................................................7

        1.    Lanham Act..............................................................................7

        2.    Trade Secret Misappropriation.................................................8

            a.    No allegations of Audet's acts or omission that gave rise to
                the misappropriation claims ........................................8

            b.    No allegation of what "trade secrets" have been
                misappropriated by Audet ............................................9

        3.    Conversion ............................................................................11

        4.    TTLA ......................................................................................11

        5.    Breach of contract .................................................................12

        6.    Breach of fiduciary duty ........................................................14

        7.    Tortious interference ..............................................................16

        8.    Unfair competition .................................................................17

# TABLE OF CONTENTS
(continued)

Page

VI.     CONCLUSION ........................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abetter Trucking Co. v. Azripe*,
　　113 S.W.3d 503 (Tex. App.— Houston [1st Dist.] 2003, no pet.) ................................. 18, 19

*Adrain v. Genetec Inc.*,
　　Civ. Action No. 2:08-CV-423-TJW, 2009 WL 3161386 (E.D. Tex. Sept. 30,
　　2009) .................................................................................................................................... 19

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*,
　　300 F.3d 620 (5th Cir. 2002) ......................................................................................... 19, 20

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009) .................................................................................................. 10, 11, 16

*Beardmore v. Jacobson*,
　　131 F. Supp. 3d 656, 666–67 (S.D. Tex. 2015) ................................................................... 14

*Bell Atl. Corp. v. Twombly*,
　　550 U.S. 544 (2007) ..................................................................................................... 9, 10, 16

*Bray v. Squires*,
　　702 S.W.2d 266 (Tex. App.—Houston [1st Dist.] 1985, no writ) .................................. 18, 19

*Carson v. Dynegy, Inc.*,
　　344 F.3d 446 (5th Cir. 2003) ............................................................................................... 14

*CF & I Steel Corp. v. Pete Sublett & Co.*,
　　623 S.W.2d 709 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.) ........................... 19

*D'Onofrio v. Vacation Publs., Inc.*,
　　888 F.3d 197 (5th Cir. Apr. 23, 2018) ................................................................................. 18

*Educ. Mgmt. Servs., LLC v. Tracey*,
　　102 F. Supp. 3d 906, 915 (W.D. Tex. 2015) ....................................................................... 15

*Emerald City Mgmt., LLC v. Kahn*,
　　No. 4:14-cv-358-ALM, 2016 WL 98751 (E.D. Tex. Jan. 8, 2016) ...................................... 12

*Gartin v. Par Pharm. Cos., Inc.*,
　　289 F. App'x 688 (5th Cir. 2008) ...........................................................................................6

*Gonzalez v. Kay*,
　　577 F.3d 600 (5th Cir. 2009) ............................................................................................... 10

i

*House v. S. P. Richards Corp.*,
Case. No. H-12-3704, 2014 WL 427897 (S.D. Tex. Feb. 4, 2014) ....................................6, 9

*In re Mandel*,
578 F. App'x 376 (5th Cir. 2014) (per curiam) (unpub.) .......................................................15

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) ...............................................................................................10

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
227 F.3d 489 (5th Cir. 2000) ...............................................................................................11

*Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*,
620 F.3d 465 (5th Cir. 2010) ...............................................................................................13

*Seatrax, Inc. v. Sonbeck Intl, Inc.*,
200 F.3d 358 (5th Cir. 2000) ...............................................................................................20

*Stripling v. Jordan Prod. Co.*,
234 F.3d 863 (5th Cir. 2000) ...............................................................................................13

*Taylor Pub. Co. v. Jostens, Inc.*,
216 F.3d 465 (5th Cir. 2000) ........................................................................................20, 21

*WickFire, LLC v. Trimax Media, Inc.*,
A-14-CA-34-SS, 2016 WL 4119917 (W.D. Tex. filed Mar. 25, 2016)...............................20

## STATUTES

18 U.S.C. § 1839(3) ...................................................................................................................13

18 U.S.C. § 1839(3)–(6) .............................................................................................................12

Tex. Bus. Org. Code § 1.002 ........................................................................................................8

Tex. Civ. Prac. & Rem. Code § 134A.002(2)–(6) ......................................................................12

Tex. Civ. Prac. & Rem. Code § 134A.002(3)(A) .......................................................................12

Tex. Civ. Prac. & Rem. Code § 134A.002(3-a) and (6)(A) ........................................................12

Tex. Civ. Prac. & Rem. Code § 134A.002(6) (West 2017) ........................................................13

Tex. Civ. Prac. & Rem. Code § 134A.007(a).............................................................................11

