# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| WORLDVENTURES HOLDINGS, LLC, et al., | § § § | |
| | § | CIVIL ACTION NO. 4:18CV393 |
| v. | § | JUDGE MAZZANT |
| | § | |
| MAVIE, et al. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

WorldVentures Holdings, LLC ("WorldVentures") and dozens of its affiliates[1] (the "Affiliates") have filed suit against (1) Daniel Audet, who previously worked for WorldVentures; (2) Michelle Siddy and (3) Anthony Fitzgerald, who previously worked for internationally–based Affiliates; (4) Advanced Wellness Solutions Pte., Ltd., an alleged competitor based in Singapore; and (5) Abdelwadoud Barakat, an Advanced Wellness executive (collectively, the "Moving Defendants"), among others.[2] WorldVentures, Barakat, Siddy, and Fitzgerald now move to dismiss the claims against them for lack of personal jurisdiction and improper venue; all Moving Defendants move to dismiss the case for improper service; and Audet moves to dismiss for failure to state a claim (Dkt. #21; Dkt. #135; Dkt. #170; Dkt. #180). Plaintiffs, in turn, filed response briefs—in addition to motions to seal one of their responses (Dkt. #88), to serve the Moving

---

[1] The Affiliates include: WorldVentures Marketing LLC, WorldVentures Marketing Limited, WorldVentures Canada Inc., WorldVentures Marketing B.V., WorldVentures Marketing (Hong Kong) Limited, WorldVentures Marketing Pte. Ltd., WorldVentures Taiwan Ltd., WorldVentures Marketing Pty. Ltd., WorldVentures Marketing Jamaica Limited, WorldVentures Services LLC, WorldVentures Cooperatief U.A., WorldVentures SP ZO.O, WorldVentures Marketing South Africa, WorldVentures Enterprises LLC, WorldVentures Malaysia SDN BHD, WorldVentures Marketing SRL, WorldVentures (Cyprus) Limited, WorldVentures Marketing D.O.O. Berograd, WorldVentures Marketing SL D.O.O., WorldVentures Marketing Limited, WorldVentures Marketplace LLC, WorldVentures Holdings (Netherlands) B.V., WorldVentures Marketing Limited (New Zealand), WorldVentures Marketing Colombia S.A.S., and WorldVentures Holdings' Asia Pte. Ltd.

[2] Plaintiffs also initially brought suit against Kemble Morgan and against a party named "MaVie." However, before the motions brought by each party could be resolved, Plaintiffs agreed to dismiss the claims against Morgan, and dropped the claims against MaVie in its Second Amended Complaint. Thus, Morgan and MaVie's motions are moot.

Defendants through their U.S.–based counsel (Dkt. #188),[3] to conduct jurisdictional discovery (Dkt. #198), and to moot the motions to dismiss because Plaintiffs amended their complaint while the motions were pending (Dkt. #148). After carefully considering all relevant filings,[4] the Court concludes that, aside from Audet's 12(b)(6) motion, the motions to dismiss remain ripe for review,[5] and should be granted in part and denied in part—without the need for additional jurisdictional discovery. The Court further concludes that Plaintiffs' alternative motion for service on Barakat and Audet's counsel will be granted; Plaintiffs' motion to seal will be denied; and Audet's 12(b)(6) motion will be denied as moot.

## BACKGROUND[6]

WorldVentures and its Affiliates (collectively, "Plaintiffs") market and sell lifestyle membership products and services through a network of "Representatives," which are paid based on sales made by them and other Representatives they recruit (Dkt. #89, Exhibit 2 at pp. 32–35). Plaintiffs consider their network of Representatives, also referred to as a "genealogy," to be a trade secret and makes information about its network available on a need to know basis (Dkt. #89, Exhibit 2 at pp. 32–35).

---

[3] WorldVentures filed a formal motion to serve Advanced Wellness and Barakat through their U.S.–based counsel and, in their various responses to the improper service motions, alternatively asks the Court for permission to serve their U.S.–based counsel. The Court construes each of these requests as a motion.

[4] Plaintiffs ask the Court to disregard Fitzgerald's reply because it was filed a single day late (Dkt. #248 at pp. 1–2). The Court declines. Plaintiff exercised its right to file a sur–reply and has not suffered any prejudice from the late–filing.

[5] This is because the Second Amended Complaint does not fully address the issues raised in the original motion to dismiss. *See Holmes v. Nat'l Football League*, 939 F. Supp. 517, 523 n.7 (N.D. Tex. 1996) ("Although Holmes' first amended complaint supersedes his original complaint, the court may nevertheless treat defendant's motion as directed to the amended complaint because the defects in Holmes' complaint reappear in the amended complaint.") (citations omitted).

[6] The Court has prepared the background section accepting Plaintiffs' uncontradicted allegations as true and resolving all conflicting evidence in their favor. *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 342–43 (5th Cir. 2004) (explaining that this standard applies where, as here, the Court is deciding whether personal jurisdiction exists without an evidentiary hearing supporting the motion).

Around July 2017, WorldVentures and Advanced Wellness contemplated entering a potential business transaction (Dkt. #21, Exhibit 2 at p. 5). They subsequently executed a Confidentiality Agreement to facilitate discussions about this transaction (Dkt. #21, Exhibit 2 at p. 5), which Barakat negotiated and signed on Advanced Wellness' behalf. The Confidentiality Agreement requires Advanced Wellness to safeguard any "confidential information" WorldVentures shared—including WorldVentures' representative genealogy, areas of growth, company leaders, customer lists, and other financially sensitive information. Although Advanced Wellness is based in Singapore, the Confidentiality Agreement provides that it is to "be governed and construed in accordance with the internal laws of the State of Texas" (the "Choice of Law Provision")—where WorldVentures' principal place of business is based (Dkt. #21, Exhibit 10 at p. 1). It also contains a "Forum Selection Clause" providing that:

> Any legal suit, action or proceeding arising out of or related to this Agreement or the matters contemplated hereunder shall be instituted exclusively in the federal courts of the United States or the courts of the State of Texas in each case located in the city of Plano and County of Collin, and each Party submits irrevocably to the exclusive jurisdiction of such courts in any such suit, action or proceeding and waives any objection based on improper venue or *forum non conveniens*.

(Dkt. #89, Exhibit 1 at pp. 4–5), and a "Service Clause," stating that:

> Service of process, summons, notice or other document by mail to such Party's address set forth herein shall be effective service of process for any suit, action or other proceeding brought in any such court.

(Dkt. #89, Exhibit 1 at p. 5).

After the Confidentiality Agreement was executed, Barakat travelled to Collin County, Texas on multiple occasions to discuss a potential business relationship between Advanced Wellness and WorldVentures (Dkt. #89, Exhibit 2 at pp. 58–59). Advanced Wellness and WorldVentures also each signed a "Letter of Intent" concerning the parties' potential transaction, which purports to be governed by Texas law (Dkt. #21, Exhibit 2 at pp. 21–22). No working

3

relationship would come into fruition though (Dkt. #21, Exhibit 2 at p. 6). Instead, Advanced Wellness and Barakat allegedly used their newly–acquired knowledge of WorldVentures' operations to identify and recruit WorldVentures' top officers and Representatives from Texas and across the globe. These officers and Representatives would then purportedly use confidential information they had as former WorldVentures personnel to help Advanced Wellness launch MaVie, a product line Barakat founded that competes with WorldVentures (Dkt. #21, Exhibit 2 at p. 3l). They would also allegedly help Advanced Wellness recruit others who worked for WorldVentures or an Affiliate.