## OTHER AUTHORITIES

Fed. R. Civ. P. 4(f)(2) ..................................................................................................................7

Fed. R. Civ. P. 12(b)(4) and (5)....................................................................................................4

Matt Morris – WorldVentures Top Earner Interview 2015, Business for Home,
    https://www.businessforhome.org/2015/05/matt-morris-worldventures-top-
    earner-interview-2015/ (last visited July 19, 2018) .............................................................16

Matt Morris, WorldVentures Training, Facebook, https://www.facebook.com/
    mattmorristraining/ (last visited July 19, 2018)..................................................................16

## I.      Summary of Motion

Plaintiffs 26 WorldVentures entities (collectively "WV") take unwarranted liberties with their rendition of the facts and the over breadth of their allegations along with the scope of this lawsuit. WV asserts the following claims against Audet without specifying the acts he allegedly engaged in: violation of the Lanham Act (Count 1); trade secret misappropriation under Texas law and under federal Defend Trade Secrets Act (Counts 2 and 3); conversion (Count 4); violation of Texas Theft Liability Act (Count 5); breach of contract (Count 6); breach of fiduciary duty (Count 7); tortious interference with contracts (Count 8); and unfair competition (Count 9).

Daniel Audet ("Audet") denies the validity of such claims and maintains that he is not a proper defendant before this Court because, among other things, he has not been properly served in Singapore with sufficient process. Therefore, the Court should dismiss WV's claims against Audet as a matter of law. *See* Fed. R. Civ. P. 12(b)(4) and (5). Further, WV has failed to state plausible claims against Audet in either of their Complaints,[1] and thus all claims against Audet should be dismissed under Fed. R. Civ. P. 12(b)(6).

## II.      Statements of Issues

1. Does the Court lack jurisdiction over Audet who is a Canadian citizen and Singapore resident, because he has not been properly served under the laws of Singapore?

2. Did WV fail to state plausible claims against Audet as WV did not plead (1) any instance of Audet misrepresenting anything regarding the nature of WV or Defendants' products or services; (2) any instance of Audet allegedly misappropriating any of WV's purported trade secret; (3) any contractual obligation that prohibited Audet from working for another multi-

---

[1] Audet objects to WV's filing of the First Amended Complaint. But for purposes of addressing the allegations pleaded against him in this Motion only, Audet collectively refers to the Original Complaint and the First Amended Complaint as the "Complaint."

level marketing company; (4) any contractual obligation that prohibited Audet from recruiting anyone formerly or currently associated with WV; and (5) any allegation that Audet took any physical property that belongs to WV?

### III.    Statements of Facts

#### A.    Audet's Employment Contract

On December 30, 2013, Audet signed an offer of employment from WorldVentures Holdings, LLC (and no other WV entities). (Dkt. #123-17, "Employment Contract.") Audet worked for WorldVentures Holdings, LLC as the International Operations Consultant from approximately March 2014 to November 30, 2016. (Dkt. # 123 at ¶ 117; Dkt. #123-17 at 1.) Audet's Employment Contract did not have a non-solicitation clause. *See id.* The Employment Contract also did not have any post-employment non-competition clause. *See id.*

#### B.    Improper service on Audet

WV filed the Original Complaint on June 4, 2018. WV filed two documents in an attempt to show that they served Audet. (Dkt. #119 and 132.) First, WV alleges that Audet was served through the Texas Secretary of State ("Secretary") on June 13, 2018. (Dkt. #119-1 at 4.) But WV intentionally waited until July 6, almost a month to file a return of service. (Dkt. # 119.) WV attached a copy of the summons that was issued to the Secretary as Audet's "Registered Agent for Service" (Dkt. #119-1, "TXSoS Summons"). WV hired process server Mike Techow to deliver the TXSoS Summons and other documents to the Secretary, even though WV is fully aware Audet does not reside or conduct business in Texas. On July 6, 2018, WV filed the First Amended Complaint (Dkt. # 123), and then filed a certificate of service from the Secretary stating that it forwarded the *Original* Complaint, not the First Amended Complaint to Audet. (Dkt. # 132-1 at 3.)  In tacit admission that the service through the Secretary is improper, on July

2

18, 2018, WV attempted to serve Audet via a courier who handed Audet a packet of documents containing a copy of the *Original* rather than the *First Amended* Complaint and a copy of the summons listing the Advanced Wellness registered office, which neither Audet's office location or residence. WV also has made no showing that the courier is a registered process server under the rules of the Singapore court. WV has not shown any attempt to affect service of the First Amended Complaint on Audet.