Michelle Siddy, Anthony Fitzgerald, Daniel Audet, Jon McKillip, Kyle Lowe, and Matthew Morrison are purportedly among those who Advanced Wellness tried to recruit. At the time they were solicited, each worked for WorldVentures or an Affiliate in some capacity. Siddy, a United Kingdom resident, was WorldVentures Marketing Ltd.'s Director of Sales Marketing–Northern Europe. Fitzgerald, an Australian resident, was WorldVentures Marketing Ltd.'s Asia–Pacific Sales Director. Audet, a Singapore resident, was WorldVentures' Senior Director of Global Operations. McKillip and Lowe, Texas residents, were WorldVentures' President and Vice–President of Global Sales (Dkt. #89, Exhibit 2 at pp. 41–42, 70). And Morrison, also a Texas resident, was one of WorldVentures' top–earning Representatives.

While Morrison stayed with WorldVentures, the others each left to help Advanced Wellness launch the MaVie product line. Siddy and Fitzgerald were primarily tasked with helping to launch MaVie abroad. They also insist that they have "only been to Texas twice" and that each time was "solely to perform [their] job duties for WorldVentures Marketing Ltd," and that they "have never recruited a Texas resident . . . for employment" (Dkt. # 135, Exhibit 1 at p. 3; Dkt. #180, Exhibit 1 at p. 2). Plaintiffs cite evidence reflecting that at least some of Advanced Wellness

4

and Barakat's recruiting efforts, however, took place in Texas. Morrison testified, for instance, that Barakat met him in Texas on multiple occasions to try and recruit him to join Advanced Wellness as a sales representative or corporate officer (Dkt. #89, Exhibit 2 at pp. 126–37). Morrison also testified that Barakat encouraged him to recruit the WorldVentures Representatives in his genealogy (Dkt. #89, Exhibit 2 at p. 131).

Plaintiffs allege that, while engaging in a joint scheme to launch MaVie, Advanced Wellness, Barakat, Siddy, Fitzgerald, and Audet misappropriated Plaintiffs' trade secrets and breached and induced others to breach various contractual and/or fiduciary obligations owed to WorldVentures, an Affiliate, or both. Plaintiffs subsequently sued the Moving Defendants for violation of the Lanham Act, misappropriation of trade secrets in violation of the United States Defend Trade Secrets Act of 2016 and/or the Texas Theft Liability Act, breach of contract, tortious interference with existing business relations, unfair competition, and conspiracy. Plaintiffs also bring breach of fiduciary duty claims against Siddy, Fitzgerald, and Audet.

Plaintiffs have since made various attempts to serve these defendants. For instance, Plaintiffs delivered a sealed envelope containing the Original Complaint, and the Summons for Advanced Wellness and Barakat to be delivered to Advanced Wellness' address in Singapore (Dkt. #55, Exhibit 1), as identified in the Confidentiality Agreement (Dkt. #21, Exhibit 2 at p. 10), and attempted to serve Audet with the same type of documents through the Texas Secretary of State and a courier.[7] The Moving Defendants challenge Plaintiffs' methods of service—their actual notice and active participation in this case apparently notwithstanding.

---

[7] While Siddy and Fitzgerald also challenge whether service was effectuated, their arguments are moot because Plaintiffs' claims against them will be dismissed for lack of personal jurisdiction. *See infra* at Part I.b.

# LEGAL STANDARDS

## I.     Motion to Dismiss for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a non–resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989)).

To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a *prima facie* case supporting jurisdiction," if a court rules on a motion without an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists." *Id.* (citing *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 161, 1067 (5th Cir. 1992)). However, if a court holds an evidentiary hearing, a plaintiff "must establish jurisdiction by a preponderance of the admissible evidence." *In re Chinese Manufactured Drywall Prods. Liab. Lit.*, 742 F.3d 576, 585 (5th Cir. 2014) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008)).

A court conducts a two–step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Ciega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long–arm statute confers personal jurisdiction over the defendant. *Id.* And second, the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution.

The Texas long–arm statute confers jurisdiction to the limits of due process under the Constitution. *Command–Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion*, 895 F.2d at 216. The Due Process Clause permits the exercise of personal jurisdiction over a non–resident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

General jurisdiction exists only when the defendant's contacts with the forum state are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Substantial, continuous and systematic contact with a forum is a difficult standard to meet and requires extensive contacts between a defendant and the forum. *Johnston v. Multidata Sys.*

7

*Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1992) (citation omitted). However, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 609 (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)).

Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8. For the court to exercise specific jurisdiction, the court must determine "(1) whether the defendant has . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum–related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Defendants who "'reach out beyond one state' and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions." *Burger King*, 471 U.S. at 475 (citing *Travelers Health Assoc. v. Virginia*, 339 U.S. 643, 647 (1950)). Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id.*

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v.*

*Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King*, 471 U.S. at 477. "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

## II.     Motion to Dismiss for Improper Service

Federal Rule of Civil Procedure 12(b)(5) provides that a party may filed a motion to dismiss for insufficient service of process. A district court has "broad discretion to dismiss an action for ineffective service of process." *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 645 (5th Cir. 1994). Federal Rule 4(m) permits dismissal of a suit if the plaintiff fails to serve a defendant within 90 days of filing but provides that "if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period." FED. R. CIV. P. 4(m); *Gartin v. Par Pharm. Cos., Inc.*, 289 F. App'x 688, 692 (5th Cir. 2008). "[G]ood cause under Rule 4(m) requires at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Gartin*, 289 F. App'x at 692 (citing *Lambert v. U.S.*, 44 F.3d 296, 299 (5th Cir. 1999)).

## III.     Motion to Dismiss for Improper Venue

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action for "improper venue." FED. R. CIV. P. 12(b)(3). Once a defendant raises improper venue by motion, "the burden of sustaining venue will be on [the] Plaintiff." *Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*, No. 1:07-CV-699, 2008 WL 686156, at *5 (E.D. Tex. Mar. 6, 2008). "Plaintiff may

carry this burden by establishing facts that, if taken to be true, establish proper venue." *Id.* (citations omitted). The Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Glob. Holdings, Inc.*, No. 6:16-CV-459, 2014 WL 978685, at *1 (E.D. Tex. Mar. 5, 2014) (citing *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009)). In determining whether venue is proper, "the Court may look beyond the complaint to evidence submitted by the parties." *Ambraco*, 570 F.3d at 238. If venue is improper, the Court must dismiss, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3).

## ANALYSIS

The parties dispute whether the claims against one or more of the Moving Defendants should be dismissed for lack of personal jurisdiction, improper service, improper venue, and/or failure to state a claim. They also dispute whether one of Plaintiffs' filing should be sealed. Each issue is addressed, in turn.