## IV.   Motions to Dismiss for Insufficient Process and Insufficient Service (Fed. R. Civ. P. 12(b)(4) and (5))

### A.   Foreign defendants must be properly served under Fed. R. Civ. P. 4(f) and (h).

While Audet should be dismissed from this action for WV's failure to state a claim alone, service of process was also defective as to Audet. "Generally speaking, 'an objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service,' while a 'Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint.'" *Gartin v. Par Pharm. Cos., Inc.*, 289 F. App'x 688, 691 n.3 (5th Cir. 2008) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1353).

Foreign "Defendants must be properly served for the Court to maintain jurisdiction over them." *House v. S. P. Richards Corp.*, Case. No. H-12-3704, 2014 WL 427897, at *2 (S.D. Tex. Feb. 4, 2014). Even if a foreign defendant receives an informal notice via postal service, the court "has no jurisdiction over the [foreign] Defendants until they are properly served under the Federal Rules of Civil Procedure[.]" *Id.* (dismissing defendants who were not properly served).

To serve a Singapore resident, a plaintiff must utilize "a method that is reasonably calculated to give notice" to the defendant:

(A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

(B) as the foreign authority directs in response to a letter rogatory or letter of request; or

(C) unless prohibited by the foreign country's law, by:

    (i) delivering a copy of the summons and of the complaint to the individual personally; or

    (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f)(2). Singapore is not a signatory to the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. Thus, WV must serve Audet Singapore according to the laws of Singapore.

Under Order 65, Rule 2A of the Rules of Court of Supreme Court of Singapore ("Singapore Rules"), a plaintiff may serve foreign legal process using "a method of service authorised by these Rules for the service of analogous process issued by the Court."[2] Singapore Rules Order 62, Rule 1, read in light of Order 10, Rules 1 and 4, requires that a summons originating a lawsuit must be personally served on each defendant.[3] Singapore Rules further require that "[p]ersonal service must be effected by a process server of the Court or by a solicitor or a solicitor's clerk whose name and particulars have been notified to the Registrar for this purpose[.]"[4]

## B. Both the process and the service on Audet was insufficient and improper.

WV filed a return of service and attempts to argue that Audet was properly served (*see* Dkt. Dkt. #119 and 132), but the return demonstrates an improper and insufficient service on Audet.

---

[2] Singapore Rules, Order 65, Service of Foreign Process, Rule 2A, https://sso.agc.gov.sg/SL/SCJA1969-R5?ProvIds=PO65-#PO65-pr2A- (last visited July 12, 2018).

[3] Singapore Rule, Order 10, Service of Originating Process (https://sso.agc.gov.sg/SL/SCJA1969-R5?ProvIds=PO10-#PO10-) and Order 62, Service of Documents (https://sso.agc.gov.sg/SL/SCJA1969-R5?ProvIds=PO62-#PO62-).

[4] Singapore Rule, Order 62, Rule 2 (https://sso.agc.gov.sg/SL/SCJA1969-R5?ProvIds=PO62-#PO62-pr2-).

1.     ***WV's attempted service through the Texas Secretary of State is improper because Singapore's laws require personal service of summons.***

WV must demonstrate that service complied with Singapore Rules to satisfy Rule 4(f)(2) of the of Federal Rule of Civil Procedure. Here, WV has failed to make a showing that they complied with the Singapore Rules for service of the summons and the Complaint. As stated above, Singapore Rules require personal service of summons by a registered process server. It cannot be disputed that the Secretary is not "a process server of the Court or by a solicitor or a solicitor's clerk whose name and particulars have been notified to the Registrar for this purpose[.]" Singapore Rules, Order 62, Rule 2. Further, WV has not shown that the courier who served Audet (with the wrong pleading and the summons with the wrong address) was a process server who is registered with the Registrar of the Singapore Court.

Further, the TXSoS Summons dated June 6, 2018 (Dkt. #119-1) is facially defective because it lists the Secretary as Audet's "Registered Agent for Service." In the Complaint, WV alleges that "Audet may be served with process by serving the Texas Secretary of State" because he "engages in business in Texas" but "has not designated or maintain a resident agent for service of process in Texas as required by Texas law." (Dkt. #123 at ¶ 22.) But, by the letter of the statutes, *individuals* are not required to register with the Secretary. *See* Tex. Bus. Org. Code § 1.002 (definitions of "Business," "Entity," "Foreign," "Foreign Entity," "Foreign Filing Entity" in subsections 5, 21, 27, 28, and 29); § 5.251 (designating the Secretary as the agent for service of process if the "foreign filing entity" fails to appoint or register an agent or "entity transacts business" in Texas without being registered); § 9.001 (listing "foreign entity" that must register with the Secretary, which does not include individuals); § 9.251 (listing "activities that do not constitute transaction of business" Texas, which includes "(2) holding a meeting of the entity's managerial officials, owners, or members or carrying on another activity concerning the entity's

internal affairs;" "(6) effecting a sale through an independent contractor;" and "(10) conducting an isolated transaction[.]" Audet is not a "foreign entity" or "foreign filing entity" required to appoint and register an agent for service with the Secretary.