### I.     Personal Jurisdiction[8]

The parties dispute whether the Court has specific jurisdiction over WorldVentures' claims against Advanced Wellness, Barakat, Fitzgerald, and Siddy. Although specific jurisdiction is a claim specific inquiry, courts may determine whether specific jurisdiction over distinct causes of action collectively where the claims are based on the same set of contacts. *See Seiferth*, 472 F.3d at 274 ("A plaintiff bringing multiple claims that *arise out of different forum contacts* of the

---

[8] The Moving Defendants make various arguments in their Rule 12(b)(2) motions challenging the Court's personal jurisdiction that question the merits of Plaintiffs' claims. The Court declines to address these arguments where they do not implicate the Moving Defendants' contacts to the forum or where otherwise unnecessary. *See Whitus v. Balkcom*, 333 F.2d 496, 504 n.22 (5th Cir. 1964) (explaining that courts have an "obligation to refrain from rendering advisory opinions").

defendant must establish specific jurisdiction for each claim.") (emphasis added).[9]  The Court

consequently addresses its personal jurisdiction over Plaintiffs' distinct causes of action

collectively where appropriate.

a. **Claims Against Advanced Wellness and Barakat**

i. *WorldVentures' Claims Against Advanced Wellness*

WorldVentures and Advanced Wellness agreed to the Forum Selection Clause in the

Confidentiality Agreement, which provides that:

> Any legal suit, action or proceeding arising out of or related to this Agreement or
> the matters contemplated hereunder shall be instituted exclusively in the federal
> courts of the United States or the courts of the State of Texas in each case located
> in the city of Plano and County of Collin, and each Party submits irrevocably to the
> exclusive jurisdiction of such courts in any such suit, action or proceeding and
> waives any objection based on improper venue or *forum non conveniens*.

(Dkt. #89, Exhibit 1 at pp. 4–5).  Because the Forum Selection Clause's validity is not at issue, *see*

*Haynsworth v. The Corp.*, 121 F.3d 956, 962–63 (explaining that forum selection clauses are

presumptively valid, particularly when they concern international transactions), the Court's

jurisdiction over Advanced Wellness turns on whether this dispute is subject to that clause, *see*

*Burger King*, 471 U.S. at 472 n.14 (explaining that enforcement of a valid forum selection clause

"does not offend due process").   Advanced Wellness insists that the Forum Selection Clause is

inapplicable to this case.  It reasons that WorldVentures disclosed the confidential information at

issue in this case in open court and, as a result, the claims against it no longer arise out of the

Confidentiality Agreement, which provides that:

> [T]he term 'Confidential Information' as used in this Agreement shall not include
> information that . . . at the time of disclosure is, or thereafter becomes, generally
> available to and known by the public other than as a result of, directly or indirectly,
> any violation of this Agreement by the Recipient or any of its Representatives.

---

[9] *See also Bristol–Myers Squibb v. Superior Court of CA, San Francisco Cty.*, 137 S. Ct. 1773, 1780–82 (2017);
*Weatherford v. Ecker*, No. 6:12-cv-034-C, 2012 WL 12894137, at *2 (N.D. Tex. Aug. 23, 2012) (discussing distinct
causes of action collectively in deciding specific jurisdiction).

(Dkt. #82, Exhibit 1 at p. 2). Advanced Wellness also argues that the claims cannot be subject to Forum Selection Clause because the Confidentiality Agreement was entered to facilitate a business transaction concerning the Asian market. The Court questions both arguments. The fact that *some* information was disclosed at a hearing in this Court does not suggest that *all* of the confidential information at issue in this dispute has been disclosed. And, although the parties' contemplated a business transaction in Asia, the parties intended for that relationship to be governed by Texas law (Dkt. #21, Exhibit 2 at pp. 21–22)—suggesting that the underlying business transaction also implicates this state's laws. *See Burger King*, 471 U.S. at 482 (finding that a Florida choice-of-law provision "reinforced [the defendant's] deliberate affiliate with the forum State and the reasonable foreseeability of possible litigation there").

The Court disagrees, regardless. The Forum Selection Clause is not limited to disputes directly arising under the Agreement. It is, instead, broadly written to also apply to "[a]ny" disputes "related to" the Agreement or "the matters contemplated hereunder." *See John Wyeth & Bro. Ltd. v. CIGNA Int'l. Corp.*, 119 F.3d 1070, 1075 (3rd Cir. 1997) (Alito, J.) (explaining that "the scope of 'related to' jurisdiction is broader than the scope of 'arising under' jurisdiction"); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (describing an arbitration clause that applied to "[a]ny controversy or claim arising out of or related to this Agreement" as "broad"). This means that the Forum Selection Clause applies to any dispute that "has some logical or causal connection" to the agreement, including the claims at issue. *See Wyeth*, 119 F.3d at 1074 (quotations omitted). Each claim against Advanced Wellness is based on allegations that it recruited WorldVentures personnel using information that the Confidentiality Agreement, at a minimum, was meant to protect at some point. *See Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 165 (5th Cir. 1998) (explaining that a "'broad

arbitration clause'" applicable to "'any dispute relating to or arising out of the agreement'" is meant to apply to "'all aspects of the [contracting parties'] relationship'") (quoting *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 n.2 (5th Cir. 1993)). And, as explained in more detail when discussing WorldVentures' claims against Barakat, WorldVentures' claims against Advanced Wellness are based on Advanced Wellness' substantial connections to the forum. *See infra* at Part ii; *see also Chinese—Manufactured Drywall*, 753 F.3d at 534 (explaining that personal jurisdiction exists on a principal based on the contacts of its agents). The Court may properly exercise personal jurisdiction over WorldVentures' claims against Advanced Wellness as a result.

### ii. *WorldVentures' Claims Against Barakat*

Barakat is not a party to the Confidentiality Agreement,[10] and has not provided the Court with any other reason why the forum selection clause should nevertheless apply to him. As such, personal jurisdiction exists over WorldVentures' claims against Barakat only if his suit–related contacts are such that he has purposely directed his activities at the state. Defendants who "reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions." *Burger King*, 471 U.S. at 475 (citing *Travelers Health Assoc. v. Virginia*, 339 U.S. 643, 647 (1950)). A defendant's contacts are not sufficient, however, where they are "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id.* The Supreme Court's decision in *Burger King* is illustrative. In that case, Burger King filed suit in the Southern District of Florida based on allegations that John Rudzewicz, a franchisee in Michigan (the

---

[10] Although Plaintiffs allege that Barakat is a party to the Confidentiality Agreement, this is contradicted by its explicit terms (Dkt. #284, Exhibit 1 at p. 1). The Court consequently does not need to credit this allegation. *See Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 3 (5th Cir. 2004) ("The court will accept as true any *uncontroverted allegations* contained in the party's complaint and will resolve all factual conflicts arising out of the parties' affidavits in favor of the party seeking jurisdiction.") (emphasis added).

"Franchisee"), breached the parties' franchise agreement and improperly used Burger King's confidential information and its trademarks. *See id.* at 463–64. The Supreme Court found that, under these circumstances, the claims in question grew directly out of a contract substantially connected to Florida. *See id.* at 478–87. The Supreme Court noted, among other things, that the Franchisee negotiated and entered into the contract with Burger King, a Florida resident; agreed that Florida law would govern the contract; knew that Burger King's principal place of business was in Florida; and envisioned a long–term business relationship with Burger King, which presumably would require contact with the state. *See id.* at 479–82. They further noted that, by breaching the Franchise Agreement, using Burger King's confidential information, and infringing on Burger King's trademark, the Franchisee could foresee that he would cause Burger King harm in Florida. *See id.* at 480.