WV has failed to show that service through the Secretary as a "Registered Agent for Service" for Audet even though he is not required to register with the Secretary and designate an agent for service. (*See* TXSoS Summons, Dkt. #119-1.) Thus, the TXSoS Summons is insufficient process under Rule 12(b)(4), and service on Audet through the Secretary is improper.

**C.     This Court lacks jurisdiction over Audet without proper service under the Federal Rules of Civil Procedure.**

Audet is mindful that the Court ordered that "[a]ctual notice of this [Temporary Restraining] Order shall be effective by delivery of a copy of this Order by hand, by United States mail by certified delivery return receipt requested, by courier or private delivery service, by facsimile, by e-mail or by any other reasonable means of delivery to Defendants or any of their agents, assigns, affiliates register agents or representatives." (TRO, Dkt. #5 at p. 13, ¶ 3.) But nowhere in the TRO or the order granting expedited discovery (Dkt. #6) did the Court authorize substitute service of the summons and the Complaint. Further, the TRO is now dissolved.

Subject to the objections insufficient process and insufficient service of process, Audet complied with the Court's restrictions when they were in effect. Notwithstanding, WV's claims against Audet should be dismissed because this Court does not have jurisdiction over him. *See House*, 2014 WL 427897, at *2. Accordingly, Audet respectfully requests that this Court dismiss his under Rule 12(b)(4) and (5).

**V.     Motion to Dismiss for Failure to State a Claim (Fed. R. Civ. P. 12(b)(6))e**

**A.     A plaintiff cannot rely solely on conclusory allegations to state a plausible claim.**

To survive a motion to dismiss for failure to stat a claim, a complaint must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 555–57. When considering a motion to dismiss under Rule 12(b)(6), the court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Id.* at 664. Second, the court must then "consider the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

**B.**     **WV failed to plead anything beyond naked, conclusory allegations against Audet.**

WV also failed to plead any specific purported acts or omission by Audet that gave rise to any of WV's claim.

1.     *Lanham Act*

Under Fifth Circuit law, a false advertising claim "under section 43(a) requires the plaintiff to establish:

> (1) A false or misleading statement of fact about a product;
> (2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers;
> (3) The deception is material, in that it is likely to influence the consumer's purchasing decision;
> (4) The product is in interstate commerce; and
> (5) The plaintiff has been or is likely to be injured as a result of the statement at issue.

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).

WV only alleged naked recitations of these elements (*see* Dkt. 123 at ¶¶ 139–147) and the conclusory allegation that "[a]ll Defendants" have "made false and misleading statements of fact concerning Plaintiffs' and Defendants' product, goods and services" (*see id*. at ¶¶ 136, 143). WV has failed to allege a *single* instance of Audet purportedly making false or misleading statements regarding WV's purported goods or services or Defendant's goods or services. WV has thus failed to show "facial plausibility" by "plead[ing] factual content that allows the court to draw the reasonable inference" that Audet is liable for violations of the Lanham Act. *See Iqbal*, 556 U.S. at 678.

2.     *Trade Secret Misappropriation*

WV failed to specify what Audet did that allegedly gave rise to the misappropriation claims asserted against him. WV alleges misappropriation under Texas Uniform Trade Secrets Act ("TUTSA"), Texas common law, and the federal Defend Trade Secrets Act ("DTSA"). As a threshold matter, WV cannot state a claim for misappropriation under Texas common law

because it has failed to allege any act or omission on the part of Audet occurring before September 1, 2013. TUTSA became effective on September 1, 2013, and displaced a claim for misappropriation of trade secret under Texas common law. *See* Tex. Civ. Prac. & Rem. Code § 134A.007(a) (stating that TUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.").

        a.      ***No allegations of Audet's acts or omission that gave rise to the misappropriation claims***

As for the TUTSA claim, a plaintiff must establish that:

(1) it owns information that it "has taken reasonable measures under the circumstances to keep the information secret" (Tex. Civ. Prac. & Rem. Code § 134A.002(3-a) and (6)(A));
(2) the "information derives independent economic value" from not being generally known to and "not being readily ascertainable through proper means" (§ 134A.002(6)(B)); and
(3) defendant misappropriated in one of six ways listed in § 134A.002(3).