Barakat's connections to the forum state are substantially similar to the Franchisee's in *Burger King*. Barakat, acting on Advanced Wellness' behalf, *see Calder v. Jones*, 465 U.S. 783, 790 (1984) (explaining that, while a party's contacts "are not to be judged according to their employer's activities there," "their status as employees does not somehow insulate them from jurisdiction"), purposely reached out to Texas by negotiating and signing the Confidentiality Agreement with WorldVentures, a Texas–based company; agreeing that the Confidentiality Agreement was to be governed by Texas law; travelling to Texas to exchange confidential information with WorldVentures after the Confidentiality Agreement was executed; travelling to Texas on two occasions to attempt to recruit Morris, a Texas resident who worked for WorldVentures, whose principal place of business is in Texas; asking Morris to recruit the Representatives he brought to WorldVentures; and allegedly causing harm that WorldVentures

would experience in the state.[11]  *See Burger King*, 471 U.S. at 480 (finding that plaintiff's claims based on trademark infringement and the use of confidential business information "caused foreseeable injuries" to Burger King in Florida, where it is based); *Kwik–Kopy Corp. v. Byers*, No. 01-20748, 2002 WL 1021889, at *6 (5th Cir. 2002)  (explaining that, "[i]f proven, the interference would effect trade secrets, customers, and ultimately revenue of KK and any financial loss to KK would obviously be incurred in Texas," where KK is based).

WorldVentures' claims against Barakat also arose out of these contacts.  WorldVentures' claims are based on the allegations that, after the Confidentiality Agreement was executed, the parties exchanged information the agreement was purportedly intended to protect and that Barakat improperly used that information to compete against WorldVentures and recruit its Texas–based employees.  Specific jurisdiction exists under these circumstances.  Barakat cannot negotiate a contract with a Texas based company to facilitate the transfer of confidential information, travel to Texas on multiple times to exchange that information, allegedly use that information in the state in attempts to recruit that company's Texas–based personnel, potentially interfering with contracts governed by Texas law (Dkt. #21, Exhibit 4 at pp. 7 & 32),[12] and "then be surprised when [he] is sued in a Texas based court."  *See All Access Today, L.P. v. Aderra Inc.*, No. A-08-498LY, 2008 WL 11334091, at *5–*6 (W.D. Tex. Sept. 29, 2008), *adopted by*, 2008 WL 11334128 (W.D. Tex.

_____

[11] Plaintiffs argue that the fiduciary shield doctrine—which, in some cases, prevents the court from exercising personal jurisdiction over a corporate officer for acts he performed for a corporate entity—is not applicable to this case because Barakat is accused of deliberate, tortious conduct.  *See Tempur–Pedic Int'l., Inc. v. Go Satellite Inc.*, 758 F. Supp. 2d 366, 379 (N.D. Tex. 2010) ("Given the prima facie evidence of intentional infringement and Hutt's level of knowledge and control, the fiduciary–shield doctrine does not apply, and the court can exercise personal jurisdiction over Hutt."). Barakat has not responded to this argument.  He, instead, contends that "Plaintiffs' argument that Barakat is not protected by the 'fiduciary shield' doctrine to avoid personal jurisdiction is inapplicable because as shown above there is no specific jurisdiction as to [Advanced Wellness]"—that is, Barakat argues that his contacts are insufficient regardless (Dkt. #121 at p. 5).  Barakat has waived his right to invoke the fiduciary shield doctrine as a result.  *See Johnson v. United States*, 460 F.3d 616, 620–21 (5th Cir. 2006) ("We need not decide that question here, because Johnson waived the timeliness argument and did not respond to the government's rule 56(b) argument on appeal.").

[12] As reflected in evidence *Barakat* provides with and cites to in his motion to dismiss, WorldVentures purports to incorporate its "Policies and Compensation Plan," which contains a Texas choice of law provision, into all of its Representative's agreements (Dkt. #21, Exhibit 4 at pp. 7 & 32).

15

Oct. 28, 2008) (finding that personal jurisdiction exists under similar circumstances); *see also Kwik–Kopy*, 2002 WL 1021889, at *6 (reversing dismissal for lack of personal jurisdiction based on allegations that the defendant tortuously interfered with a contract governed by Texas law because "the interference would effect trade secrets, customers, and ultimately revenue of KK and any financial loss of KK would obviously be incurred in Texas").[13]

### iii. *The Affiliates' Claims Against Advanced Wellness and Barakat*

The Court reaches the opposite conclusion, however, as to *the Affiliates'* Claims against Advanced Wellness and Barakat. Unlike WorldVentures, the Affiliates are not parties to the Confidentiality Agreement. Nor have they argued that they are third–party beneficiaries who arguably could invoke this clause.[14] *See Carmona v. Southwest Airlines Co.*, 536 F.3d 344, 347 n.5 (5th Cir. 2008) (finding party waived argument not raised in reply). The Court can thus exercise personal jurisdiction over these claims only if—based on the conduct relevant to the Affiliates' claims—Advanced Wellness and Barakat purposely directed their activities to Texas. *See Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). This is true even where the defendant is accused of committing the same wrong against other plaintiffs in the state. *See Bristol–Myers Squibb Co. v. Super. Ct. of Cal. San Francisco Cty.*, 137 S. Ct. 1773, 1781–82 (2017). For instance, in *Bristol–Myers Squibb*, the Supreme Court found that a California court lacked specific

---

[13] *Compare with Panda Brandywine Co. v. Potomac Elec. Power Co.*, 253 F.3d 865 (5th Cir. 2001) (affirming district court that found the defendant's contacts with Texas "constitutionally insufficient because [the plaintiff's] tortious interference claims involved financing agreements *not governed by Texas law*, not to be performed in Texas, and unrelated to Texas other than the fortuity that [the plaintiffs] reside in Texas") (emphasis added).

[14] The Court would likely deny this argument, regardless. The Confidentiality Agreement expressly states that it "is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement" (Dkt. #284, Exhibit 1 at pp. 5–6). This presumably means that any non–parties, including the Affiliates, are not able to invoke the Confidentiality Agreement's forum selection clause. *See Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 445 (Tex. 2017) (finding that, to the extent a third–party beneficiary or other non-party could invoke a forum selection clause, he or she may not do so where agreements contain this language).

jurisdiction over several claims brought by non–California residents for injuries caused by a drug called Plavix.  *See id.* at 1777.  The Supreme Court reasoned that, even though several California residents had brought substantially similar claims in the same suit,

> [T]he nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California.  The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims.

*See id.* at 1782.

This case is substantially similar to *Bristol–Myers*.  WorldVentures and the Affiliates both allege that Advanced Wellness and Barakat used their confidential information to compete against them and recruit their personnel.  However, while Barakat and Advanced Wellness have certain contacts with Texas, these contacts are only related to WorldVentures' claims—not those brought by its Affiliates.[15]  Plaintiffs cite evidence that Barakat and Advanced Wellness recruited some of *WorldVentures'* personnel in Texas.  But there is no comparable allegation or evidence that any of *the Affiliates' personnel* were solicited in the state.  Likewise, although WorldVentures' principal place of business is in Texas, there is no indication that the Affiliates are based in the state.  The Affiliates, instead, appear to be based internationally.  *See supra* note 1.  This suggests that, unlike the claims brought by WorldVentures, the Affiliates claims are not based on conduct that caused injury inflicted on a state resident, *see Burger King*, 471 U.S. at 483 (explaining that a "[s]tate frequently will have a 'manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors") (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S.