The elements of a DTSA claim are similar to TUTSA. *Compare* 18 U.S.C. § 1839(3)–(6) *with* Tex. Civ. Prac. & Rem. Code § 134A.002(2)–(6).

The mere acquisition of trade secrets does not constitute misappropriation. Rather, the acquisition must be *with* the knowledge that it was acquired *through* improper means to constitute misappropriation. *See* Tex. Civ. Prac. & Rem. Code § 134A.002(3)(A);[5] *see also Emerald City Mgmt., LLC v. Kahn*, No. 4:14-cv-358-ALM, 2016 WL 98751, *29 (E.D. Tex. Jan. 8, 2016) (TUTSA provides two types of misappropriation: (1) "*acquisition* of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or (2) "*disclosure or use* of a trade secret of another without express or implied consent [by one of three classes of individuals). WV has failed to identify what alleged trade secrets Audet purportedly acquired or demonstrate that such alleged acquisition occurred and

---

[5] "Misappropriation" means: (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means[.]" Tex. Civ. Prac. & Rem. Code § 134A.002(3)(A).

was through improper means with the requisite knowledge. Further, after Audet's resignation in 2016, WV never raised any concerns or allegations of misappropriation nor did WV send him a cease or desist letter. As to the second possible type of misappropriation, WV has made no allegation that Audet *used or disclosed* WV's trade secrets nor demonstrated the existence of a trade secret. WV failed to allege even a single instance of Audet disclosing any alleged trade secret of WV.

### b. *No allegation of what "trade secrets" have been misappropriated by Audet*

Nowhere in the Complaint does WV specify what alleged trade secrets that Audet purportedly misappropriated. Under TUTSA, "trade secret" means:

> all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:
> (A) the owner of the trade secret has taken **reasonable measures under the circumstances to keep the information secret**; *and*
> (B) the information **derives independent economic value**, actual or potential, **from not being generally known to, and not being readily ascertainable through proper means** by, another person who can obtain economic value from the disclosure or use of the information.

Tex. Civ. Prac. & Rem. Code § 134A.002(6) (West 2017) (emphasis added).[6]

WV failed to allege what information they purportedly have maintained as a secret, what reasonable measures WV took to protect its secrecy, and establish the economic value of such information not being generally known or ascertainable through proper means. The only vague allegation states that WV's trade secrets include "representative genealogies, geographic areas of

---

[6] "Trade secret" is similarly defined in DTSA. *See* 18 U.S.C. § 1839(3).

strength and growth, company leaders, customer lists, and sensitive financial information[.]" (Dkt. #123 at ¶ 41.)

Further, WV has not specifically alleged that Audet improperly received, used, or disclosed any sensitive financial information. And allowing WV to replead would be futile[7] because, at the preliminary injunction hearing, extensive evidence of publicly available information demonstrated that the identity of representatives and WV's financial information is generally known or ascertainable through proper means. Even WV's witnesses admitted that they did not have any personal knowledge or direct evidence that Audet misappropriated WV's purported trade secrets. *See* June 26, 2018 Hr'g Tr. at 266:21–267:8 (G. Stephenson); *see also* June 27, 2018 Hr'g Tr. at 78:15–23, 80:7–10, 86:3–13, 92:23–93:6, 100:7–11 (D. Stammen). Therefore, WV has failed to state a claim for trade secret misappropriation against Audet.

### 3.    *Conversion*

WV also failed to state a claim for conversion. Under Texas law, conversion is "unauthorized and wrongful assumption and exercise of dominion and control over the *personal property* of another, to the exclusion of or inconsistent with the owner's rights." *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (emphasis added, quoting *Waisath v. Lack's Stores*, 474 S.W.2d 444, 447 (Tex. 1971)). When an "allegation involves only intellectual property rights … rather than rights regarding physical property, it is "outside the scope of Texas conversion law, which concerns only physical property." *Carson*, 344 F.3d at 456 (emphasis added); *Beardmore v. Jacobson*, 131 F. Supp. 3d 656, 666–67 (S.D. Tex. 2015) (same).

---

[7]   *See Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (A trial court may properly deny leave to amend "where the proposed amendment would be futile because it could not survive a motion to dismiss."); *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (an amendment is futile when "the amended complaint would fail to state a claim upon which relief could be granted.").