---

[15] While the Fifth Circuit has indicated that, "in some circumstances a close relationship between a parent and its subsidiary may justify a finding that the parent 'does business' in a jurisdiction through the local activities of its subsidiaries," *see Hargrave v. Fireboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983), Plaintiffs have not argued that WorldVentures has a sufficiently close relationship with its Affiliates, thereby waiving this argument, *see Carmona v. Southwest Airlines Co.*, 536 F.3d 344, 347 n.5 (5th Cir. 2008) (finding party waived argument not raised in reply).

220, 223 (1957)), that caused harm in the state, *see Burger King*, 471 U.S. at 480; *Kwik–Kopy*, 2002 WL 1021889, at *6 (each assuming these types of injuries occurred in the state where the plaintiff resides). Finally, unlike WorldVentures, the Affiliates are not parties to the Confidentiality Agreement.[16] The Affiliates consequently cannot rely on the agreement's connection to Texas as evidence of Advanced Wellness and Barakat's *suit–related* contacts. *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 342–43 (5th Cir. 2004) (finding that "the instant litigation d[id] not 'arise out of or relate to'" contacts related to a labor supply contract between the plaintiff's employer and the defendant—even though the plaintiff only performed work for the defendant because his employer agreed to the labor supply contract—because the plaintiff was not a party to the contract). Plaintiffs have failed to establish personal jurisdiction over the Affiliates' claims for these reasons.

b. **All Claims Against Siddy and Fitzgerald**

Personal jurisdiction is also lacking as to the claims against Siddy and Fitzgerald. Plaintiffs argue that specific jurisdiction exists over Siddy and Fitzgerald because they allegedly acted in concert with Advanced Wellness, Barakat, McKillip, Lowe, and the other defendants to interfere with contracts governed by Texas law, misappropriate Texas–based trade secrets, and recruit Plaintiffs' personnel in Texas. They reason that, under the Texas long–arm statute, a party conducts business in Texas by committing a tort in whole or in part in the state. *See* TEX. CIV. PRAC. & REM. CODE § 17.042. Because the Fifth Circuit and Texas Supreme Court have both found that personal jurisdiction must be based on a defendant's "individual contacts" with the forum "and not as part of [a] conspiracy," minimum contacts is established only if "the alleged

---

[16] Plaintiffs' allegation in the Second Amended Complaint that WorldVentures executed the Confidentiality Agreement on behalf of itself *and the Affiliates* does not change this fact. *See Freudensprung*, 379 F.3d at 342–43 (discussed above).

conspiracy w[as] related to or arose out of [Siddy and Fitzgerald's] contacts with Texas." *See Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 5 (5th Cir. 2004) (per curiam); *accord Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995). After all, the United States Supreme Court has held that the "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," and that minimum contacts is not established merely because the plaintiff suffered an injury in the forum state. *See Walden*, 572 U.S. at 1122. Accordingly, to establish that the court has personal jurisdiction over a particular co–conspirator, the plaintiff must show that the conspiracy was related to or arose out of that co–conspirator's contacts with the state. *See Delta Brands*, 99 F. App'x at 5; *Nat'l Indus*, 897 S.W.2d at 773.

Plaintiffs have not cited, nor has the Court been able to locate, allegations or evidence reflecting any meaningful, suit–related contacts that Siddy or Fitzgerald had with the state. Instead, the record reflects that Siddy and Fitzgerald lived and worked outside the country at all times relevant to this action, and that they were charged with helping to launch MaVie abroad. As such, to the extent that they were involved in the conspiracy, Siddy and Fitzgerald's suit–related conduct was largely directed outside of Texas. In contrast, Siddy's contacts with Texas are seemingly non–existent while Fitzgerald's appear to be minimal or unrelated to the suit. Despite Plaintiffs' contention otherwise, a text message in which a "Kim Burke" asks her fellow "amigos" Fitzgerald and Lowe about tourist spots to visit while the three of them are in Texas is not sufficient evidence of a suit–related contact (Dkt. #222, Exhibit 5).[17] And, while Fitzgerald communicated

---

[17] Although Plaintiffs also allege that Fitzgerald traveled to Texas to recruit Kim Burke to join Advanced Wellness (Dkt. #284, at p. 27), the Court cannot credit this allegation because it is contradicted by evidence indicating otherwise. Fitzgerald states in a sworn affidavit that he has "only been to Texas twice," that both times were "required by and solely to perform [his] job duties for WorldVentures Marketing Pty. Ltd," and that he has "never recruited a Texas resident . . . for employment." (Dkt. #180, Exhibit 1 at p. 2).

with some alleged Texas–based co–conspirators by email and through a web conference, these contacts are not sufficient—particularly since these communications make no reference to conduct in this state. *See Holt Oil & Gas Corp. v. Harvey*, l801 F.2d 773, 778 (5th Cir. 1986) (finding emails to a Texas plaintiff insufficient because they "rest[] on nothing but 'the mere fortuity that [some alleged co–conspirators] happen[] to be . . . resident[s] of the forum").[18] After all, finding otherwise would effectively void the Fifth Circuit and Texas Supreme Court's determinations that:

> To establish its prima facie case of specific personal jurisdiction, [the plaintiff] was required to demonstrate that [the defendant], individually, and not as part of a conspiracy, had minimum contacts with Texas.

*Delta Brands*, 99 F. App'x at 5); *accord Nat'l Indus.*, 897 S.W.2d at 773.

There is also evidence indicating that, while working for an Affiliate, Fitzgerald used his worldventures.com email account to send files about WorldVentures' operations to his personal email account[19] and that, as a result, the files were transmitted through a WorldVentures server in Texas.[20] According to Plaintiffs, Fitzgerald's decision to send himself these emails is "no different than if he walked into the Plano, Texas offices of Plaintiffs and stole property or misappropriated confidential business records" (Dkt.# 222 at p. 11). This analogy misses the mark. Courts can reasonably infer that a non–resident who has physically taken a record from an office in Texas has knowingly entered the state and taken a file in that state. *See Walden*, 571 U.S. at 285 ("[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State— either by the defendant in person or through an agent, goods, mail, or some other means—is

---

[18] *See also Kern v. Jackson*, No. 4:08cv436, 2009 WL 1809973, at *4 (E.D. Tex. July 25, 2009) (explaining that contacts via cellphone and email "have increasingly been viewed as less convincing indicators of purposeful availment of a particular forum in light of the mobility permitted with both forms of communication") (citing *Machiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005)).

[19] Plaintiffs did not provide the Court the files Fitzgerald sent himself. As a result, the Court cannot determine the contents of those files with any additional specificity.

[20] Defendants accuse Plaintiffs of submitting false and/or misleading evidence suggesting that their servers are based in Texas. The Court does not find Plaintiffs' evidence misleading and, in any event, does not make credibility determinations at this stage.

certainly a relevant contact."). When Fitzgerald emailed himself the files in question, on the other hand, he was likely half–way across the globe and may have had no idea that he made any contact with Texas.[21]  *Cf. MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730 (2d Cir. 2012) (finding personal jurisdiction existed because, while "[m]ost internet users, perhaps, have no idea of the location of the servers through which they send their emails," "MacDermid has alleged that Deiter knew that the email servers she used and the confidential files she misappropriated were both located in Connecticut").  Companies frequently house servers outside of their principal place of business. *See, e.g., BidPrime, LLC v. SmartProcure, Inc.*, No. 1:18-cv-478RP, 2018 WL 5260050, at *3 (W.D. Tex. Oct. 22, 2018) (discussing a Texas company whose server was located in Oregon). The Court cannot find that Fitzgerald could reasonably expect to be hauled into a court in this District simply because, seemingly unbeknownst to him, WorldVentures happened to house their email server in Texas.  *See GreatFence.com, Inc. v. Bailey*, 726 F. App'x 260, 261 (5th Cir. 2018) (suggesting that "'the level of contact created by the connection between an out-of-state defendant and a web server located within a forum' is 'de minimis'") (per curiam) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003)).[22]

Plaintiffs have failed to establish a prima facie case of personal jurisdiction over their claims against Siddy and Fitzgerald for these reasons.