WV generally alleges that unspecified "Defendants" converted "Plaintiffs' property, including the confidential and proprietary information and trade secrets of Plaintiffs[.]" (Dkt. #123 at ¶ 179.) Aside from the generic reference to "Plaintiffs' property," the Complaint fails to allege conversion of any tangible, physical property by Audet. WV failed to state a claim for conversion because they failed to allege that Audet engaged in "unauthorized and wrongful assumption and exercise of dominion and control over the *personal property*" that belonged to WV. *See Carson, Inc.*, 344 F.3d at 456 (5th Cir. 2003) (emphasis added)).

### 4.   *TTLA*

As noted above, TUTSA became effective on September 1, 2013, and displaced both common-law misappropriation-of-trade-secret and TTLA theft-of-trade-secret claims. *In re Mandel*, 578 F. App'x 376, 384 n.8 (5th Cir. 2014) (per curiam) (unpub.); *Educ. Mgmt. Servs., LLC v. Tracey*, 102 F. Supp. 3d 906, 915 (W.D. Tex. 2015). WV alleges that "Defendants have committed and continue to commit theft of WV's trade secrets and confidential and proprietary information[.]" (Dkt. #123 at ¶ 190.) Because WV failed to allege any act or omission by Audet occurring before September 1, 2013, Plaintiff cannot assert a TTLA claim against Audet or connect any of his purported Texas contacts to a TTLA claim.

### 5.   *Breach of contract*

WV's claim for breach of contract (Count 6) is devoid of any specific allegations against Audet. (*See* Dkt. #123 at ¶¶ 200–215.) WV does not point to any provision of any contract or agreement between WV and Audet that Audet could have even arguably breached. (*See* Dkt. #123 at ¶¶ 200–215.)

WV alleges generically that "the Former WorldVentures Employees … breached their respective agreements to maintain the confidentiality of Plaintiffs' trade secrets and other proprietary information by, among other actions, forwarding sensitive information to their

personal e-mail accounts in their last weeks of work, preparing to launch the MaVie brand while impermissibly using WorldVentures' materials and support, and using confidential knowledge related to Plaintiffs' genealogy to recruit individuals to MaVie." (*See* Dkt. #123 at ¶ 204.)  But no specific facts or details were provided with respect to Audet allegedly engaging in such purported activity.

In short, this is a generic allegation that Audet has been lumped into even though Audet had been gone from WV for more than a year and a half before suit was filed. During the preliminary injunction hearing, WV did not produce a single email where Audet allegedly forwarded "sensitive information" to his personal email account or that Audet allegedly misused such information. And the Complaint lacks any specific allegation that Audet forwarded WV's "sensitive information" to his personal email accounts, or that Audet was contractually prohibited from doing so. Nor is there any specific allegation that Audet prepared to launch MaVie using "WV materials"; this "naked assertion[s]" devoid of "further factual enhancement" cannot support a plausible contract claim. *See Twombly*, 550 U.S. at 555. Finally, there is no allegation that Audet used WV genealogy to recruit anyone. The only individual that Audet allegedly attempted to recruit is Matt Morris. But there is no allegation that Audet had a non-solicitation obligation to WV nor did WV articulate how Matt Morris' name is allegedly secret. That is because Matt Morris's identity and his status as a direct marketing pro is no secret and is publicly available. *See, e.g.,* Matt Morris, WorldVentures Training, Facebook, https://www.facebook.com/ mattmorristraining/ (last visited July 19, 2018); Matt Morris – WorldVentures Top Earner Interview 2015, Business for Home, https://www.businessforhome.org/2015/05/matt-morris-worldventures-top-earner-interview-2015/ (last visited July 19, 2018). WV's allegations

13

regarding recruitment of Matt Morris does not permit the Court "to infer more than the mere possibility of misconduct" and WV has not shown that it is entitled to relief for breach of contract against Audet. *See Iqbal*, 556 U.S. at 679.

Further, WV's allegation that "Former WorldVentures Employees" sent "sensitive information" to personal email accounts does not state any breach of the confidentiality agreement between WorldVentures Holdings, LLC and Audet ("Audet NDA," Dkt. #123-16.) In fact, the only contractual provision in the Audet NDA that is even remotely relevant states:

> Employee acknowledges that in her [*sic*] position with Employer, she [*sic*] has had and/or will have access to Employer's trade secrets and proprietary and confidential business information … (all of which are referred to collectively herein as "Confidential Matters"). Employee further agrees that if a third party (e.g., vendors, clients and manufacturers) contracts with Employer, the information obtained or received from a third party … will be treated in the same manner and subject to the same protection as other Confidential Matters. She [*sic*] further agrees that she [*sic*] will not use Employee [*sic*] Confidential Information or Confidential Matters for any purpose other than to perform her [*sic*] job and that she [*sic*] will not use or disclose any such information following the cessation of her [*sic*] employment with Employer.