---

[21] Some courts have also "found specific jurisdiction over a defendant who accessed a server located in the forum state [where] the access itself was wrongful," building on "the general principle that communication to a resident of the forum state generally does not establish minimum contacts with that state, unless the communication itself is tortious." *See Future World Elect., LLC v. Results HQ, LLC*, No. 17-17982, 2018 WL 2416682, at *3 (E.D. La. May 29, 2018) (Vance, J.) (discussing these cases).  This is not one such case.  Plaintiffs' claims do not turn on whether Fitzgerald's access to the files in question was improper, in and of itself.  They are, instead, based on his "subsequent use of this [information]" for Advanced Wellness' benefit.  *See id.*  (rejecting this argument on similar grounds).

[22] *See also BidPrime, LLC v. SmartProcure, Inc.*, No. 1:18-cv-478-RP, 2018 WL 4260060, at *3 (W.D. Tex. Oct. 22, 2018); *Future World Elect., LLC v. Results HQ, LLC*, No. 17-17982, 2018 WL 2416682, at *3 (E.D. La. May 29, 2018); *Chang v. Virgin Mobile USA, LLC*, No. 07-1767, 2009 WL 111570, at *3 (N.D. Tex. Jan. 16, 2009); *Ray v. Experian*, No. 3:07-cv-1114-R, 2007 WL 4245459, at *3 (N.D. Tex. Nov. 30, 2007) (each finding a server's location to be an insufficient contact).

c. **Jurisdictional Discovery**

Because Plaintiffs seek permission to conduct discovery before the Court dismisses any of their claims for lack of personal jurisdictional, the Court must determine whether discovery is properly permitted as to the Affiliates' claims against Advanced Wellness and Barakat, and all claims against Siddy and Fitzgerald.[23]   A district court has broad discretion regarding whether to permit a party to conduct jurisdictional discovery.  *Wyatt v. Kaplan*, 686 F.2d 276, 283–84 (5th Cir. 1982).  As the requesting parties, "the plaintiffs bear the burden of demonstrating the necessity of discovery."  *See Monkton Ins. Srvs, Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014).  As a result, the plaintiff must make a "preliminary showing of jurisdiction" by "'present[ing] factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts.'"  *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)) (finding that the district court properly denied jurisdictional discovery where "appellants have not made even a preliminary showing of jurisdiction").  "A plaintiff seeking discovery on matters of personal jurisdiction is [also] expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction."  *See, e.g.*, *Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC*, No. 4:11-cv-629-A, 2012 WL 104980, at *7 (N.D. Tex. Jan. 11, 2012) (citing *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)); *see also infra* fn. 24.

Plaintiffs have not identified the factual allegations suggesting that requisite contacts exist, the facts they expect to obtain from discovery, or how this information may establish personal jurisdictional discovery.   Plaintiffs' motion for jurisdictional discovery, instead: (1) briefly

---

[23] Plaintiffs' requests for jurisdictional discovery will be denied as moot as to all other claims.

discusses the case's procedural history; (2) includes a lengthy legal standards section; and (3) asserts, without explanation or analysis, that

> Plaintiffs desire to conduct jurisdictional discovery by Rule 34 requests, Rule 33 interrogatories and Rule 30 oral depositions with respect to Defendants' contacts with the State of Texas through personal visits, telephone calls, telephone conference calls, zoom conference calls, text messages, email, electronically–based messages through applications such as WhatsApp, We Chat, and others, directed to persons or individuals in the State of Texas, and/or electronic access of WorldVentures' electronic files, servers and proprietary materials, which are stored in Texas, regarding Defendants' general contacts with the State of Texas and, specific contacts with the State of Texas, regarding any of the issues or subject matter of this civil action. Plaintiffs also desire to conduct jurisdictional discovery with respect to Defendants' activities in the State of Texas and Defendants' conduct of business in the State of Texas generally and as related to the subject matter of this civil action.

(Dkt. #198 at p. 12). Because Plaintiffs have not made any attempt to justify *why* they should be entitled to the discovery they seek, *see* FED. R. CIV. P. 7(b) (explaining that a motion to the court must "state *with particularity* the grounds for seeking the order") (emphasis added), Plaintiffs' motion will be denied. *See Kelly*, 213 F.3d at 855–86 (affirming denial of motion seeking jurisdictional discovery where "[a]ppellants' brief does *not* describe the discovery they contend should have been allowed, what facts they hoped to obtain from such discovery, or how it would produce information that would support specific jurisdiction for Syria Shell") (emphasis in original).[24]

## II. Service

Before the Court "may exercise personal jurisdiction over [a] defendant, the procedural requirement of service of summons must be satisfied." *See Omni Capital Int'l, Ltd. v. Rudolf Wolff*

---

[24] *See also Best Little Promohouse in Tex. LLC v. Yankee Pennysaver, Inc.*, No. 3:14-cv-1824-BN, 2014 WL 5431630, at *7 (N.D. Tex. Oct. 27, 2014); *Miles Bramwell USA, LLC v. Weight Watchers Int'l, Inc.*, No. 4:12-cv-292, 2013 WL 17970313, at *4 (E.D. Tex. March 27, 2013), *adopted by*, 2013 WL 1793934 (E.D. Tex. April 26, 2013); *Monkey Boy Graphix, Inc. v. Anton Sport, Inc.*, No. 3:08-cv-657-O (BH), 2008 WL 11349966, at *8 (N.D. Tex. Aug. 20, 2008), *adopted by*, 2018 WL 11349845 (N.D. Tex. Sept. 17, 2008); *King v. Hawgwild Air, LLC*, No. 3:08-cv-0153-L, 2008 WL 262099, at *8 (N.D. Tex. June 27, 2008) (each denying a request for jurisdictional discovery on similar grounds).

& *Co., Ltd.*, 484 U.S. 97, 104 (1987) (emphasis added). Advanced Wellness, Barakat, and Audet move to dismiss the claims against them for improper service—despite their actual notice and zealous participation in this case. The Court addresses their arguments in turn.

### a. **Advanced Wellness**

The Moving Defendants argue that service was improperly effectuated on Advanced Wellness due to their "*belie[f]* that [service] was not hand delivered to a corporate officer" (Dkt. #21 at pp. 14–15). They reason that Singapore law requires service through these means, which they contend is enforceable pursuant to Federal Rule of Civil Procedure 4(h).