(Dkt. #123-16 at ¶ 1, emphasis added.) Setting aside the numerous errors, the confidentiality provision in the Audet NDA is bare-bones, and only prohibits use or disclosure of Confidential Matters "following the cessation of her [*sic*] employment with Employer." It does not prohibit the use of personal email accounts (which WV fails to even allege that Audet used). Further, there is also no allegation that Audet knew of the Employee Handbook (Dkt. #123-5) or acknowledged the existence of provisions regarding the use of personal email accounts. Even if there were such acknowledgement on Audet's part, the Handbook itself expressly disclaims that "[p]olicies set forth in this handbook are not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind … between WorldVentures and any of its employees." (Dkt. #123-5 at 7.)

14

WV makes another conclusory allegation that "[b]y actively working to launch MaVie while they were still WorldVentures employees, the Former WorldVentures Employees breached the terms of their employment agreements with Plaintiffs." (Dkt. #123 at ¶ 212.) But Audet's Employment Contract did not have any post-employment non-competition or non-solicitation obligations to any of the WV entities. And WV alleged that "[i]n the summer of 2017, former WorldVentures employees McKillip, Lowe, Fitzgerald, Siddy, Kemble and Audet … began conspiring with MaVie, ARIIX, Advanced and/or Barakat in connection with MaVie, in violation of their respective contracts with WorldVentures and in breach of their fiduciary duties to their (now former) employer." (Dkt. #123 at ¶ 5.) As noted above, Audet left WV in November 2016 and there is no specific allegation as to how Audet allegedly participated in a conspiracy.  Further, WV has no contract that prevents Audet from working for any other company once he resigned from WV. And the other 25 WV entities that have never contracted with Audet cannot point to any specific contractual provision that Audet allegedly breached.

### 6.   *Breach of fiduciary duty*

"An employee's fiduciary duty to not compete with his employer ends when the employment relationship ends." *D'Onofrio v. Vacation Pubs., Inc.*, 888 F.3d 197, 217 n.20 (5th Cir. Apr. 23, 2018) (citing *Bray v. Squires*, 702 S.W.2d 266, 270–71 (Tex. App.—Houston [1st Dist.] 1985, no writ). "[O]nce an employee resigns, he may actively compete with his former employer." *Bray*, 702 S.W.2d at 270. "In Texas, to resign from one's employment and go into business in competition with one's former employer is, under ordinary circumstances, a constitutional right." *Abetter Trucking Co. v. Azripe*, 113 S.W.3d 503, 510 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Ledel v. Bill Hames Shows, Inc.*, 367 S.W.2d 182, 184 (Tex. Civ. App.—Fort Worth 1963, no writ)). "There is nothing legally wrong in engaging in such competition or in preparing to compete before the employment terminates." *Id.* (citing *MPI,*

15

*Inc. v. Dupre*, 596 S.W.2d 251, 254 (Tex. Civ. App.—Fort Worth 1980, writ ref'd n.r.e.)). Even "the *possibility of crippling, or even destroying*, a competitor is inherent in a competitive market." *Id.* (citing *Augat, Inc. v. Aegis, Inc.*, 409 Mass. 165, 565 N.E.2d 415, 422 (1991)) (emphasis added). "An employer who wishes to restrict the post-employment competitive activities of a key employee may seek to accomplish that goal through a non-competition agreement." *Id.*

Audet resigned from WorldVentures Holdings, LLC in November 2016. (Dkt. # 123 at ¶ 117; Dkt. #123-17 at 1.) Thus, WV has not shown that Audet was involved with the creation of MaVie while he was still employed by WorldVentures Holdings, LLC. Audet had every right to take whatever job he chose upon his resignation, as he no longer owed any purported fiduciary duty to any WV entity. Thus, Audet's decision to work for MaVie could not rise to the level of a breach of fiduciary duty. If WV wished to restrict Audet's post-employment competitive activities, they should have done so through a non-competition agreement. *Abetter Trucking*, 113 S.W.3d at 510. As noted above, there is no non-competition agreement between Audet and any WV entity.