The Court disagrees—even accepting the Advanced Wellness' *belief* and characterization of Rule 4(h) as fact. It is well established that parties may consent to accept service of process in a manner ordinarily not permitted by Rule 4. *See* 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE CIVIL § 1062 (4th ed. 2018) ("[A] person or an entity can consent to receive service of process in a manner that deviates from Rule 4 or can waive notice and service altogether.") (citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964)). Advanced Wellness' status as a foreign defendant does not exempt it from this rule. *See J.B. Custom, Inc. v. Amadeo Rossi, S.A.*, No. 1:10-cv-326, 2011 WL 2199704, at *7 (N.D. Ind. June 6, 2011) ("It should be remembered that J.B. could also have avoided this entire issue of what would constitute sufficient service by simply insisting on a clause in its contract with [the defendant based in Brazil] as to what would happen in the event of litigation.") (citing *Nat'l Equip.*, 375 U.S. at 316). Plaintiffs may therefore effectuate service on Advanced Wellness through any means permitted under the Confidentiality Agreement, which Plaintiffs have done. The Service Clause requires only that service of process be sent "by mail to such Party's address," which the Confidentiality Agreement identifies as 6 Temasek Boulevard, #9-#05 Suntec Tower 4, Singapore

038986 (Dkt. # 89, Exhibit 1 at pp. 1, 4, 5). It does not require that service is effectuated, by hand, to a corporate officer. Because the record reflects that service of process was delivered to the proper address (Dkt. #55), service was properly effectuated on Advanced Wellness.

     b. **Barakat and Audet**

Barakat and Audet, however, are not parties to the Confidentiality Agreement. As such, to effectuate service on those parties, WorldVentures must comply with Federal Rule of Civil Procedure 4(f). Service on these parties must therefore occur:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>> (C) unless prohibited by the foreign country's law, by:
>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

FED. R. CIV. P. 4(f) (governing service on internationally–based individuals). Plaintiffs have not explained to the Court precisely how they properly effectuated service under Rule 4(f). They, instead, insist that service on Barakat could be effectuated pursuant to the terms of an agreement and that service was properly effectuated on Audet—without fully addressing Audet's arguments as to why service was not properly effectuated. Plaintiffs have conceded that service is improper under Rule 4(f) as a result. *See Carmona*, 536 F.3d at 347 n.5.

Because dismissal for defective service would be improper at this stage, *see Jim Fox Enters., Inc. v. Air France*, 664 F.2d 63, 64 (5th Cir. 1981) (explaining that courts should refrain from dismissing a case for improper service "where there is any possibility" that service may be properly effectuated), the Court must decide whether to permit service on Barakat and Audet through their U.S.–based counsel under Rule 4(f)(3).[25] Although the Moving Defendants appear to assume otherwise, Rule 4(f) does not require that the plaintiff try to serve an internationally–based defendant under Rule 4(f)(1) or 4(f)(2) before authorizing service under Rule 4(f)(3). *See AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 429 (1st Cir. 2015) (per curiam) ("By its plain terms, Rule 4(f)(3) does not require exhaustion of all possible methods of service before a court may authorize service by 'other means.'") (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002)); *accord Enovative Techs., LLC v. Leor*, 622 F. App'x 212, 214 (4th Cir. 2015) (per curiam); *In re Chinese–Manufactured Drywall Prod. Liab. Litig.*, No. 09-02047, 2015 WL 13387769, at *4 (E.D. La. Nov. 9, 2015) (dropping cases); *Nabulsi v. H.H. Shiekh Issa Bin Zayed Al Nahyan*, No. H-06-2683, 2007 WL 2964817, at *4 (S.D. Tex. Oct. 9, 2007).[26] "No such requirement is found in the Rule's text, implied by its structure, or even hinted at in the advisory committee notes." *See Rio Props.*, 284 F.3d at 1014–15.

The only question, then, is whether the Court should exercise its discretion under Rule 4(f)(3) to permit service on Barakat and Audet through their U.S. counsel. The Court sees no reason not to do so—nor has Barakat or Audet provided any. To the contrary, courts routinely direct service on an international defendant's counsel under Rule 4(f)(3). *See, e.g.*, *RPost*

---

[25] Defendants argue that WorldVentures' motion for alternative service is not ripe—despite fully briefing its motion to dismiss the case on this ground. The Court disagrees.
[26] *See also Nagravision SA v. Gotech Int'l Tech. Ltd*, 882 F.3d 494, 498 (5th Cir. 2018) (rejecting defendant's argument that service was improper because it did not comply with the Hague Convention where it was authorized under Rule 4(f)(3), without discussing whether the plaintiff tried to first serve the defendant under Rule 4(f)(1) or 4(f)(2) (citing *United States v. Real Prop. Known As 200 Acres of Land Near FM 2686 Rio Grande City, Tex.*, 773 F.3d 654, 659 (5th Cir. 2014)).

*Holdings, Inc. v. Kagan*, No. 2:11-cv-238-JRG, 2012 WL 194388, at *2–*3 (E.D. Tex. Jan. 23, 2012) (Gilstrap, J.).[27]  After all, the federal rules are to "be construed, administered, and employed by the court *and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding."  FED. R. CIV. P. 1 (emphasis added).  And service on a party's counsel erases any "material doubt that [a defendant] will be provided notice of this suit," *see RPost Holdings*, 2012 WL 194388, at *2–*3, while avoiding the unnecessary time and expense ordinarily needed to effectuate service on parties based thousands of miles away, *see Affinity Labs of Tex., LLC v. Nissan N. America, Inc.*, No. WA:13-CV-369, 2014 WL 11342502, at *2–*4 (W.D. Tex. July 2, 2014) (permitting service on defendant's counsel for this reason).  Alternative service through these means is especially appropriate here because defendants have actual notice of and are actively participating in this action.  *See Chinese–Manufactured Drywall*, 2015 WL 13387769, at *7.  As one court explained in reaching this conclusion:

> The purpose of service is to give appropriate notice to allow parties to properly present their substantive arguments and not to create considerable procedural hurdles to delay an action.

*Id*.  The federal rules, in fact, impose a "duty" on parties subject to service under Rule 4(f) "to avoid unnecessary expenses of serving the summons.  *See* FED. R. CIV. P. 4(d)(1).  The Court will permit service on Barakat and Audet through their U.S.–based counsel for these reasons.

## III.  **Venue**

The Moving Defendants argue that this case should be dismissed because venue is improper under 28 U.S.C. § 1391(b).  The Court disagrees.  It is well–settled that venue is proper

---

[27] *See also Affinity Labs of Texas, LLC v. Nissan North America, Inc.*, No. WA:13-CV-369, 2014 WL 11342502, at *1–*4 (W.D. Tex. July 2, 2014); *In re Chinese–Manufactured Drywall Prod. Liab. Litig.*, No. 09-02047, 2015 WL 13387769, at *4 (E.D. La. Nov. 9, 2015); *Phoenix Process Equip. Co. v. Capital Equip. & Trading Corp.*, 250 F. Supp. 3d 296, 308 (W.D. Ky. 2017); *Knit With v. Knitting Fever, Inc.*, Nos. 08-4221, 08-4775, 2010 WL 4977944, at *4 (E.D. Pa. Dec. 7, 2010) ("Repeatedly, courts around  the country have found that service upon a foreign defendant through counsel is appropriate.") (citing *LG Elecs., Inc. v. Asko Appliances, Inc.*, No. 08-828, 2009 WL 1811098, at *4 (D. Del. June 23, 2009)).

in any district agreed to under a forum selection clause—even if that district would not have been proper under § 1391. *See, e.g.*, *Huawei Techs. Co., Ltd. v. Yiren Huang*, No. 4:17-cv-00893, 2018 WL 1964180, at *7–*8 (E.D. Tex. April 25, 2018), *mandamus denied*, No. 18-4055 (5th Cir. July 5, 2018) (unpublished) (dropping cases); *accord* O'Connell & Stevenson, Rutter Group Prac. Guide: Fed. Civ. Proc. Before Trial Nat. Ed. ¶ 4:60 (2018) ("Parties may by contract designate a forum in which any litigation is to take place. (For example, 'Any litigation to enforce this agreement shall be instituted in Los Angeles California, and nowhere else.'). Litigation *commenced elsewhere* is subject to a motion to transfer venue.").[28] This means that, at a minimum, venue is properly asserted over the claims against Advanced Wellness, which expressly "waive[d] any objection based on improper venue" in a Forum Selection Clause that requires disputes arising out of or related to the Confidentiality Agreement to be heard in either this District or its state court equivalent (Dkt. #89, Exhibit 1 at pp. 4–5).