WV alleges that "[i]n the summer of 2017, former WorldVentures employees McKillip, Lowe, Fitzgerald, Siddy, Kemble and Audet … began conspiring with MaVie, ARIIX, Advanced and/or Barakat in connection with MaVie, in violation of their respective contracts with WorldVentures and in breach of their fiduciary duties to their (now former) employer." (Dkt. #123 at ¶ 5.) But WV also admits that Audet left WorldVentures Holdings, LLC's employ on November 30, 2016. (Dkt. #123 at ¶ 117.) As noted above, "once an employee resigns, he may actively compete with his former employer." *Bray*, 702 S.W.2d at 270. Thus, by WV's own allegations, they fail to state a claim against Audet for breach of fiduciary duty.

7.    *Tortious interference*

To prevail on a claim for tortious interference with an existing business relationship, WV must prove that there were "(1) unlawful actions undertaken without justification or excuse; (2) with intent to harm; (3) actual damages; and (4) the actions were motivated by malice" by Audet, individually. *See Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 633–34 (5th Cir. 2002); *see also Adrain v. Genetec Inc.*, Civ. Action No. 2:08-CV-423-TJW, 2009 WL 3161386, at *3 (E.D. Tex. Sept. 30, 2009); *CF & I Steel Corp. v. Pete Sublett & Co.*, 623 S.W.2d 709, 715 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

WV alleges that "[t]he Former WorldVentures Employees all possessed confidential, proprietary information related to the WorldVentures structure, which allowed them to target specific individuals for the launch of the MaVie brand[.]" (Dkt. #123 at ¶ 233.) But WV fails to specifically allege that Audet undertook any unlawful actions to interfere with each of 26 WV entities' contracts with a WV representative. The Complaint simply fails to allege even a single contract executed in Texas or with a Texas resident with which Audet allegedly interfered.

WV's passing reference to Matt Morris is irrelevant to the tortious interference claim because WV admits that Morris is still an independent contractor of WV. (*See* Dkt. #123 at ¶¶ 8, 61.) Thus, *any* action allegedly taken by Audet in purportedly recruiting Morris, when Audet had no non-solicitation obligations to WV, cannot form the basis of WV's tortious interference claim because there can be no actual damages arising from such recruitment. *See Apani Sw.*, 300 F.3d at 633–34. Thus, WV failed to state a plausible claim against Audet for tortious interference.

8.    *Unfair competition*

"Under Texas law, unfair competition is not an independent cause of action; rather, it is an 'umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters.'" *WickFire, LLC v.*

*Trimax Media, Inc.*, A-14-CA-34-SS, 2016 WL 4119917, at *7 (W.D. Tex. filed Mar. 25, 2016) (quoting *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App.—Waco 1993, writ denied); *Am. hisitage Life Ins. Co. v. hisitage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974)). To plead unfair competition, a claimant must at least identify an independent "illegal act by the defendant which interfered with the plaintiffs' ability to conduct its business" and which "must at least be an independent tort." *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (citing *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904-05 (Tex. App.—Dallas 1989, writ denied)). Courts have "identified several causes of action[] that fall under the penumbra of unfair competition under Texas law," including "trade-secret law, palming off or passing off, and misappropriation." *Seatrax, Inc. v. Sonbeck Intl, Inc.*, 200 F.3d 358, 368 (5th Cir. 2000) (internal quotation omitted).

WV has not identified any specific acts or omission by Audet that gave rise to to any of WV's other causes of action against him. Thus, WV must but failed to plead an independent "illegal act" by Audet which interfered with WV's "ability to conduct its business" and which "must at least be an independent tort." *Taylor Pub.*, 216 F.3d at 486. If all of the other causes of action fail, then WV cannot state a cause of action for unfair competition against Audet.

## VI.   Conclusion

This Court cannot exercise jurisdiction over Audet because he was not properly served under Rule 4 of the Federal Rules of Civil Procedure. Further, WV has not articulated sufficient facts in its Complaint to support any of the 26 WV entities' asserted claims against Audet. Accordingly, Audet, a resident of Singapore and a Canadian citizen, respectfully requests that the Court dismiss all of WV's claims against him.

Dated: July 23, 2018                        Respectfully submitted,

                                            **LAW OFFICES OF ELVIN E. SMITH, III PLLC**

                                            /s/ *Elvin E. Smith*

                                            Elvin E. Smith III, Lead Attorney
                                            State Bar No. 00754995
                                            esmith@EESLAW.COM

                                            307 Dartbrook
                                            Rockwall, TX 75087
                                            972-722-2475
                                            972-722-3332
                                            *Attorney for Daniel Audett*


## CERTIFICATE OF SERVICE

The undersigned certifies that on this day, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3).

                                            /s/ *Elvin E. Smith*
                                            Elvin E. Smith