Venue is also proper over the claims against Barakat, even though he is not a party to the Confidentiality Agreement. § 1391(b) allows civil actions to be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

---

[28] *See also Healthcare Servs. Grp., Inc. v. Skyline Servs. Grp.*, No. 17-2703, 2018 WL 637773, at *5 (E.D. Pa. Jan. 30, 2018) (quoting *AAMCO Transmissions, Inc. v. Romano*, 42 F. Supp. 3d 700, 706 (E.D. Pa. 2014)) (citing *Carnival Cruise Lines, Inc.*, 499 U.S. at 591–94); *accord Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995) (holding "we find that the choice of forum provision validly contracts for venue in Dallas County, Texas, thereby granting the district court jurisdiction over [the defendant].").

28 U.S.C. § 1391.  There is no state where all defendants reside.  As such, venue is proper in either (1) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" or (2) if no such district exists, any district where any defendant is subject to the court's personal jurisdiction.  *Id.*  A substantial part of the events giving rise to WorldVentures' claims against Barakat occurred in this district.  As stated, WorldVentures' claims against Barakat are based on allegations that WorldVentures disclosed proprietary information to Barakat in this District; Barakat used that information to recruit WorldVentures' Texas–based personnel in this District; and WorldVentures suffered harm in this District as a result.  *See* O'Connell & Stevenson, Rutter Group Prac. Guide: Fed. Civ. Proc. Before Trial Nat. Ed. ¶ 4:60 (2018) (explaining that a "substantial part" of the events or omissions may potentially occur "in tort actions, where the parties acted or where the *injuries* occurred; in contract actions, where the negotiations took place, where the contract was signed, where the performance or breached occurred; or the place where *parties* acted or were engaged in business") (emphasis added) (citing *Bates v. C&S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992); *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001); *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)).  The Court would reach the same conclusion—even assuming that a substantial part of the events giving rise to this claim did not occur in this District.  This is because, based on the record before the Court, there does not appear to be any district that has a more substantial connection to the events or omissions giving rise to the claim.   Venue would therefore be proper in any district in which any defendant is subject to the court's personal jurisdiction, such as this one.  *See supra* at Part I (explaining why the Court has personal jurisdiction over WorldVentures' claims against Advanced Wellness and Barakat).

Advanced Wellness and Barakat argue that venue is improper over the claims against him because they are based on allegations that they tortiously interfered with WorldVentures' contracts with their Representatives. According to them, these claims are consequently subject to a mandatory venue provision in these contracts designating Dallas or Louisiana as the proper venue for any such disputes. But, as stated, Advanced Wellness expressly waived its right to challenge venue. *See supra* at pp. 27–29. Additionally, as Barakat argued with respect to the Forum Selection Clause in the Confidentiality Agreement, neither Advanced Wellness nor Barakat are parties to the Representative Agreements. Nor have they suggested that they should be able to invoke this clause on any other ground. This argument is unavailing as a result.

## IV.    Audet's 12(b)(6) Motion

The Court now turns to Audet's attacks on the merits of Plaintiffs' claims. Audet argues that Plaintiffs have failed to properly plead any of their claims. However, because Plaintiffs have substantively amended their complaint since Audet's 12(b)(6) motion was filed, the motion will denied as moot. *See Maxim Integrated Prod., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. SA-14-CV-1030-XR, 2015 WL 10990119, at *1 (W.D. Tex. Feb. 12, 2015) ("Courts have held that a pending Rule 12(b)(6) becomes moot when a plaintiff files an amended complaint as a matter of course.") (dropping cases).

## V.    Motion to Seal Response

Finally, Plaintiffs move to seal their Response to Advanced Wellness and Barakat's Motion to Dismiss. Plaintiffs argue that the Response contains information concerning their genealogy structure and other information they deem to be trade secrets. However, Plaintiffs have failed to cite—nor has the Court been able to identify—any portions of the Response or its supporting exhibits that contain confidential information. *See* FED. R. CIV. P. 7(b) (explaining that a motion

to the court must "state with particularity the grounds for seeking the order"). To the contrary, while this motion was pending, Plaintiffs made five of the six exhibits they filed in support of the Response publicly available. *Compare* Dkt. #89, Exhibits 1, 3–6 (filed under seal) *with* Dkt. #123, Exhibits 1, 3, 8, 18, 19 (filed publicly). And, although Plaintiffs had previously moved to seal portions of a hearing transcript, the only exhibit Plaintiffs have yet to file publicly, the Court has already denied this request (Dkt. #266). Under these circumstances, the Court cannot conclude that Plaintiffs' interest in keeping its Response and supporting exhibits overcomes the "'strong presumption that all trial proceedings should be subject to scrutiny by the public.'" *See United States v. Holy Land Found. for Relief 7 Dev.*, 624 F.3d 685, 690 (5th Cir. 2010) (quoting *United States v. Ladd*, 218 F.3d 701, 704 (7th Cir. 2000)).

## CONCLUSION

Advanced Wellness, Barakat, and Audet's Motions to Dismiss (Dkt. #21; Dkt. #170) and Plaintiffs' Motion to Serve Foreign Defendants' Counsel (Dkt. #188) are **GRANTED IN PART AND DENIED IN PART**; Siddy and Fitzgerald's Motions to Dismiss (Dkt. #135; Dkt. #180) are **GRANTED**; Plaintiffs' Motion to Deny Defendants' Motion to Dismiss as Moot (Dkt. #148), Motion for Jurisdictional Discovery (Dkt. #198), and Motion to Seal Plaintiffs' Response (Dkt. #88) are **DENIED**. Accordingly:

1. WorldVentures' claims against Anthony Fitzgerald and Michelle Siddy; and the Affiliates' claims against Advanced Wellness, Abdelwadoud Barakat, Siddy, and Fitzgerald are **DISSMISED** without prejudice;

2. The Clerk of the Court is **DIRECTED** to terminate Siddy, Fitzgerald, and MaVie as parties to this dispute;

3. The Clerk of the Court is further **DIRECTED** to unseal Plaintiffs' Response to Advanced Wellness and Barakat's Motion to Dismiss (Dkt. #89) and any corresponding exhibits; and

4. WorldVentures is **DIRECTED** to serve Barakat and Audet by mailing their respective U.S.–based counsel, Michelle Pector and Elvin E. Smith, a copy of the summons and the Second Amended Complaint within fourteen (14) days of this Order.

**IT IS SO ORDERED**.

**SIGNED this 12th day of December, 2018.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE